IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HYPERCUBE, LLC and KMC DATA, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| QWEST COMMUNICATIONS CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

KMC Data, LLC ("KMC Data") and HyperCube, LLC ("HyperCube"), through undersigned counsel, hereby submit their Complaint and Jury Demand seeking damages and declaratory judgment against Qwest Communications Corp. ("QCC") and state as follows:

## PARTIES

1. KMC Data is a Delaware limited liability company with its principal place of business in Lancaster, Texas that is in the business of, among other things, providing interstate and intrastate switched access service to various customers, including interexchange ("IXC") carriers (commonly referred to as "long-distance carriers").

2. HyperCube is a Delaware limited liability company with its principal place of business in Lancaster, Texas and is the parent of its wholly owned subsidiary, KMC Data, LLC. HyperCube provides management services to KMC Data, including billing services.

3. QCC is a Delaware corporation with its primary place of business in Denver, Colorado. QCC is an IXC providing long distance telephone services, including toll free services, to customers throughout the United States.

**JURISDICTION AND VENUE**

4. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337. The matter in controversy relates to rights identified by federal statute, specifically 47 U.S.C. §§ 201, 202 and 203, and arises under federal statutory and common law, and the amount in controversy exceeds the sum specified in 28 U.S.C. § 1337.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), because QCC is a Delaware corporation, and subject to personal jurisdiction in Delaware.

**BACKGROUND FACTS**

6. KMC Data is in the business of, among other things, providing interstate and intrastate switched access service to various customers, including IXCs and commercial mobile radio service ("CMRS") carriers (commonly referred to as wireless carriers). KMC Data's claims in the present complaint concern only KMC Data's provision of *interstate* access services to QCC.

7. The interstate and intrastate access services provided by KMC (together, "access services") enable an IXC to originate or terminate long distance calls to customers using the local network facilities of the Public Switched Telephone Network ("PSTN"). As a Competitive Local Exchange Carrier ("CLEC"), KMC Data competes for business with QCC's Incumbent Local Exchange Carrier ("ILEC") affiliate, Qwest Corporation.

8. When a wireless phone customer calls an IXC's wire-line customer, the wireless carrier must connect to the public switched network at some point so the call can be sent to the wire-line customer.

9. KMC Data does business with wireless carriers and allows them to connect to its local facilities. During the period relevant to this complaint, to foster connection by wireless

2

carriers to its facilities, KMC Data has offered to share with wireless carriers a percentage of certain revenues KMC Data earns from third parties as a result of servicing wireless toll-free calls that are destined to customers of those third parties. Incentives of this nature are commonplace in the industry and not just with respect to wireless carriers' connectivity to the PSTN.

10.  When wireless customers' toll-free calls (calls that are placed to telephone numbers beginning with an 8XX area code or "8XX Traffic") are routed through the facilities of KMC Data, KMC Data provides access services – including switching and transport – and associated database query services to the IXC that is being paid by its customers to provide the toll-free service to those customers.

11.  When KMC Data provides access and associated database query services in connection with a call made from a wireless telephone, the call is routed from the wireless carrier's Mobile Telecommunications Switching Office ("MTSO") across a KMC Data facility (a KMC Data trunk) which connects the wireless carrier's MTSO to KMC Data's Class 4/5 switch.

12.  While the call is in the switch, KMC Data performs switching and routing functions and additional services, such as running a query of the national 8XX telephone number database to determine where the call should be routed. Once the database returns information regarding the IXC whose 8XX customer has been called, KMC Data's switch performs the necessary routing to deliver the call to the IXC's facilities. In the case of wireless toll-free calls to QCC's customers, between November 2005 and July 2007, when Qwest discontinued its provision to KMC Data of leased dedicated access lines, KMC Data's switch routed the call directly to QCC via dedicated connections between KMC Data's switch and QCC's switch.

KMC Data bore the facilities expense of the direct connections between it and QCC and charged QCC for the access and associated database query services it provided to QCC in connection with the wireless toll-free calls. Since July of 2007, KMC Data has delivered wireless 8XX calls to QCC's customers to QCC at the ILEC tandem because QCC has refused to lease to KMC Data the dedicated access lines over which KMC Data previously had delivered those calls to QCC.

13. KMC Data is entitled to bill and to collect access and associated database query charges for the services it provides to QCC in connection with the completion of intrastate and interstate calls from the customers of wireless carriers to QCC's toll-free service customers.

