IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HYPERCUBE, LLC and KMC DATA, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-822-GMS |
| | ) | |
| QWEST COMMUNICATIONS | ) | **JURY TRIAL DEMANDED** |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COUNTS II, III, IV AND V OF
PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

*Attorneys for Plaintiffs
HyperCube, LLC and KMC Data, LLC*

Ky E. Kirby
Jonathan S. Frankel
Frank Lamancusa
Randall M. Levine
BINHGAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
(202) 373-6000

Dated: February 15, 2008
849001 / 32559

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES. ........................................................................................ ii

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

II. SUMMARY OF ARGUMENT ........................................................................ 1

III. STATEMENT OF FACTS ............................................................................. 2

IV. ARGUMENT................................................................................................... 4

      A.    Standard of Review.................................................................................... 4

      B.    The Filed Tariff Doctrine Does Not Bar KMC Data's Federal Common
           Law Claims ............................................................................................... 5

           1.    Controlling Third Circuit precedent permits KMC Data's claims............. 6

           2.    Qwest relies on nonbinding or inapposite precedent to support its
                argument ....................................................................................... 10

      C.    KMC Data Adequately States Claims for Breach of Implied Contract and
           Open Account ........................................................................................... 15

           1.    KMC Data alleges sufficient facts to state a claim of implied
                contract........................................................................................ 16

           2.    KMC Data alleges sufficient facts to state a claim of open account ....... 19

V. CONCLUSION................................................................................................ 22

# TABLE OF AUTHORITIES

Page

## CASES

*Alliance Commc'ns Co-op., Inc. v. Global Crossing Telecomms.,*
Nos. Civ. 06-4221-KES, 2007 WL 1964271 (D. S.D. July 2, 2007)............................ 11, 12, 13

*A.P.S., Inc. v. Standard Motor Prods., Inc.,*
295 B.R. 442 (D. Del. 2003) ................................................................................................ 20

*Arkwright Mut. Ins. Co. v. Bargain City, U.S.A., Inc.,*
373 F.2d 701 (3d Cir. 1967)................................................................................................. 20

*AT&T Corp. v. JMC Telecom, LLC,*
470 F.3d 525 (3d Cir. 2006)................................................................................................. 13

*AT&T Corp. v. F.C.C.,*
317 F.3d 227 (D.C. Cir. 2003). ........................................................................................... 15

*Bell Atlantic Corp. v. Twobly,*
127 S. Ct. 1955(U.S. 2007). ................................................................................................ 2

*Colburn v. Upper Darby Township,*
838 F.2d 663 (3d Cir. 1988). .............................................................................................. 5

*Conley v. Gibson,*
355 U.S. 41 (1957)............................................................................................................... 5

*Chrysler Corp. v. Airtemp Corp.,*
426 A.2d 845 (Del. Super. 1980) ........................................................................................ 20

*Fed. Ins. Co. v. Ayers,*
741 F. Supp. 1179 (E.D. Pa. 1990) ..................................................................................... 22

*Graves v. Lowery,*
117 F.3d 723 (3d Cir. 1997). ............................................................................................... 4

*Horowitz v. Federal Kemper Life Assurance Co.,*
861 F. Supp. 1252 (E.D. Pa. 1994) ..................................................................................... 22

*In re: Grand Jury Investigation No. 06-1464,*
445 F.3d 266 (3d Cir. 2006) ................................................................................................ 11

*In the Matter of Penn Central Transp. Co.,*
831 F.3d 1221 (3d Cir. 1987) .............................................................................................. 16

## TABLE OF AUTHORITIES

**Page**

*Iowa Network Servs., Inc. v. Qwest Corp.,*
363 F.3d 683 (8th Cir. 2004) . ........................................................................................ 8

*ITC Deltacom Commc'ns v. US LEC Corp.,*
No. Civ. A. 3:03-CV-116-J, 2004 WL 3709999 (N.D. Ga. March 15, 2004) ................. 21, 22

*ITT Fed. Support Servs. v. United States,*
531 F.2d 522 (3d Cir. 1976) ........................................................................................... 19

*Knipe v. Skinner,*
19 F.3d 72 (2d Cir. 1994) ............................................................................................... 9

*Kost v. Kozakiewicz,*
1 F.3d 176 (3d Cir. 1993) ............................................................................................... 4

*Luden's, Inc. v. Local Union No. 6,*
28 F.3d 347 (3d Cir. 1994)......................................................................................... 2, 16

*MCI Telecomms.. Corp. v. Graphnet, Inc.,*
881 F. Supp. 126, 132 (D. N.J. 1995). ....................................................................... 5, 6

*MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.,*
No. 06-1013, 2006 WL 3026293 (4th Cir. Sept. 21, 2006) ........................................... 10

*MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.,*
No. 06-1013, 2005 WL 2145499 (E.D. Va. Aug. 31, 2005) .......................................... 10

*Nami v. Fauver,*
82 F.3d 63 (3d Cir. 1996).............................................................................................. 4

*Rocks v. City of Philadelphia,*
868 F.2d 644 (3d Cir. 1989) .......................................................................................... 4

*Smith v. United Transp. Union Local No. 81,*
594 F. Supp. 96 (S.D. Cal. 1984). ................................................................................ 22

*Schaffer v. Eagle Indus., Inc.,*
726 F. Supp. 113 (E.D. Pa. 1989) ................................................................................ 11

*Terminix Int'l Co., L.P. v. Kay,*
150F.R.D. 532 (E.D. Pa. 1993)..................................................................................... 10

*Union Tel. Co. v. Qwest Corp.,*
No. 02-CV-209-2, 2004 WL 4960780 (D. Wyo. May 11, 2004) ................................... 13

# TABLE OF AUTHORITIES

**Page**

*Union Tel. Co. v. Qwest Corp,*
  495 F.3d 1187 (10th Cir. 2007) ......................................................... 13, 14

*Webster v. Royal Caribbean Cruises, Ltd.,*
  124 F. Supp. 2d 1317 (S.D. Fla. 2000). ................................................ 21

*Worldcom, Inc. v Graphnet.,*
  343 F.3d 651 (3d Cir. 2003). .......................................................... *passim*

## ADMINISTRATIVE OPINIONS AND ORDERS

*Eighth Report and Order,*
  19 FCCR 9108 (F.C.C. 2004). ......................................................... 21