### QCC's FAILURE TO PAY FOR INTERSTATE ACCESS SERVICES

14. KMC Data's interstate access services are regulated by the Federal Communications Commission ("FCC").

15. To the extent covered by tariffs, KMC Data's interstate access and associated database query charges to QCC for services in connection with wireless 8XX calls are determined by and set forth in tariffs and price lists filed by KMC Data with (and approved by) the FCC. If the service provided is not covered or governed by these tariffs, then charges are determined by express or implied contract or principles of quantum meruit, open account and/or unjust enrichment.

16. Each month since November 2005, on KMC Data's behalf, its parent company, HyperCube, has billed QCC for interstate access and associated database query services for calls originating in a variety of states.

17. Since November 2005, QCC has received, accepted, and benefited from KMC Data's interstate access and associated database query services in connection with wireless calls

4

bound for QCC's toll-free customers. QCC accepted the calls that KMC Data delivered to it over the dedicated facilities between them or via the ILEC tandem, delivered those calls to the customers to which QCC had assigned the toll-free numbers and charged its customers for those calls.

18.     At all times relevant hereto, QCC has had actual and constructive notice of KMC Data's interstate access and associated database query charges for wireless 8XX Traffic and has continued to receive, use and benefit from KMC Data's interstate access and associated database query services in connection with wireless 8XX Traffic.

19.     Commencing with KMC Data's bill for services rendered during November 2005, QCC began withholding payment, or "short-paying," for interstate access services and associated database queries provided to QCC in connection with wireless toll-free calls, which calls have been accepted by Qwest, for call originating in a variety of states.

20.     QCC has purported to justify taking KMC Data's interstate access and associated database query services for wireless 8XX Traffic without full payment on the basis of QCC's incorrect interpretation of an Order of the Federal Communications Commission ("FCC") issued in 2004 with respect to interstate access charges for such calls. The FCC Order does not support QCC's withholding of full payment for KMC Data's interstate services provided to QCC, including database queries, multiplexing, common trunk port and tandem switching.

21.     Although QCC has refused to pay KMC Data's charges for its interstate access and associated database query services in connection with wireless 8XX Traffic and has claimed that KMC Data's services are of no benefit to it, QCC also has claimed that it would suffer "irreparable harm" if KMC Data stopped providing those services to it. Thus, by its own

assertions, KMC Data's interstate access and associated database query services in connection with wireless 8XX Traffic are highly valuable to QCC.

22.     QCC has refused to pay approximately $1.8 million in KMC Data's charges to QCC for interstate access and associated database query services in connection with wireless 8XX Traffic. The amount overdue from QCC for KMC Data's services represents services provided during the months of November 2005 through October 2007. The amount due from QCC to KMC Data continues to grow each month as KMC Data continues to provide services to QCC, which services QCC insists it must have, but for which it refuses to pay.

23.     QCC's refusal to pay these charges and associated late fees is without legal justification or excuse.

## QWEST'S STATE COURT SUIT AGAINST HYPERCUBE

24.     In June 2006 QCC filed a complaint in the District Court, City and County of Denver, Colorado against HyperCube and KMC Data. In October 2006, QCC filed a First Amended Complaint against HyperCube and KMC Data seeking a declaration that QCC is not obligated to pay for the intrastate and interstate access services and associated database queries that KMC Data has provided and continues to provide, and seeking damages arising from HyperCube and KMC Data's alleged violations of KMC Data's interstate and intrastate tariffs, violations of the Federal Communications Act, unjust enrichment, money had and received, breach of contract, fraud, and breach of state public utilities statutes.

25.     KMC Data counterclaimed against QCC seeking payment for services provided, alleging breach of intrastate and interstate tariffs, breach of implied contract, action on open account, quantum meruit, unjust enrichment, and declaratory judgment.

6

26. HyperCube and KMC Data believe that the District Court, City and County of Denver, Colorado lacks subject matter jurisdiction over the interstate portions of QCC's claims, pursuant to the Communication Act, 47 U.S.C. § 207's express grant of exclusive jurisdiction to the federal district courts and the Federal Communications Commission. To the extent that QCC's claims are interstate in nature, they arise under the Federal Communications Act and are only actionable under § 207's grant of exclusive jurisdiction to the federal district courts and the Federal Communications Commission, except for QCC's alleged interstate rate discrimination claims with respect to which exclusive jurisdiction resides only with the FCC.