*In the Matter of America's Choice, Inc. v. LCI Int'l Telecom Corp.,*
  11 FCCR 22,494 (Com. Car. Bur. 1996) ........................................... 5, 7

*In the Matter of Petitions of Sprint PCS and AT&T Corp.,*
  17 FCCR 13,192 (F.C.C. 2002) ......................................................... 8

*In the Matter of Total Telecomms. Servs., Inc.,*
  16 FCCR 5726 (F.C.C. 2001) ........................................................... 7

*MGC Commc'ns, Inc. v. AT&T Corp.,*
  14 FCCR 11,647, 11,657 (Comm. Car. Bur. July 16, 1999),
  *aff'd,* 15 FCCR 308 (F.C.C. 1999)............................................. 17, 18, 19

*New Valley Corp. v. Pacific Bell,*
  15 FCCR 5128 (F.C.C. 2000) ........................................................... 7

## STATUTES AND COURT RULES

47 U.S.C. § 251 (2007) .................................................................... 13, 14

47 U.S.C. § 252 (2007) .................................................................... 13, 14

Fourth Circuit Local Rule 32.1,
Citation of Unpublished Dispositions (2008). ........................................ 10, 11

Fed. R. Civ. P. 12 (2007) ............................................................... 1, 4, 23

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## BOOKS AND OTHER AUTHORITIES

REST. 2ND CONTRACTS, § 19(3) (1981). . ................................................................... 16

REST. 2ND CONTRACTS, § 4 (1981). . ......................................................................... 2

WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH
LANGUAGE (2nd ed. 1961). . ....................................................................................... 20

WILLISTON ON CONTRACTS (4th ed. 2007). . ............................................................... 20

v

# I.
## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs HyperCube, LLC ("HyperCube") and KMC Data, LLC ("KMC Data")

(together "Plaintiffs") commenced this action on December 17, 2007. Plaintiffs seek a

declaratory ruling that they have not violated the Federal Communications Act or other common

law principles by charging Qwest Communications Corporation ("Qwest") for interstate access

services and related toll-free database queries that KMC Data provided to Qwest in connection

with wireless calls to Qwest's toll-free customers.  KMC Data also seeks an award of payment

for those services.  On January 22, 2008, Qwest filed a motion to dismiss KMC Data's claims

found in Counts II, III, IV and V pursuant Fed. R. Civ. P. 12(b)(6). Plaintiffs hereby oppose

Defendant's motion to dismiss.

# II.
## SUMMARY OF ARGUMENT

1.     If the Court finds that the services provided by KMC Data to Qwest were not covered by

KMC Data's filed interstate tariff, KMC Data may recover the value of the services it rendered

to Qwest under the federal common law theories of implied contract, open account, unjust

enrichment and *quantum meruit*. The Third Circuit explicitly held in *Worldcom, Inc. v.*

*Graphnet, Inc.* that where no filed tariff covers a carrier's *services*, the filed tariff doctrine is

inapplicable and the carrier may recover the value of its services in equity.[1]  The Third Circuit

thereby unambiguously rejected Qwest's theory that "a carrier is prohibited from collecting

---

[1]     *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 656 (3d Cir. 2003) ("Here, however, no
filed tariff appears to have covered the services provided… . The [filed tariff] doctrine is
therefore inapposite because there is no filed tariff with which the contracts conflict… . If the
contracts are not enforceable for some other reason, Worldcom could still recover the value of its
services under a theory of unjust enrichment.").

charges for services not described in its tariff."[2]  Qwest's argument that KMC Data's equitable

claims are barred by the filed tariff doctrine is erroneous, and directly contradicts the controlling

authority in the Third Circuit.

2.     KMC Data has adequately pled its alternative claims for open account and implied

contract.  To adequately plead a claim for implied contract and open account, KMC Data must

allege sufficient facts such that an intent to enter into a contract may be reasonably inferred from

Qwest's conduct.[3]  Plaintiffs allege in their complaint that: Qwest knows the rates for KMC

Data's services; Qwest accepted and continues to accept KMC Data's services; Qwest knows

that KMC Data expects to be paid for its services; Qwest has benefited and continues to benefit

from KMC Data's services, and; Qwest insists that KMC Data continue to provide service

without interruption. Qwest's actions speak louder than its words. A trier of fact could

reasonably infer from these allegations that Qwest intended to be bound by contract, and that

Qwest opened an account pursuant to an implied contract.

## III.
## STATEMENT OF FACTS

KMC Data is a Delaware limited liability corporation with its principal place of business

in Texas. KMC Data is in the business of, among other things, providing telecommunications

service to various customers, including interexchange ("IXC") carriers (commonly referred to as

long distance carriers) and commercial mobile radio service ("CMRS") carriers (commonly

referred to as wireless carriers). HyperCube, LLC is a Delaware limited liability corporation, and

---

[2]      Defendant's Opening Brief in Support of Motion to Dismiss at 5.

[3]      *Luden's, Inc. v. Local Union No. 6*, 28 F.3d 347, 355 (3d Cir. 1994) ("[A] promise may
be stated in words either oral or written, or may be inferred wholly or partly from conduct.")
(*quoting* REST. 2D CONTRACTS § 4 (1981)).

is the parent of its wholly owned subsidiary, KMC Data, LLC. HyperCube provides management services to KMC Data, including billing services. Qwest is a publicly traded Delaware corporation with its primary place of business in Denver, Colorado. Qwest is an IXC providing long distance telephone services, including toll free services, to customers throughout the United States.

Plaintiffs' claims in the present action concern only KMC Data's provision of *interstate* access services. The interstate and intrastate access services provided by KMC Data (together, "access services") enable an IXC to originate long distance calls for or terminate long distance calls to its end user customers using the network facilities of local exchange carriers like KMC Data that form an integral part of the Public Switched Telephone Network ("PSTN").

KMC Data is entitled to bill and to collect access and database query charges for the services it provides to Qwest in connection with the completion of intrastate and interstate calls from wireless carriers to Qwest's toll-free service customers. Since November 2005, Qwest has received, accepted, and benefited from KMC Data's interstate access and database query services in connection with wireless calls bound for Qwest's toll-free customers. Qwest accepted the interstate calls that KMC Data delivered to it. Qwest delivered those calls to the customers to which Qwest had assigned the toll-free numbers and charged its customers for those calls.