27. HyperCube and KMC Data have requested that QCC voluntarily dismiss those of its claims based on KMC Data's charges for interstate access and associated database queries for lack of subject matter jurisdiction in Colorado state court. Should QCC refuse to do so, HyperCube and KMC Data will file a motion under Colorado Rule of Civil Procedure 12(b)(1), seeking dismissal of QCC's claims to the extent that these claims relate to KMC Data's interstate services and tariff. If QCC will not agree, KMC Data also will seek the Colorado Court's permission for its voluntary dismissal without prejudice of the interstate portions of its counterclaims. All of QCC's *interstate* portions of its claims must be dismissed from the Colorado state court for lack of subject matter jurisdiction. Those portions of both QCC's claims and KMC Data's counterclaims concerning only *intrastate* issues will remain in the state court forum.

28. KMC Data's claims for damages and HyperCube's and KMC Data's request for Declaratory Judgment in the present complaint therefore, relate only to KMC Data's provision of interstate access services and associated database query services to QCC and QCC's subsequent failure to pay KMC Data for its services rendered.

## COUNT I

### (By KMC Data against QCC - Breach of Interstate Tariff)

29. KMC Data re-alleges and incorporates the allegations of the paragraphs 1 through 28, above.

30. At all times since and including November 2005, QCC has received, accepted, and benefited from KMC Data's provision of interstate access and associated database query services to QCC in connection with wireless calls to QCC's toll-free customers.

31. By accepting these interstate access and associated database query services which were offered by KMC Data pursuant to its federal tariff, QCC has agreed and is required by law to pay KMC Data the tariffed rates for the services provided.

32. At all times relevant to this lawsuit, QCC has continued, and to this day continues, to accept and benefit from these interstate access and associated database query services provided by KMC Data and, indeed, has insisted that KMC Data continue to provide these services without interruption.

33. QCC continues to refuse to pay the interstate access charges and associated database query fees due under the tariff and appropriately billed by KMC Data for the services that KMC Data rendered.

34. QCC has at all times relevant to this action had the ability to decline to accept these interstate access and associated database query services from KMC Data and to so inform its customers. QCC not only has failed and refused to do so but has instead demanded KMC Data's uninterrupted provision of those services.

8

35. QCC has failed to pay amounts due and owing to KMC Data without legal justification or excuse, and in breach of its legal obligations imposed by its acceptance of interstate access and associated database query services pursuant to KMC Data's federal tariff.

36. By failing to pay charges and associated late fees for tariffed access services and database queries rendered by KMC Data, QCC has breached the federal tariff.

37. KMC Data has been damaged by QCC's purposeful breaches of the federal tariff, in an amount to be proved at trial and which continues to increase daily, which includes interstate access charges and associated database query fees for wireless 8XX Traffic at the tariffed rates, and late fees and attorneys fees and expenses.

## COUNT II

**(By KMC Data against QCC - Breach of Implied Contract)**

38. KMC Data re-alleges and incorporates the allegations contained in paragraphs 1 through 37, above.

39. At all times relevant hereto, KMC Data has performed interstate access services and associated database queries for QCC in connection with wireless 8XX Traffic.

40. At all times relevant hereto, QCC has known that KMC Data was performing these services and expected to be paid for it.

41. At all times relevant hereto, QCC has accepted those services, delivered the calls to its customers and charged them for it.

42. At all times relevant hereto, QCC has known the rates that KMC Data charged for these services.

43. QCC has insisted that KMC Data continue to provide these services without interruption and has claimed that it would be irreparably harmed if KMC Data stopped doing so.

9

44. In the alternative to Count I, by taking, using and benefiting from those services, and by insisting on uninterrupted provision of those services, QCC entered into an implied contract with KMC Data to pay KMC Data at the rates that QCC knew were charged by KMC Data for those services.

45. Despite its receipt, acceptance, use and insistence on KMC Data's services, QCC has failed to pay KMC Data for its services. It would be inequitable for QCC to retain the benefit of KMC Data's services without payment of its value.

46. KMC Data has been damaged by QCC's purposeful breaches of the implied contract between them, in an amount to be proved at trial and which continues to increase daily, which includes interstate access and associated database query charges for wireless 8XX Traffic at the rates QCC knew that KMC Data charged, late fees, interest, and attorneys fees and expenses.

## COUNT III

### (By KMC Data Against QCC - Action on Open Account)

47. KMC Data re-alleges and incorporates the allegations contained in paragraphs 1 through 46, above.

48. In the alternative to Counts I and II, QCC has created an open account by receiving, accepting, and benefiting from the interstate access services and associated database queries offered and provided by KMC Data in connection with wireless toll free calls to QCC customers. KMC Data had provided those services to QCC consistent with an arrangement, either express or implied, between QCC and KMC Data. In exchange, QCC had previously paid KMC Data for those services, including interstate access services and associated database queries. At all times, QCC was aware of KMC Data's provision of these services, the amount of

its charges for these services and has insisted on KMC Data's uninterrupted provision of these services to it.