Commencing with KMC Data's bill for services rendered during October 2005, Qwest began withholding partial payment for interstate toll-free (or "800") database queries that KMC Data had to perform in order to route to Qwest the calls destined to Qwest's toll-free customers. As time went by, Qwest also began to withhold payment for various interstate access services that KMC Data also provided to on a monthly basis in connection with those calls, including

3

services called common trunk port, multiplexing and tandem switching. Despite the fact that Qwest refuses to pay KMC Data's charges for its interstate access and associated database query services and has claimed that KMC Data's services are of no benefit to it, Qwest has insisted that KMC Data continue to provide service to it, and has claimed that it would suffer "irreparable harm" if KMC Data stopped providing those services.

As of the date the complaint was filed in this matter, Qwest had refused to pay approximately $1.8 million in KMC Data's charges to Qwest for interstate services rendered. The amount overdue from Qwest to KMC Data represents services that were billed to Qwest during the months of November 2005 through October 2007. The amount due from Qwest to KMC Data continues to grow each month, as KMC Data continues to provide services to Qwest, which services Qwest insists it must have, but for which it refuses to pay.

## IV.
## ARGUMENT

### A.    Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or to decide the case's merits.[4] Thus, the court must accept the factual allegations of the complaint and all reasonable inferences therefrom as true, and view them in the light most favorable to the nonmoving party.[5] In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint

---

[4]    *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[5]    *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989) (When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.").

4

is not frivolous, and to provide defendants with adequate notice to frame an answer."[6] Under this standard, Qwest's motion to dismiss should be denied.[7]

## B. The Filed Tariff Doctrine Does Not Bar KMC Data's Federal Common Law Claims

Qwest contends that the filed tariff doctrine bars KMC Data's claims for breach of implied contract, action on open account, *quantum meruit*, and unjust enrichment, and thus Plaintiffs fail to state claims upon which relief can be granted. Contrary to Qwest's averments, Qwest is not relieved of its obligation to compensate KMC Data "solely because the services furnished were not properly tariffed."[8] If the Court were to conclude after a factual inquiry that the services provided by KMC Data to Qwest are not covered by KMC Data's interstate tariff, KMC Data alternatively can recover the value of its services under federal common law theories of implied contract, open account, unjust enrichment, or *quantum meruit*.[9] "The filed tariff

---

[6]    *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir. 1988); *see also*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (U.S. 2007) (holding that in order to adequately plead an agreement under the Sherman Act, plaintiff must allege "sufficient facts, taken as true, to suggest that an agreement was made.").

[7]    "As a general rule, the court may only consider the pleading which is attacked by an FRCP 12(b)(6) motion in determining its sufficiency. The court is not permitted to look at matters outside the record; if such matters are considered, the FRCP 12(b)(6) motion to dismiss is, by the express terms of FRCP 12(b), converted into a motion for summary judgment." *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (*quoting* 62 Fed. Proc., L. Ed. § 62:508 ).

[8]    *In the Matter of America's Choice, Inc. v. LCI Int'l Telecom, Corp.*, 11 FCCR 22,494, ¶ 24 (Com. Car. Bur. 1996).

[9]    *See, MCI Telecomms. Corp. v. Graphnet, Inc.* 881 F. Supp. 126, 132 (D. N. J. 1995) ("Questions concerning the duties, charges, and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law ... . Where neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law.") (*quoting*, *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486, 491 (2d Cir. 1968)); *Worldcom, Inc.* 343 F.3d at 653 (same).

doctrine prohibits service providers from charging rates other than those set forth in a tariff filed

with a regulatory agency."[10] Thus, the filed tariff doctrine presents no bar to KMC Data's

federal common law claims, which are pled in the alternative in the event that tariff coverage is

not found, because the doctrine is inapposite in the absence of an applicable filed tariff.[11]

Controlling authority in the Third Circuit unambiguously supports Plaintiffs' position.

Qwest cites only to non-precedential opinions of the courts in another circuit, and otherwise

inapposite case law to support its argument. Because KMC Data's claims are properly before this

Court, Qwest's argument that KMC Data's federal common law claims of implied contract, open

account, unjust enrichment and *quantum meruit* are barred by the filed tariff doctrine should be

rejected.

### 1.    Controlling Third Circuit precedent permits KMC Data's claims.

The controlling authority in the Third Circuit is the case of *Worldcom v. Graphnet*.[12] In

*Worldcom*, the Court of Appeals explicitly rejected an argument virtually identical to Qwest's

argument in its Motion to Dismiss. There, Worldcom provided telecommunications services to

Graphnet pursuant to contracts that were not filed with the FCC.[13] Worldcom did not provide

these services to Graphnet pursuant to the terms of a filed tariff.[14] Like Qwest, Graphnet

---

[10]    *MCI Telecomms. Corp.*, 881 F. Supp. at 132. The terms "filed rate doctrine" and "filed tariff doctrine" are synonymous. *See, id.* ("[T]he filed rate doctrine [is] sometimes referred to as the filed tariff doctrine.").

[11]    *Worldcom, Inc.*, 343 F.3d at 656.

[12]    *Id.*

[13]    *Id.* at 653.

[14]    *Id.* at 656.

withheld payment for Worldcom's services.[15] Worldcom sued Graphnet seeking payment for services rendered under the theories of breach of contract, unjust enrichment and *quantum meruit*.[16] Like Qwest, Graphnet argued that the filed tariff doctrine absolved it of the obligation to pay for Worldcom's services, and prohibited Worldcom from recovering the value of services rendered under any equitable theory.[17] The district court adopted Graphnet's position, and dismissed Worldcom's equitable claims.[18]

On appeal, the Third Circuit reversed the decision of the district court.[19] The Court of Appeals explicitly rejected Graphnet's argument that it was not obligated to pay for Worldcom's services, holding that "[a] purchaser of telecommunications services is not absolved from paying for services rendered solely because the services furnished were not properly tariffed."[20] The Court of Appeals held that the district court "erroneously relied on the inapposite 'filed rate doctrine' in" dismissing Worldcom's claims of unjust enrichment and *quantum meruit*.[21]

---

[15]     *Id.* at 653.

[16]     *Id.*

[17]     *Id.* at 655.

[18]     *Id.*

[19]     *Id.* at 655-57.