49.     The open account includes all interstate access and associated database query charges and associated late fees billed by KMC Data but not paid by QCC from November 2005 through the date of trial.

50.     KMC Data has been damaged by QCC's failure to pay the charges accrued on the open account in an amount to be proven at trial.

## COUNT IV

### (By KMC Data against QCC - Quantum Meruit)

51.     KMC Data re-alleges and incorporates the allegations contained in the paragraphs 1 through 50, above.

52.     Since November 2005, KMC Data has provided to QCC interstate access and associated database query services accepted by QCC for calls originating in various states.

53.     QCC has at all times relevant to this action had the ability to decline to accept interstate access and associated database query services from KMC Data in connection with wireless 8XX Traffic and to so inform its customers. QCC not only has failed and refused to do so but has demanded the uninterrupted provision of those services by KMC Data by seeking a temporary restraining order against suspension of those services as a consequence of QCC's nonpayment for the services. QCC has to date continued to accept these services provided by KMC Data and to forward the toll-free calls to its customers, who have paid QCC to be able to receive the calls.

54.     At all times during which QCC has received, accepted, and benefited from KMC Data's interstate access and associated database query services for QCC-bound wireless 8XX

Traffic, QCC had actual or constructive notice of KMC Data's charges for said services, and the fact that KMC Data was not a volunteer, but expected to be paid at the applicable rates.

55. By accepting these services provided by KMC Data with knowledge that it was not a volunteer, if there is no express or implied contract between KMC Data and QCC for the payment of such charges, QCC is bound to pay the fair market value of those services under the doctrine of quantum meruit. KMC Data has been damaged in an amount to be proven at trial as a consequence of QCC's failure to pay the fair market value for the services it received, plus interest.

## COUNT V

### (By KMC Data Against QCC -Unjust Enrichment)

56. KMC Data re-alleges and incorporates the allegations in the paragraphs 1 through 55, above.

57. By its provision of interstate access and associated database query services to QCC, KMC Data conferred a benefit on QCC at KMC Data's expense and to KMC Data's detriment.

58. QCC knew that it would, and intended to, receive a benefit from the interstate access and associated database query services provided to it by KMC Data.

59. QCC accepted and retained that benefit under circumstances which make it inequitable for there to be no return payment to KMC Data for the value of the interstate access and associated database query services it provided to QCC.

60. In the alternative to Counts One through Four above, there is no remedy at law that can appropriately address KMC Data's claim.

61. KMC Data has been damaged by QCC's unjust enrichment in an amount equal to the value of the services that QCC received from KMC Data and from which QCC benefited.

## COUNT VI

**(HyperCube and KMC Data against QCC -Declaratory Judgment)**

62. HyperCube and KMC Data re- allege and incorporate the allegations contained in the paragraphs 1 through 61, above.

63. A present, actionable and justiciable controversy exists with respect to the legal rights between the parties, including the rights and obligations of HyperCube, KMC Data and QCC thereunder. Such controversy arises under the Federal Communications Act, 47 U.S.C. §§ 201, et seq., and under the laws of the United States. Litigation between the parties is extant and unavoidable.

64. QCC's refusal to pay interstate access and associated database query charges in connection with wireless phone calls to its toll-free customers, its refusal to pay associated late fees and its allegations that HyperCube and KMC Data are engaged in wrongdoing by billing interstate access and associated database query charges for wireless 8XX calls are ongoing and repeated practices.

65. On information and belief, absent a declaratory judgment, QCC will continue its wrongful practices of refusing to pay interstate access and associated database query charges and late fees for these services that QCC insists on, receives and accepts in the future and from which it benefits and of alleging that HyperCube and KMC Data are engaged in wrongdoing by billing for those services.

66. It would be unduly burdensome and inefficient for KMC Data to bring new actions for damages each time QCC wrongfully refuses to pay an invoice and for HyperCube and

KMC Data to defend themselves against allegations of wrongful billing each time an invoice is issued.