[20]     *Id.* at 656 (quoting *In the Matter of America's Choice, Inc. v. LCI Int'l Telecom, Corp.*, 11 FCCR 22,494, ¶ 24 (Com. Car. Bur. 1996); *see also New Valley Corp. v. Pacific Bell*, 15 FCCR 5128, 5133 (F.C.C. 2000) ("Accordingly, [the filed tariff doctrine] is inapplicable here, where there is no filed rate, and does not support New Valley's demand for a refund of all charges paid.); *In the Matter of Total Telecomms. Servs., Inc.*, 16 FCCR 5726, 5745 at ¶ 43 (F.C.C. 2001) ("It is well established that a purchaser of telecommunications services is not absolved from paying for the rendered services solely because the services furnished were not properly encompassed by the carrier's tariff... .").

[21]     *Worldcom, Inc.*, 343 F.3d at 655.

The Court of Appeals explained that the filed tariff doctrine only "forbids charging or collecting *rates* for services that vary with the *rates schedule* for those services in a filed tariff."[22] Where no filed tariff covers a carrier's services, the filed tariff doctrine is inapposite, and the carrier may recover the value of its services in equity.[23] The Court of Appeals held that "[w]hile the filed rate doctrine may seem harsh in some circumstances, it does not result in the extraordinarily harsh result that Graphnet advocates."[24] Rather, if a carrier provides service that is not covered by a filed tariff, "[t]he carrier is still compensated...."[25]

The Court of Appeals' opinion in *Worldcom* controls disposition of Qwest's motion to dismiss. Here, KMC Data seeks payment for services rendered to Qwest, pursuant to KMC Data's duly filed federal tariff. Qwest argues that the services provided by KMC Data are not covered by KMC Data's tariff. Just as Graphnet unsuccessfully argued in *Worldcom*, Qwest contends that it is therefore not obligated to pay for KMC Data's services. If the Court finds that the services provided to Qwest are not covered by KMC Data's tariff, then, just as in *Worldcom*, KMC Data seeks recovery of the value of the services provided to Qwest under equitable theories. Just as Graphnet unsuccessfully argued in *Worldcom*, Qwest argues that the filed tariff

---

[22]     *Id.* at 656  (emphasis added).

[23]     *Id.* This position also has been adopted by the Eighth Circuit Court of Appeals and the Federal Communications Commission. *See, Iowa Network Servs., Inc. v. Qwest Corp.*, 363 F.3d 683, 694 (8th Cir. 2004) (holding that plaintiff INS may assert a claim under a theory of unjust enrichment against defendant Qwest Communications Corporation for services not covered by INS's tariff); *In the Matter of Petitions of Sprint PCS and AT&T Corp.*, 17 FCCR 13,192, 13198 (F.C.C. 2002) (holding that carrier may recover value for services rendered, despite lack of filed tariff, under contract or implied contract theory).

[24]     *Id.*

[25]     *Id.*

8

doctrine prohibits KMC Data's recovery. Qwest's arguments are unavailing. In *Worldcom*, the Court of Appeals unambiguously rejected Qwest's theory that "a carrier is prohibited from collecting charges for services not described in its tariff."[26] Because KMC Data can maintain its causes of action based on the facts alleged in the complaint, this Court should deny Qwest's motion to dismiss.

Qwest cites to the *Worldcom* case only once in its Opening Brief, and blatantly mischaracterizes *Worldcom*'s holding, citing it for the proposition that "[d]eviation from the *tariff* is not permitted under any circumstance."[27]  The Court of Appeals actually states in *Worldcom* that "[d]eviation from these *rates* is not permitted upon any pretext."[28]  These are fundamentally different propositions. Where no filed tariff covers the *service* in question, there is no applicable rate from which to *deviate*.[29] Qwest not only fails to call out the controlling nature of *Worldcom* and its clear holding against Qwest's arguments, but it makes no effort to

---

[26]     Defendant's Opening Brief in Support of Motion to Dismiss, at 5; *c.f. Worldcom*, 343 F.3d at 656-57 (holding that "no filed tariff appears to have covered the services provided," but that "Worldcom could still recover the value of its services under a theory of unjust enrichment.").

[27]     Defendant's Opening Brief in Support of Motion to Dismiss, at 5. (emphasis added). Qwest's mischaracterization of the holding of *Worldcom*, and failure to discuss or attempt to distinguish *Worldcom*, is highly questionable. *See, e.g. Knipe v. Skinner*, 19 F.3d 72, 76 (2d Cir. 1994) (noting that an argument that contradicts controlling authority is improper, if it is made without a candid recognition of the theory's lack of success or an honest attempt to have the existing law altered); *Terminix Int'l Co., L.P. v. Kay*, 150 F.R.D. 532, 538 (E. D. Pa. 1993) (discussing impropriety of failure to distinguish controlling authority).

[28]     *Worldcom*, 343 F.3d at 656. (emphasis added).

[29]     *Id.*

distinguish *Worldcom's* holding, nor any good faith effort to advocate for a change of the Third Circuit's existing law.[30]

In accordance with the unambiguous law of the Third Circuit, this Court should reject Qwest's argument that KMC Data's federal common law claims of implied contract, open account, unjust enrichment and *quantum meruit* are barred by the filed tariff doctrine and deny Qwest's motion to dismiss.

2.    **Qwest relies on nonbinding or inapposite precedent to support its argument.**

In support of its argument that the filed tariff doctrine prohibits carriers from charging for non-tariffed services, Qwest relies heavily on the non-precedential, unreported opinions of the courts of another circuit, and otherwise inapposite case law. Qwest's citation to questionable authority lacks persuasive value.

Qwest relies most heavily on the unreported opinions of the Eastern District of Virginia and the Fourth Circuit in *MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.*[31] Under both the laws of the Third Circuit and the Fourth Circuit, unpublished opinions lack precedential value.[32] Furthermore, in the Fourth Circuit, citation to "unpublished dispositions

---

[30]    *Terminix Int'l Co.*, 150 F.R.D. at 538 (Holding that "[a] party's position, even if superficially plausible, cannot be accepted as a good faith argument for the extension of the existing law if, in framing the pleadings, the party ignores the controlling authority.").