67.  Accordingly, HyperCube and KMC Data are entitled to a declaratory judgment and such further relief based upon said declaratory judgment as the Court deems proper, pursuant to 28 U.S.C. § 2201, determining that:

  a. HyperCube has lawfully charged QCC on KMC Data's behalf for services rendered in the provision of interstate access and associated database inquiry services, either pursuant to KMC Data's duly filed interstate tariff or in accordance with the principles of equity. Accordingly neither HyperCube nor KMC Data have been unjustly enriched or otherwise inequitably or illegally benefited by any payment that QCC has made to HyperCube in exchange for provision of interstate access and associated database query services.

  b. QCC has breached the express and implied contracts between it and KMC Data by refusing and failing to pay interstate access and associated database query charges and associated late fees, either as set forth in KMC Data's federal tariff or as established as a matter of equity.

  c. KMC Data has been damaged by QCC's breaches of the express and implied contracts; and

  d. QCC is contractually and equitably obligated to make timely payment of these charges and late fees as said charges become due.

## REQUEST FOR RELIEF

**WHEREFORE**, HyperCube and KMC Data pray that this Court:

a. Award KMC Data damages for QCC's breaches of the tariff, in an amount to be proved at trial;

b. Award KMC Data damages for QCC's breaches of implied contract, in an amount to be proved at trial;

c. Alternatively, award KMC Data all sums due under QCC's open account in an amount to be proved at trial;

d. Further in the alternative, award KMC Data damages against QCC in the amount of the just and fair value of KMC Data's services pursuant to the doctrine of quantum meruit;

e. Award KMC Data damages against QCC for its unjust enrichment in an amount to be proven at trial;

f. Issue a declaratory judgment that HyperCube, on behalf of KMC Data, is lawfully permitted to bill for KMC Data's interstate access and associated database query services to QCC in connection with wireless 8XX calls to QCC customers; that QCC is obligated to pay KMC Data for said services, including any late fees billed, in a timely manner and such further relief based upon said judgment as the Court deems proper;

g. Award KMC Data late payment charges as permitted by its tariffs and/or pre- and post-judgment interest;

  h. Tax the costs, fees and expenses of this action to QCC, including the reasonable attorneys' fees and expert witness fees of HyperCube and KMC Data to the extent permitted by law and KMC Data's tariffs; and

  i. Award such other and further relief as the Court deems just and proper.

### JURY DEMAND

KMC Data and HyperCube request a trial by jury on all issues so triable.

                POTTER ANDERSON & CORROON LLP

OF COUNSEL:           By: _/s/ Richard L. Horwitz_
                 Richard L. Horwitz (#2246)
Ky E. Kirby             David E. Moore (#3983)
Jonathan S. Frankel         Hercules Plaza, 6th Floor
Frank Lamancusa          1313 N. Market Street
Randall M. Levine         Wilmington, DE 19899
BINHGAM MCCUTCHEN LLP     Tel: (302) 984-6000
2020 K Street, NW         rhorwitz@potteranderson.com
Washington, DC 20006       dmoore@potteranderson.com
(202) 373-6000

                *Attorneys for Plaintiffs*
Dated: December 17, 2007       *HyperCube, LLC and KMC Data, LLC*
838149 / 32559

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
HYPERCUBE, LLC and KMC DATA, LLC

## DEFENDANTS
QWEST COMMUNICATIONS CORPORATION

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Richard L. Horwitz (#2246)/David E. Moore (#3983)
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, Delaware 19801    (302) 984-6000

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 362 Personal Injury—Med. Malpractice | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 365 Personal Injury—Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 630 Liquor Laws | | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 640 R.R. & Truck | PROPERTY RIGHTS | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | [ ] 650 Airline Regs. | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 340 Marine / PERSONAL PROPERTY | [ ] 660 Occupational Safety/Health | [ ] 830 Patent | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability / [ ] 370 Other Fraud | [ ] 690 Other | [ ] 840 Trademark | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 371 Truth in Lending | LABOR | SOCIAL SECURITY | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability / [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury / [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 893 Environmental Matters |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | | |
| [ ] 220 Foreclosure | [ ] 442 Employment | [ ] 740 Railway Labor Act | FEDERAL TAX SUITS | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | Habeas Corpus: | | |
| [ ] 240 Torts to Land | | [ ] 530 General | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 790 Other Labor Litigation | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 440 Other Civil Rights | [ ] 535 Death Penalty | | |
| | | [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 871 IRS—Third Party 26 USC 7609 | [x] 890 Other Statutory Actions |
| | | [ ] 550 Civil Rights | | |
| | | [ ] 555 Prison Condition | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Action pursuant to 47 U.S.C § 201, 202, and 203

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE: 12/17/2007
SIGNATURE OF ATTORNEY OF RECORD: /s/

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 12/96)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 07-822

## ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

### *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___3___ COPIES OF AO FORM 85.

12/17/07
(Date forms issued)

_____
(Signature of Party or their Representative)

Patrick J. Boyer
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action