[31]    *MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.*, No. 06-1013, 2005 WL 2145499 (E.D. Va. Aug. 31, 2005) (unpublished opinion), *aff'd*, *MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.*, No. 06-1013, 2006 WL 3026293 (4th Cir. Sept. 21, 2006) (unpublished opinion),.

[32]    *In re: Grand Jury Investigation, No. 06-1464*, 445 F.3d 266, 276 (3d Cir. 2006); Fourth Circuit Local Rule 32.1, Citation of Unpublished Dispositions (2008). In the Third Circuit, citation to unpublished opinions is permitted for the persuasive value of the opinion.

issued prior to January 1, 2007, in briefs and oral arguments ... *is disfavored*, except for the

purpose of establishing res judicata, estoppel, or the law of the case."[33]   The Fourth Circuit only

permits citation to its own unpublished opinions if a party believes that the opinion "has

precedential value in relation to a material issue in a case and that there is no published opinion

that would serve as well ... ."[34]   Under the Fourth Circuit's rules, Qwest is not permitted to cite

to *Paetec* when there is a published opinion, such as *Worldcom*, that conclusively establishes the

law of the Circuit.   Given the unambiguous controlling authority expressed by the Third Circuit

in *Worldcom*, this Court should afford no persuasive value to the *Paetec* case.[35]

Qwest's reliance on the unpublished opinion in *Alliance Commc'ns Co-op. v. Global

Crossing Telecomms., Inc.* is misplaced because the facts of *Alliance* are readily distinguishable

from the present action.[36]   Qwest argues that *Alliance* stands for the proposition that "Plaintiffs

cannot recover charges outside the scope of their filed tariff."[37]   However, *Alliance* cannot stand

for that proposition because, in *Alliance,* it was undisputed that there *was* a valid tariff covering

the services that were provided by plaintiffs Alliance Communications, *et. al.* to defendants

---

[33]   Fourth Circuit Local Rule 32.1, Citation of Unpublished Dispositions (2008).

[34]   *Id.*

[35]   This Court should not give *Paetec* more weight than would a court in the Fourth Circuit. *See, Schaffer v. Eagle Indus.*, Inc., 726 F. Supp. 113, 116, n. 4 (E.D. Pa. 1989) ("One of the cases cited ... is an 'unpublished' Fourth Circuit case. Because ... the Internal Operating Procedures of that Circuit states that citation of such opinions 'is disfavored,' the court finds that case to be of little precedential value and therefore will refrain from discussing it."). To the extent that the Court decides to consider the *Paetec* opinion, Plaintiffs note that *Paetec* directly contradicts the Third Circuit's opinion in *Worldcom.*

[36]   *Alliance Commc'ns Co-op., Inc. v. Global Crossing Telecomms.*, Nos. Civ. 06-4221-KES, 2007 WL 1964271 (D. S.D. July 2, 2007). (unpublished opinion).

[37]   Defendant's Opening Brief in Support of Motion to Dismiss at 9.

11

Onvoy and Transnational.[38]  The defendants in *Alliance* simply argued that the services were not provided *pursuant* to tariff because the defendants did not order the services in the manner required by the tariffs and therefore they could not be "customers" that were liable under the tariffs.[39]  The court held that, because there were valid tariffs covering the services in question and the manner in which they were to be ordered, the filed tariff doctrine prohibited the plaintiffs' recovery for services under an equitable theory.[40]

Here, KMC Data asserts equitable claims *only if the Court finds that KMC Data's filed interstate tariff does not cover the services in question.*  Qwest's reliance on *Alliance* is therefore misplaced.  Furthermore, in the same opinion, the *Alliance* court permitted defendant/third party plaintiff Global Crossing, also a common carrier, to assert third party claims for recovery of unpaid charges under theories of unjust enrichment or *quantum meruit*.[41]  Global Crossing alleged that it "provided, either directly or indirectly, 'switched' services … while Global Crossing only received payment at the lower 'non-switched' rate."[42]  The *Alliance* court concluded that Global Crossing's third party complaint contained sufficient allegations to support its claims for unjust enrichment or *quantum meruit*, and denied the third party

---

[38]    *Alliance*, 2007 WL 1964271, at *7 ("There is no dispute that plaintiffs were operating under validly filed tariffs.").

[39]    *Id.* at *3.

[40]    *Id.* at * 7 ("Indeed, plaintiffs do not dispute that the filed rate doctrine bars their claims for unjust enrichment if plaintiff's tariffs are valid. And because there is no dispute that plaintiffs' tariffs are valid, the court finds that plaintiffs cannot state a claim for recovery based upon unjust enrichment.").

[41]    *Id.* at *18.

[42]    *Id.*

defendants' motion to dismiss.[43]  Contrary to Qwest's characterization of the case, the *Alliance* court implicitly held that a common carrier *may* maintain an action for unjust enrichment to recover unpaid charges under proper circumstances such as where a tariff does not cover the services provided.

   *AT&T Corp. v. JMC Telecom, LLC*, also relied on by Qwest, is distinguishable for the same reason.[44]  Qwest cites *JMC* for the proposition that "[a]ccording to the filed rate doctrine, a customer is prevented from enforcing contract or tort rights that contradict the tariff."[45]  In *JMC*, there was no dispute that AT&T possessed a valid tariff that covered the services in question.[46] By contrast, here KMC Data asserts its equitable claims as alternative claims if it is found KMC Data's tariff does not cover its services. If there is no applicable tariff, it is impossible for KMC Data's claims to "contradict the tariff."[47]

   The case of *Union Telephone Co. v. Qwest Corp.*, on which Qwest relies, also is readily distinguishable.[48]  In *Union*, the District of Wyoming found that plaintiff Union's tariffs did not cover the local interconnection services provided by Union to Qwest.[49]  Sections  251 and 252 of

---

[43]   *Id.* ("Because the third-party complaint contains allegations supporting each of the three elements for unjust enrichment, Onvoy's motion to dismiss this claim is denied.").

[44]   *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 532 (3d Cir. 2006).

[45]   Defendant's Opening Brief in Support of Motion to Dismiss at 9, *quoting JMC*, 470 F.3d at 532.

[46]   *Id.* at 531-32.

[47]   *Id.*

[48]   *Union Tel. Co. v. Qwest Corp.*, No. 02-CV-209-2, 2004 WL 4960780, at *15 (D. Wyo. May 11, 2004) (unpublished opinion), *aff'd*, 495 F.3d 1187, 1197 (10th Cir. 2007).

[49]   *Id.* at *12-14.

the Communications Act require all carriers to "interconnect, directly or indirectly with other carriers," and "imposes a duty on all local exchange carriers to establish reciprocal compensation agreements" for such interconnection services.[50] The district court held that these statutory requirements applied to local exchange carriers Union and Qwest, and required them to enter into a negotiated agreement setting forth the rates for Union's services to Qwest.[51]

On appeal, The Tenth Circuit Court of Appeals agreed that section 251 required Union to enter into an interconnection agreement for the exchange of local traffic with Qwest.[52] The Court of Appeals held that "[b]ecause federal law requires [local exchange carriers] such as Qwest and Union to set rates through interconnection agreements, allowing Union to recover damages under a theory of unjust enrichment would frustrate the federal regulatory mechanism."[53] The Court of Appeals *did not* hold that the filed tariff doctrine prohibited Union's claims for unjust enrichment and *quantum meruit*. Rather, the Court of Appeals held that, considering the "issues and facts in the case before us, we hold that it is inappropriate to imply a contract in equity, considering that under federal law Union had an obligation to contract directly with Qwest ... ."[54]

The present case is distinguishable from the *Union* case because KMC Data and Qwest are not exchanging local traffic and therefore no obligation to enter into an interconnection agreement  pursuant to section 251, or any other statute or regulation is implicated.  Section 251

---

[50]     *Id.* at *2 ((*referencing* 47 U.S.C. §§ 251 and 252).

[51]     *Id.* at *12.

[52]     *Union*, 495 F.3d at 1197 (*referencing*  47 U.S.C. § 251).

[53]     *Id.* (internal citation omitted).

[54]     *Id.*

14

does not apply to the access services provided by KMC Data to Qwest.[55]  Accordingly, the Tenth

Circuit's holding in *Union* is inapplicable to the present case.

Under the unambiguous law of the Third Circuit as expressed in *Worldcom v. Graphnet*,

if this Court finds that the services provided by KMC Data to Qwest are not covered by KMC

Data's federal tariff, KMC Data may recover the value of the services it rendered to Qwest under

an equitable theory. Accordingly, this Court should deny Qwest's motion to dismiss Counts II,

III, IV and V of Plaintiffs' complaint.

## C.  KMC Data Adequately States Claims for Breach of Implied Contract and Open Account

The Complaint's allegations are sufficient to support KMC Data's claims of implied

contract and open account as well, because a trier of fact could reasonably conclude from those

allegations that Qwest intended to contract with KMC Data.  Qwest argues that KMC Data's

claims for breach of implied contract and action on open account fail because the Complaint

alleges that Qwest "protested the charges and informed Plaintiffs that the services at issue were

of no benefit to it."[56]  However, the Complaint also alleges that Qwest knows the rates that KMC

Data charges for service,[57]  refuses to pay for service,[58]  but continues to accept and benefit from

KMC Data's service,[59] and even insists that KMC Data continue to provide such service.[60]

---

[55]    *AT&T Corp.*, 317 F.3d at 236-37 ("There is no logical connection, however, between the alleged duty to interconnect and the payment of bills for access services; this is even more apparent once one realizes that the duty to interconnect requires only a physical linkage of facilities, not the provision of services.").

[56]    Defendants' Opening Brief in Support of Motion to Dismiss at 5.

[57]    Plaintiffs' Complaint at ¶ 42.

[58]    *Id.* at ¶ 19-20.

[59]    *Id.* at ¶ 41.

Qwest's argument that an implied contract could not exist as a matter of law fails because Qwest's actions, which the Complaint pleads, belie its words. A trier of fact can reasonably infer from the Complaint's allegations that Qwest intended and intends to be bound by implied contract, despite its self serving statements to the contrary.

### 1. KMC Data alleges sufficient facts to state a claim of implied contract.

An implied in fact contract arises from mutual agreement and intent to promise, but the agreement and promise have not been verbally expressed.[61] The agreement is inferred from the conduct of the parties.[62] Intention to make a promise may be manifested by implication from other circumstances, "including course of dealing or usage of trade or course of performance."[63] The Third Circuit Court of Appeals applies an "objective" theory of implied contract rather than a "subjective" theory of implied contract.[64] Under the objective theory, "the conduct of a party may manifest assent, even though [a party] does not in fact assent."[65]

In their Complaint, Plaintiffs allege that:

- Prior to November 2005 Qwest paid for KMC Data's services without objection;[66]

- Qwest knows the rates that KMC Data charged for service;[67]

---

[60]    *Id.* at ¶ 21.

[61]    *In the Matter of Penn Central Transp. Co.*, 831 F.3d 1221, 1228 (3d Cir. 1987).

[62]    *Id.*

[63]    *Luden's, Inc. v. Local Union No. 6*, 28 F.3d 347, 355 (3d Cir. 1994).

[64]    *Id.* at 364, note 29.

[65]    *Id.* (*citing* REST. 2D CONTRACTS § 19(3) (1981)).

[66]    Plaintiffs' Complaint ("Complaint") at ¶ 48.

[67]    *Id.* at ¶ 42.

16

- Qwest knows that KMC Data is in fact providing service to Qwest;[68]

- Qwest knows that KMC Data expects to be paid for its services;[69]

- Qwest accepted and continues to accept KMC Data's services;[70]

- Qwest insists that KMC Data continue to provide uninterrupted service; and[71]

- Qwest has benefited and continues to benefit from KMC Data's services.[72]

Despite Qwest's self serving refusals to pay for service and statements that KMC Data's services are of no benefit to it, Qwest's conduct indicates the contrary. Qwest's conduct demonstrates that it highly values KMC Data's services and that it intends to continue accepting and using such service for the foreseeable future.

Under analogous circumstances, the FCC concluded that conduct similar to Qwest's indicated an intent to remain in a contractual relationship.[73] In *MGC Communications, Inc. v. AT&T Corp.*, plaintiff MGC asserted that defendant AT&T improperly refused to pay for access services provided by MGC to AT&T.[74] AT&T argued that it expressly terminated its contractual relationship with MGC by letter, which stated that AT&T "will not purchase switched access

---

68      *Id.* at ¶ 40.

69      *Id.*

70      *Id.* at ¶ 41.

71      *Id.* at ¶ 43.

72      *Id.* at ¶ 54.

73      *MGC Commc'ns, Inc. v. AT&T Corp.*, 14 FCCR 11,647, 11,657 (Comm. Car. Bur. July 16, 1999), *aff'd*, 15 FCCR 308, 311 at ¶ 9 (F.C.C. 1999).

74      *MGC Commc'ns, Inc.*, 14 FCCR at 11647.

services under the terms and conditions" of MGC's tariff.[75]  However, AT&T's letter also stated that AT&T intended to "continue completing calls to and from MGC customers (which is to say receiving MGC's access services)... ."[76]  MGC continued to provide access services to AT&T, but AT&T refused to pay.[77]

The FCC found that the effect of AT&T's ambiguity was to put MGC in an "intractable dilemma" by forcing MGC to choose between providing service without compensation, or ceasing to provide service and facing the possible adverse legal and business consequences.[78] The FCC concluded that, under such circumstances, "AT&T was obligated to make its intent to terminate absolutely unambiguous."[79]  The FCC inferred from AT&T's equivocal conduct that it intended to be bound by contract, despite AT&T's purported termination.[80]  The FCC held that AT&T's failure to pay for MGC's services amounted to "impermissible self help in violation of section 201(b)" of the Communications Act.[81]

Qwest's refusal to pay for KMC Data's services, but continued acceptance of such services and *insistence* that KMC Data continue to provide such services, places KMC Data in

---

[75]      *Id.* at 11654.

[76]      *Id.*

[77]      *Id.*

[78]      *Id.* at 11657.

[79]      *Id.*

[80]      *Id.* at 11659.

[81]      *Id.* at 11650.

the same "intractable dilemma."[82]   KMC Data is forced to choose between continuing to provide

access service to Qwest knowing that it will not be paid before formal legal resolution, or failing

to transmit traffic to Qwest's network and running significant business and legal risks.  Like

AT&T in *MGC*, Qwest cannot have it both ways. Under these circumstances, Qwest is obligated

to make its intent not to contract with KMC Data "absolutely unambiguous."  It has not done so.

Qwest's argument that KMC Data fails to state a claim for implied contract because an

express contract exists between the parties is similarly unavailing, and contradicts Qwest's

previous arguments. The existence of an express contract between the parties will only bar

finding an implied contract if the implied contract covers the same subject matter as the express

contract.[83]  If, as Qwest argues, KMC Data's tariff does not cover the services in question, then

finding an implied contract for these services cannot be precluded by the presence of an express

contract covering the same subject matter.

Accordingly, it can be reasonably inferred from the Complaint's factual allegations

relating to Qwest's conduct that Qwest intended to be bound by contract. This court should

therefore deny Qwest's motion to dismiss Count II of Plaintiffs' complaint.

### 2.    KMC Data alleges sufficient facts to state a claim of open account.

The same allegations of fact that support KMC Data's claim of implied contract also are

sufficient to support a claim of open account. Claims to recover on open account are contract

---

[82]    *Id.*

[83]    *See*, *ITT Fed. Support Servs. v. United States*, 531 F.2d 522, 528 n.12 (3d Cir. 1976)
("The existence of an express contract precludes the existence of an implied contract *dealing
with the same subject*.") (emphasis added).

claims.[84] "An account stated is nothing more or less than a contract express or implied between the parties. It is an agreement which they have come to regarding the amount due on past transactions." [85] An open account "merely signifies an account between two parties having an unfinished series of money transactions."[86] Where the parties dispute the existence of an open account, "the rights of the litigants turn upon the existence or non-existence of an underlying transaction whereby a defendant owes money to a plaintiff."[87] Agreement to an account may consist of express statements or be implied from conduct.[88] "Because it is necessary to establish only an implied promise, and not necessarily an admission of the obligation or debt as such, all of the facts surrounding each case should be admissible to determine whether the implication of such a promise is appropriate."[89]

As established above, KMC Data has sufficiently alleged that Qwest is bound to pay for KMC Data's services under an implied contract. KMC Data has therefore adequately alleged "open account," because it can be reasonably inferred from KMC Data's allegations that Qwest created an account for unpaid charges, pursuant to the implied contract for service. This account

---

[84]     *A.P.S., Inc. v. Standard Motor Prods., Inc.*, 295 B.R. 442, 456 (D. Del. 2003).

[85]     29 WILLISTON ON CONTRACTS § 73:56 (4th ed. 2007).

[86]     *Arkwright Mut. Ins. Co. v. Bargain City, U.S.A., Inc.*, 373 F.2d 701, 705 (3d Cir. 1967) (*citing* WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (2nd ed. 1961).

[87]     *See, e.g., Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 848 (Del. Super., 1980) ("In the case of an unqualified allegation of account, the rights of the litigants turn upon the existence or non-existence of an underlying transaction whereby a defendant owes money to a plaintiff.").

[88]     29 WILLISTON ON CONTRACTS § 73:58 (4th ed. 2007)

[89]     *Id.*

remains "open" because Qwest insists that KMC Data continue to provide services to Qwest, and still refuses to pay.

Qwest heavily relies on the unreported, vacated opinion of the Northern District of Georgia in *ITC Deltacom Commc'ns v. US LEC Corp.* to support its argument that Plaintiffs have not sufficiently alleged a claim for open account.[90] Qwest argues that the District Court's analysis of the facts in *ITC Deltacom* is authoritative in the instant case.[91] However, the opinion relied upon by Qwest was vacated by the Northern District of Georgia.[92] Qwest failed to disclose to the Court that *ITC Deltacom* had been vacated. As a vacated opinion, *ITC Deltacom* should not be afforded any persuasive value.[93] Accordingly, this Court should not rely on the analysis in *ITC Deltacom*, or afford any weight to Qwest's arguments relying on the vacated

---

[90]     *ITC Deltacom Commc'ns v. US LEC Corp.*, No. Civ.A. 3:03-CV-116-J, 2004 WL 3709999 (N.D. Ga. March 15, 2004) (unpublished opinion); vacated by order of July 2, 2004, attached hereto as Exhibit A.

[91]     Defendant's Opening Brief in Support of Motion to Dismiss at 7 ("As in *ITC Deltacom*, there can be no open account here."). Qwest notes that the *ITC Deltacom* opinion was cited with approval by the FCC in the *Eighth Report and Order*, 19 FCCR 9108, ¶ 18 (F.C.C. 2004). However, Qwest does not limit its reliance on *ITC Deltacom* to the limited proposition for which the FCC cited it: e.g., that prior to the order, "it would not have been unreasonable for a competitive LEC to charge the tariffed benchmark rate for traffic to or from end-users of other carriers, provided that the carrier serving the end-user did not also charge the IXC and provided that the competitive LEC's charges were otherwise in compliance with and supported by its tariff." *Id.* Qwest also fails to note that the FCC's limited citation to *ITC Deltacom* in its opinion issued on May 18, 2004, *before ITC Deltacom* was vacated on July 2, 2004.

[92]     Exhibit A.

[93]     *See, e.g. Horowitz v. Federal Kemper Life Assurance Co.*, 861 F. Supp. 1252, 1260 (E.D. Pa. 1994) ("Finally, perhaps the most practical reason why defendant's reliance on the *Ostrov* decision is misplaced is that it was vacated by the Third Circuit."); *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp.2d 1317, 1324 n.5 (S.D. Fla. 2000) (Plaintiff also relies heavily in her brief on *Cuizon v. Kedma Ltd. Cuizon* … an unpublished opinion from the Southern District of New York that was vacated on December 17, 1998. Accordingly, the *Cuizon* opinion carries no precedential or persuasive weight in this court.") (internal citation omitted).

21

opinion.[94] In any event, the *ITC Deltacom* case is distinguishable because here it can be reasonably concluded from the allegations relating to Qwest's conduct that Qwest knew and agreed to the rates charged for service.

Accordingly, KMC Data's allegations are sufficient to support a claim that Qwest opened an account pursuant to an implied contract, and that the account remains open. Accordingly, this Court should deny Qwest's motion to dismiss Count III of Plaintiffs' Complaint.

## V.
## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Counts II, III, IV and V of Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

OF COUNSEL:

Ky E. Kirby
Jonathan S. Frankel
Frank Lamancusa
Randall M. Levine
BINHGAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
(202) 373-6000

Dated:  February 15, 2008
849001 / 32559

POTTER ANDERSON & CORROON LLP

By:   */s/ David E. Moore*
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE  19899
     Tel:  (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

*Attorneys for Plaintiffs*
*HyperCube, LLC and KMC Data, LLC*

---

[94]     Qwest's reliance on a vacated opinion without informing the Court of its vacated status is highly questionable. *See, Horowitz*, 861 F. Supp. at 1260 ("Defendant's counsel had a duty … to conduct a reasonable investigation into the law and, *by citing a vacated holding to this Court, they breached that duty*.") (emphasis added) (internal citation omitted); *see also Fed. Ins. Co. v. Ayers*, 741 F. Supp. 1179, 1188 (E. D. Pa. 1990) (observing that citation to a vacated opinion is improper if the vacated opinion is used "to support any of [the party's] arguments for dismissal."); *Smith v. United Transp. Union Local No. 81*, 594 F. Supp. 96, 101 (S.D. Cal. 1984) (discussing impropriety where defendants' counsel failed to cite to an *en banc* opinion which vacated the panel decision on which defendants relied, and noting that this conduct "is more than a merely sloppy failure to "Shepardize" a case.").

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 15, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on February 15, 2008, the attached document was Electronically Mailed to the following person(s):

Thomas C. Grimm
Benjamin J. Schladweiler
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
tgrimm@mnat.com
bschladweiler@mnat.com

Robert G. Krupka
Laura M. Burson
Helen Hong
Kirkland & Ellis LLP
777 S. Figueroa Street, Suite 3400
Los Angeles, CA  90017
service-solvay@kirkland.com

By:  /s/ David E. Moore
      Richard L. Horwitz
      David E. Moore
      Potter Anderson & Corroon LLP
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      P.O. Box 951
      Wilmington, DE  19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

799366 / 30651

# EXHIBIT A

# *ORIGINAL*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Newnan

JUL 2 0 2004

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

| | | |
|---|---|---|
| ITC^DELTACOM COMMUNICATIONS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| US LEC CORP., US LEC OF GEORGIA INC., US LEC OF ALABAMA INC., US LEC OF FLORIDA INC., US LEC OF TENNESSEE INC. (d/b/a US LEC OF MISSISSIPPI), US LEC OF NORTH CAROLINA INC., US LEC OF LOUISIANA INC., US LEC OF TENNESSEE INC., | ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION FILE NO. 3:02-CV-116-JTC |
| Defendants. | ) ) | |

## ORDER

Plaintiff filed this action alleging claims under the Georgia RICO statute, O.C.G.A. § 16-14-1, et seq., the Georgia Deceptive Trade Practices statute, O.C.G.A. § 10-1-372, and claims for common law fraud and negligent misrepresentation. Defendants denied Plaintiff's allegations of wrongdoing and asserted a counterclaim alleging claims for breach of contract, quantum meruit and Plaintiff's failure to pay outstanding sums owed on an established open account. On March 15, 2004, the Court entered an Order that, among other things, denied US LEC's motion for summary judgment in part, granted US LEC's summary judgment motion in part, and granted ITC's motion for partial summary judgment on US LEC's counterclaims. On April 5, 2004, Defendants filed a Motion for Reconsideration or, alternatively for referral of the case to the FCC. Defendants' motion and the evidence and argument presented in connection therewith raises genuine issues of material fact and law as to certain issues governed by the Court's March 15, 2004 order, including the interpretation of US LEC's FCC Tariff No. 1 and the application of

the filed rate doctrine. On May 27, 2004, the Court set an evidentiary hearing for US LEC's Motion for Reconsideration and denied US LEC's request to refer the case to the FCC.

The Court has been advised that ITC and US LEC have reached a settlement agreement with respect to all claims brought in this action. The parties have moved this Court to vacate its March 15, 2004 Order as a part of their settlement of all claims in this action.

Having reviewed the motion, and being duly advised of the reasons therefore, including the Parties' agreement to the requested relief and for good cause shown, it is hereby ORDERED AND ADJUDGED

1.   The Parties' Joint Motion to Vacate is GRANTED. The Court's Order dated March 15, 2004 is hereby VACATED.


**SO ORDERED** this ___ day of _____, 2004.

JACK T. CAMP
United States District Judge