**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HYPERCUBE, LLC and KMC DATA, LLC    ) | |
|                                           ) | |
|                Plaintiffs,         ) | |
|                                           ) | |
|           v.                    ) | C.A. No. 07-822-GMS |
|                                           ) | |
| QWEST COMMUNICATIONS           ) | **JURY TRIAL DEMANDED** |
| CORPORATION,                            ) | |
|                                           ) | |
|                Defendants.       ) | |

**PLAINTIFFS' MOTION FOR TEMPORARY STAY**

Plaintiffs HyperCube, LLC and KMC Data, LLC ("Plaintiffs"), by and through counsel, hereby move this Court for an order temporarily staying the instant action pending a decision in a related litigation by a Colorado state trial court on Plaintiffs' pending motions to dismiss federal claims improperly before that court for lack of subject matter jurisdiction and for the voluntary dismissal of portions of Plaintiffs' related interstate counterclaims.

"In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."[1]  In the interests of judicial economy and the convenience of the parties, Plaintiffs move the Court to temporarily stay the federal proceedings, because the Colorado court's disposition of Plaintiffs' pending motions will affect the issues raised by the parties before this Court.

Counsel for Plaintiffs consulted with counsel for Defendant, Qwest Communications Corporation ("Qwest"), and Qwest opposes the present motion. Qwest has instead moved this Court to completely abstain from exercising its jurisdiction over the present action pursuant to the "abstention doctrine" established in *Colorado River Water Conservation Dist. v. United*

---

[1]     *Bechtel Corp. v. Local 214, Laborers' Int'l Union of North America*, 544 F.2d 1207, 1215 (3d Cir. 1976).

*States.*[2] For the reasons set forth in their Answering Brief in Opposition to Qwest's Motion for a Stay (filed concurrently herewith), Plaintiffs oppose Qwest's motion for *Colorado River* abstention, and offer the present motion for a temporary stay as an alternative to the "extraordinary" relief sought by Qwest.[3]

As of the filing of this motion, the related Colorado state proceeding and this federal proceeding constitute parallel proceedings. Plaintiffs have asserted claims in this Court seeking declaratory rulings on federal claims raised against them by Qwest and also have raised claims that are substantially identical to their counterclaims asserted in the related Colorado state court proceeding. However, the Plaintiffs have a good faith belief that the two proceedings will not remain parallel. In the related Colorado proceeding, Plaintiffs filed a motion to dismiss Qwest's interstate claims for lack of subject matter jurisdiction, and a motion for voluntary dismissal of Plaintiffs' own interstate counterclaims – which are the claims raised in this Court.[4] Plaintiffs' motions are still pending before the Colorado state court.

If the Colorado state court grants Plaintiffs' motions, the Colorado state proceeding and the instant federal proceeding will no longer be parallel. Rather, the Colorado suit will address only issues pertaining to KMC Data's *intra*state services, governed by state law and KMC Data's state tariffs. This Court will address only issues pertaining to KMC Data's *inter*state services,

---

[2]     *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) (hereinafter "*Colorado River*"). *See, e.g., Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 27-28 (1983) ("[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.").

[3]     *Moses H. Cone Mem. Hosp.*,460 U.S. at 14 ("The doctrine of abstention ... is an *extraordinary* and narrow exception... .").

[4]     Defendants' Motion To Dismiss Certain Claims And Affirmative Defenses Pursuant To C.R.C.P. 12(b)(1) And C.R.C.P. 12(b)(5), And To Conditionally Dismiss KMC Data's Interstate Counterclaims Pursuant To C.R.C.P. 41(a)(2), (attached hereto as Exhibit A).

governed by federal common law, the Communications Act, and KMC Data's federal tariff. Qwest's Motion for a Stay Pursuant to the *Colorado River* Abstention Doctrine improperly asks the Court to stay this case until the Colorado state proceeding has become final, even if the Colorado state court dismisses, and therefore does not decide the merits of, the federal claims asserted here. Qwest's request for relief is inconsistent with the *Colorado River* abstention doctrine which seeks only to avoid duplicative litigation when parallel litigation exists in federal and state court. Plaintiffs' present motion for stay is designed to preserve judicial economy at the same time it preserves the parties' rights to have their federal claims decided here on the merits when parallel state proceedings no longer exist.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[5] When determining whether to order a temporary stay, the district court must "weigh competing interests and maintain an even balance."[6] Here, neither the parties nor the Court are interested in duplicating the Colorado litigation efforts. If the parties proceed in this Court before the Colorado court rules on Plaintiffs' pending motions, there is a risk that the parties will engage in such duplicative litigation. Granting a temporary stay pending the Colorado court's ruling will eliminate that risk.

If the Colorado state court grants Plaintiffs' pending motions to dismiss Qwest's federal claims for lack of subject matter jurisdiction and for voluntary dismissal of the interstate portions of Plaintiffs' counterclaims, the parties may then freely proceed in this Court without duplicative litigation or the risk of conflicting judgments. If the Colorado court denies Plaintiffs' motions,

---

[5]     *Bechtel*, 544 F.2d at 1215. (*quoting, Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)).

[6]     *Bechtel*, 544 F.2d at 1215.

both the parties and the Court will be able to make informed decisions as to whether and how to proceed in this litigation, including how to minimize any duplicative effort. Unlike a stay pursuant to *Colorado River*, the Court will maintain its jurisdiction over the present action, and thus ensure that all parties' rights are protected.

For all the foregoing reasons, Plaintiffs hereby move the Court to temporarily stay this case pending a ruling on Plaintiffs' motions to dismiss and for voluntary dismissal currently pending before, and ripe for decision by, the Colorado state court.

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1

Pursuant to the District of Delaware Local Rule 7.1.1, the undersigned counsel hereby certifies that Plaintiffs' counsel consulted with counsel for Defendant Qwest Communications Corporation and has confirmed that Defendant opposes the relief sought by the instant Motion.

OF COUNSEL:

Ky E. Kirby
Jonathan S. Frankel
Frank Lamancusa
Randall M. Levine
BINHGAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
(202) 373-6000

Dated: February 15, 2008
848993 / 32559

POTTER ANDERSON & CORROON LLP

By:  /s/ David E. Moore
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE 19899
     Tel: (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

*Attorneys for Plaintiffs*
*HyperCube, LLC and KMC Data, LLC*

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 15, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on February 15, 2008, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| Thomas C. Grimm | Robert G. Krupka |
| Benjamin J. Schladweiler | Laura M. Burson |
| Morris, Nichols, Arsht & Tunnell | Helen Hong |
| 1201 North Market Street | Kirkland & Ellis LLP |
| P.O. Box 1347 | 777 S. Figueroa Street, Suite 3400 |
| Wilmington, DE 19899 | Los Angeles, CA 90017 |
| tgrimm@mnat.com | service-solvay@kirkland.com |
| bschladweiler@mnat.com | |

By: /s/ David E. Moore
       Richard L. Horwitz
       David E. Moore
       Potter Anderson & Corroon LLP
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       P.O. Box 951
       Wilmington, DE 19899-0951
       (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

799366 / 30651

# EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | |
| QWEST COMMUNICATIONS CORPORATION,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>   v.<br><br>HYPERCUBE, LLC,<br><br>Defendant,<br><br>and<br><br>KMC DATA, LLC,<br><br>Defendant and Counterclaim-Plaintiff. | |
| Attorneys for Defendant HyperCube, LLC and Defendant and Counterclaim-Plaintiff KMC Data, LLC:<br><br>Richard L. Fanyo, #7238<br>David W. Furgason, #2122<br>Dufford & Brown, P.C.<br>1700 Broadway, Suite 2100<br>Denver, Colorado 80290-2101<br>Telephone: (303) 861-8013<br>Facsimile: (303) 832-3804<br>E-mail: rfanyo@duffordbrown.com<br>    dfurgason@duffordbrown.com | Case Number: 06cv6404<br><br><br>Div:<br><br>Ctrm: 19 |
| **DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS AND AFFIRMATIVE DEFENSES PURSUANT TO C.R.C.P. 12(b)(1) AND C.R.C.P. 12(b)(5), AND TO CONDITIONALLY DISMISS KMC DATA'S INTERSTATE COUNTERCLAIMS PURSUANT TO C.R.C.P. 41(a)(2)** | |

      HyperCube, LLC ("HyperCube") and KMC Data, LLC ("KMC Data") (collectively, "Defendants"), by counsel, respectfully move that the Court, pursuant to C.R.C.P. 12(b)(1), dismiss for lack of subject matter jurisdiction Qwest Communications Corporation's ("Qwest's") claims that (1) allege a violation of the Federal Communications Act of 1934, as amended ("Communications Act" or "the Act"), 47 U.S.C. §§ 201, *et seq.*; and/or (2) allege a breach of

Defendants' federal interstate tariffs. Defendants further move that the Court dismiss for lack of subject matter jurisdiction Qwest's affirmative defenses that are premised on alleged rate discrimination in violation of state public utility statutes.

If the Court grants Defendants' 12(b)(1) motion, KMC Data respectfully requests that the Court exercise its discretion under C.R.C.P. 41(a)(2) and order the voluntary dismissal of KMC Data's interstate counterclaims, without prejudice, as well.

Finally, Defendants move that the Court, pursuant to C.R.C.P. 12(b)(5), dismiss those of Qwest's affirmative defenses that are premised on alleged rate discrimination in violation of state public utility statutes for failure to state claims upon which relief may be granted.

---

**CERTIFICATE OF COMPLIANCE WITH C.R.C.P. 121, § 1-15(8).** The undersigned counsel hereby states that counsel for the Defendants requested on December 14, 2007 that counsel for Plaintiff advise whether Plaintiff would voluntarily dismiss the claims that are the subject of this motion. Although Plaintiff's counsel advised that a response would be forthcoming within a few days, no response has been provided to date and counsel have therefore been unable to resolve the issues briefed herein.

---

## I.    INTRODUCTION

### A.    Introduction to Defendants' Motion to Dismiss Pursuant to C.R.C.P. 12(b)(1)

Defendants respectfully move the Court to dismiss from Qwest's Second Amended Complaint the entirety of Count V and the portions of Counts I, II, III, IV and VI which assert claims based on Defendants' charges for interstate access services provided by KMC Data under its federal interstate tariff because the Court lacks subject matter jurisdiction over claims for damages arising out of violations of interstate tariffs and the Communications Act.

Pursuant to Section 207 of the Act, 47 U.S.C. § 207, the federal courts and the Federal Communications Commission are vested with exclusive jurisdiction over all claims for damages by a customer against a common carrier. Qwest's Count V and the interstate portions of Counts I, II, III, IV and VI are federal claims predicated upon Defendants' alleged violations of KMC Data's federal interstate tariff. Under section 207's grant of exclusive federal jurisdiction to the federal courts and the FCC, this Court lacks subject matter jurisdiction to adjudicate those claims.

Defendants also move that this Court dismiss Qwest's affirmative defenses VII and VIII which are predicated on alleged rate discrimination in violation of state public utility statutes. State public utilities statutes vest exclusive jurisdiction in the applicable state public utilities commissions to adjudicate claims alleging rate discrimination. Subject matter jurisdictional limitations apply as much to affirmative defenses as to offensive claims. Accordingly, this Court lacks subject matter jurisdiction to adjudicate Qwest's affirmative defenses VII and VIII and should dismiss these defenses pursuant to C.R.C.P. 12(b)(1).

**B.    Introduction to KMC Data's Conditional C.R.C.P. 41(a)(2) Motion for Voluntary Dismissal of Its Interstate Counterclaims**

In the event the Court grants Defendants' C.R.C.P. 12(b)(1) motion to dismiss Qwest's interstate claims, KMC Data respectfully requests that the Court exercise its discretion under C.R.C.P. 41(a)(2) to dismiss the interstate portions of Defendants' Second Amended Counterclaims without prejudice. If Qwest's interstate claims are dismissed, these claims will be litigated in federal court.[1] Consequently, in the interest of judicial economy, Defendants request that the Court dismiss the interstate portions of their own counterclaims, so that all interstate issues between the parties, including KMC Data's interstate counterclaims, may be litigated in that federal forum.

**C.    Introduction to Defendants' Motion to Dismiss Pursuant to C.R.C.P. 12(b)(5)**

Defendants further move that the Court, pursuant to C.R.C.P. 12(b)(5), dismiss Qwest's affirmative defenses VII and VIII that are premised on alleged rate discrimination in violation of state public utility statutes because of Qwest's failure to state a claim upon which relief may be granted. Despite its affirmative defenses being based upon other states' statutes, Qwest has failed to specify which statutes Defendants have allegedly violated. Accordingly, Qwest has not properly pled its affirmative defenses and they should be dismissed.

## II.    FACTUAL BACKGROUND

**A.    Facts Leading to the Present Dispute**

As has been discussed in previous pleadings, KMC Data provides, among other things, interstate and intrastate switched access service to various customers, including interexchange ("IXC") carriers (commonly referred to as long distance carriers) and commercial mobile radio service ("CMRS") carriers (commonly referred to as wireless carriers). These interstate and intrastate access services enable an IXC to originate or terminate long distance calls to end user customers using local network facilities of the Public Switched Telephone Network ("PSTN").

As an IXC, Qwest provides a toll-free, or "8XX," service. Businesses that purchase this 8XX service from Qwest are assigned an "800" or "888" toll-free number that allows their customers to telephone the business without incurring a long-distance, or toll, charge. Qwest relies on other carriers, such as KMC Data, to participate in the delivery of toll-free calls from the calling parties to the Qwest business customers that have been assigned the toll-free numbers by Qwest.

When KMC Data's local network facilities receive a wireless toll-free call destined to one of Qwest's customers, KMC Data then provides access services to Qwest in connection with that call, including switching and transport, and an associated 800 database query. If the originating and terminating points of the call are in the same state, then the type of service KMC

---

[1]    *KMC Data, LLC v. Qwest, LLC*, Case no. 07-822, (D. Del.). (Complaint filed Dec. 17, 2007) (Exhibit A hereto.)

Data provides to Qwest is called "intrastate switched access service."[2] KMC Data presently has tariffs on file with certain state public service or utility commissions which contain the rates, terms and conditions for intrastate switched access services in those states.[3] If the originating and terminating points of the call are not in the same state, then the type of service KMC Data provides to Qwest is called "interstate switched access service." KMC Data presently has a tariff on file with the Federal Communications Commission that contains the rates, terms, and conditions for its interstate switched access services.

Qwest disputes whether KMC Data's intrastate and interstate switched access tariffs cover the intrastate and interstate switched access services and associated 800 database queries provided to Qwest by KMC Data for the wireless toll-free calls made to Qwest's customers and, if not, whether Qwest has any obligation to pay for those services. KMC Data asserts that its intrastate and interstate tariffs cover the services and that those tariffs authorize the charges invoiced to Qwest. Qwest asserts the opposite, and refuses to pay for the vast majority of the services it has received and continues to receive.

**B.    Qwest's Claims for Damages Involving Federal Tariffs for Interstate Services**

On April 16, 2007, ten months after the case was initiated, Qwest filed its Second Amended Complaint asserting eight claims for damages and declaratory relief. Only Qwest's claims regarding the Defendants' provision of interstate access services are the subject of the present motion.[4]

Count V of the Complaint seeks damages resulting from Defendants' alleged breach of KMC Data's federal interstate tariff, and for violations of sections 202 and 203 of the Communications Act. This count concerns only Defendant's federal interstate tariff and the provision of interstate services.[5]

In Counts I, II, III, IV and VI, Qwest seeks damages resulting from Defendants' conduct relating to both interstate and intrastate services. In these counts, Qwest fails to distinguish between damages arising from the provision of interstate services and damages arising from the provision of intrastate services, therefore, each count possesses both an interstate component and

---

[2]    *Id.* at. ¶ 7.

[3]    *Id.* at. ¶ 8.

[4]    Count VII of the Second Amended Complaint alleges only violations of Colorado State Public Utilities Statutes, and so only concerns damages arising from KMC Data's provision of intrastate services. Accordingly, Count VII is not subject to the present motion. Similarly, Count VIII is not subject to the present motion as it seeks injunctive relief prohibiting Hypercube and KMC Data from blocking calls to Qwest customers due to Qwest's failure to pay intrastate access charges.

[5]    Qwest Second Amended Complaint at ¶ 79-85.

an intrastate component.[6]  Only the <u>interstate</u> components of those counts are subject to this motion, as set forth below:

- <u>Count I - Declaratory Judgment</u>: The interstate portion of Count I seeks a declaration from the Court that: (1) Hypercube improperly billed Qwest for Common Trunk Port and Multiplexing services under its *interstate* tariffs; (2) that Qwest is entitled to a return of all *interstate* charges paid for Common Trunk Port and Multiplexing services; and (3) Qwest is entitled to retain all *interstate* charges withheld for the challenged services.

- <u>Count II - Unjust Enrichment</u>: The interstate portion of this claim asks the Court to find that Hypercube received the benefit of $1.97 million in improper access charges under its *interstate* tariffs.

- <u>Count III - Money Had and Received</u>: The interstate portion of this claim asks the Court to find that Hypercube possesses money that it improperly charged Qwest under its *interstate* tariffs, and that this money should be disgorged to Qwest.

- <u>Count IV - Breach of Contract</u>: The interstate portion of this claim asks the court to find that Hypercube's charges to Qwest under KMC Data's *interstate* tariff for services that KMC Data allegedly has not provided constitutes a breach of contract.

- <u>Count VI - Fraud</u>: The interstate portion of this claim asks the court to find that Hypercube falsely represented to Qwest that its access charges were properly billed per KMC Data's *interstate* access tariffs.

In sum, the entirety of Count V is an interstate claim, predicated upon a violation of federal laws and regulations. Counts I, II, III, IV and VI are comprised of interstate and intrastate portions.

## III.    LEGAL STANDARDS APPLICABLE TO 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Subject matter jurisdiction concerns a court's authority to deal with the class of cases in which it renders judgment.[7]  C.R.C.P. 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Issues concerning subject matter jurisdiction cannot be waived, and may be raised at any time.[8]

---

[6]      Qwest Second Amended Complaint at ¶ 55-78, 86-91, 101-111.

[7]      *In Re Marriage of Stroud*, 631 P.2d 168 (Colo. 1981).

[8]      C.R.C.P. 12(h)(3); *Sanchez v. State*, 730 P.2d 328, 331 (Colo. 1986); *People in Interest of Clinton*, 742 P.2d 946, 947 (Colo. App. 1987). In resolving a motion under C.R.C.P. 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction to hear the action. *City of Lakewood v. Brace*, 919 P.2d 231, 244 (Colo. 1996).

## IV.    ARGUMENT ON MOTION TO DISMISS QWEST'S INTERSTATE CLAIMS

### A.    State Courts Lack Jurisdiction to Adjudicate Claims for Damages By a Customer Against a Common Carrier Under § 207 of the Communications Act

This Court lacks subject matter jurisdiction over Qwest's damages claims for violations of the Communications Act as such jurisdiction lies exclusively with the federal courts and the Federal Communications Commission.  In enacting the Communications Act, Congress excluded state courts from adjudicating such disputes.  Reviewing courts have agreed.

While a court may presume that state courts enjoy concurrent jurisdiction with federal courts,[2] Congress can preclude state court jurisdiction and limit jurisdiction to the federal courts, either explicitly or implicitly.[10]  The presumption of concurrent jurisdiction, therefore, may be rebutted by: (1) an explicit statutory directive; (2) an unmistakable implication from legislative history; or (3) a clear incompatibility between state court jurisdiction and federal interests.[11]

Section 207 of the Communications Act satisfies all three prongs of this test.  First, section 207 contains an express grant of jurisdiction to the federal courts and the FCC, to the exclusion of the state courts. To the extent the language of the Communications Act is insufficient, there is also an unmistakable implication from the context and structure of the Act indicating that where Congress intended to provide for concurrent jurisdiction, it did so *expressly.* Finally, because Congress intended to fully occupy the field of regulation over interstate telecommunications services, to the exclusion of state regulation of interstate telecommunications services, to permit state courts to interpret, enforce or invalidate federal interstate tariffs would constitute a clear incompatibility between state court jurisdiction and federal interests.

### B.    A Plain Reading of the Statute Shows That 47 U.S.C. § 207 Vests Exclusive Jurisdiction in the Federal Courts and the FCC

Section 207 of the Communications Act provides that "[a]ny person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make

---

[2]      *See Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 478 (1981); *Consumer Crusade, Inc. v. Affordable Health Care Solutions, Inc.,* 121 P.3d 350, 353-54 (Colo. App. 2005).

[10]      *Gulf Offshore Co.,* 453 U.S. at 478; *Jilot v. State,* 944 P.2d 566, 568 (Colo. App. 1997). It is within Congress' powers to establish exclusive jurisdiction in a federal forum to adjudicate issues of federal law in a particular area that Congress has authority to regulate under the Constitution. *International Longshoremen's Ass'n, AFL-CIO v. Davis,* 106 S. Ct. 1904, 1910 (U.S. 1986).

[11]      *Gulf Offshore Co.,* 453 U.S. at 478.

complaint to the Commission..., or may bring suit..., in any district court of the United States of competent jurisdiction."[12]

When interpreting a statute, Colorado courts first look to its language, which the Court shall construe as written if that language is clear and unambiguous.[13] Under the language of section 207, Congress explicitly directs that plaintiffs shall have the choice of only one of two alternatives: *either* the federal district courts, *or* the FCC. Congress's use of the "either/or" function, therefore excludes any other alternatives beyond those listed and forecloses the possibility of jurisdiction in state courts. While the Colorado courts have not previously construed the language of section 207, the weight of authority reaches the same conclusion and holds that section 207 provides for exclusive jurisdiction in either the federal district courts or the FCC.[14]

Additionally, Congress's use of the word "may" in section 207 does not imply that its grant of jurisdiction to the federal courts or the FCC is permissive rather than mandatory. While in some circumstances, the use of the word "may" can be interpreted to imply that a grant of jurisdiction is merely permissive, the term "may" can also be used to "express a wish or desire," or used as a synonym for "shall" or "must."[15] In construing section 207 and in order to effectuate Congress' intent as expressed by its employ of the "either/or" function, Congress's use of the word "may" is properly interpreted as a synonym for "shall" or "must."

In *Coeur D'Alene Tribe*, the Ninth Circuit applied this rule of statutory construction when it ordered the dismissal of an Indian Tribe's claim for damages under the Communications Act, holding that section 207 precluded jurisdiction in the Tribal courts.[16] The Ninth Circuit held that

---

[12]    47 U.S.C. § 207.

[13]    *See Consumer Crusade, Inc. v. Affordable Health Care Solutions, Inc.*, 121 P.3d 350, 352 (Colo. App. 2005).

[14]    *See e.g., AT&T Corp. v. Coeur D'Alene Tribe*, 295 F.3d 899, 905 (9th Cir. 2002) ("By its express language, § 207 establishes concurrent jurisdiction in the FCC and federal district courts only, leaving no room for adjudication in any other forum - be it state, tribal, or otherwise."); *Citibank, N.A. v. Graphic Scanning Corp.*, 618 F.2d 222, 225 (2d. Cir. 1980) (holding that Communications Act vests exclusive jurisdiction over claims for damages for statutory violations in the federal courts or the FCC); *Van Dussen-Storto Motor Inn, Inc. v. Rochester Telephone Corp.*, 338 N.Y.S.2d 31, 36 (N.Y. App. Div. 1972) ("Since the [Communications Act] is explicit regarding jurisdiction, this Court is deprived of jurisdiction and plaintiff's claims based on violation of the [Communications Act] must be dismissed"); *McCollum v. Western Union Telegraph Co.*, 175 S.W.2d 544, 547 (Tenn. 1943) ("If the suit were based on a violation of the Federal [Communications Act] it would not be cognizable in State Court.").

[15]    *See Board of Com'rs of Pueblo County v. Smith*, 45 P. 357, 362 (Colo. 1896) (holding that in certain classes of statutes the word "may" is to be construed as "must or shall"); *Carleno Coal Sales v. Ramsay Coal Co.*, 270 P.2d 755, 757 (Colo. 1954) ("It is not always true that use of the word 'may' imposes only a permissive right or procedure. It has been held that this word, when considered with the subject matter of a statute, means 'must' or 'shall'").

[16]    *Coeur D'Alene Tribe*, 295 F.3d at 905.

because the statute established alternative fora in the district courts and the FCC, "the Tribe had no recourse to its own courts for vindication of its [Communications Act]-based claim and - like any other plaintiff - could choose only between filing a complaint with the FCC or suing AT&T in federal district court." The 9th Circuit ultimately concluded that because "exclusive jurisdiction rested in either of the two statutorily-provided federal fora, the Tribal Court lacked jurisdiction to entertain the Tribe's claim."[17] This same reasoning applies to the jurisdiction of the Court in the present action.

1.    **There is an unmistakable implication from the structure and context of the Communications Act that Congress intended to vest exclusive jurisdiction in the federal courts and the FCC.**

As discussed more fully in *Gulf Offshore Co.*, a Congressional grant of exclusive jurisdiction may also be implied from the legislative history of a particular statute.[18] However, the legislative history of the Communications Act does not discuss section 207 in particular, nor has section 207 been amended since its enactment in 1934.[19]

In the alternative to such typical sources of legislative history, a basic guide to the meaning of statutory language is the context of the statute as a whole.[20] "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[21]

Under section 207, Congress expressly vests jurisdiction for claims for damages regarding violations of the Communications Act only in the federal district courts and the FCC, without providing for concurrent jurisdiction in the state courts. This omission is significant when taken in the context of the rest of the Communications Act, wherein Congress provided *explicitly* for concurrent jurisdiction when it so intended.[22] Thus, while Congress has elsewhere

---

[17]    *Id.*

[18]    *Gulf Offshore Co.*, 453 U.S. at 478.

[19]    Congress largely copied section 9 of the Interstate Commerce Act when it wrote the language of Communications Act § 207. The relevant sections (in both statutes) authorize an injured person to recover "damages" for an "unlawful" charge or practice; and they state that, to do so, the person may bring suit either before the commission or in a "court" "of the United States." *See Global Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, 127 S. Ct. 1513, 1517 (2007).

[20]    *See Consumer Crusade, Inc.*, 121 P.3d at 352.

[21]    *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (internal quotations and citations omitted).

[22]    *See International Science & Technology Institute, Inc. v. Inacom Communications*, 106 F.3d 1146, 1152 (4th Cir. 1997) (employing the above analysis to hold that § 227 (b)(3) of the Communications Act vests exclusive jurisdiction under the Telephone Consumer Protection Act ["TCPA"] in the *state courts*); 47 U.S.C. § 214(c) (authorizing injunction by *any court of general jurisdiction* for extension of lines or discontinuance of services contrary to certificates of public

in the Communications Act explicitly expressed its intent to provide concurrent jurisdiction, it did not do so in section 207. Accordingly, there is an unmistakable implication from the structure and context of the statute, taken as a whole, that Congress intended to vest exclusive jurisdiction in the federal district courts and the FCC over claims for damages alleging violations of the Communications Act.

### 2. State court jurisdiction of section 207 claims is clearly incompatible with Congress's intent to fully occupy the field of regulation of interstate telecommunications services.

Exclusive federal jurisdiction may also be implied where a clear incompatibility between state court jurisdiction and federal interests exists.[23] The factors generally recommending exclusive jurisdiction under this prong include: (1) the desirability of uniform interpretation; (2) the expertise of federal judges in federal law; and (3) the assumed greater hospitality of federal courts to peculiarly federal claims.[24]

One of the principal purposes of the Communications Act was to create a uniform system of laws and regulations over interstate communications services.[25] Accordingly, the uniform interpretation of both the Communications Act itself, and the federal tariffs that implement the mandates of sections 201 and 202, is of utmost importance to achieving Congress's interest in establishing a uniform system of laws and regulations.[26] If state courts were permitted to create a second body of law interpreting the Communications Act and federal tariffs, federal tariffs could be found to mean different things in different localities. This would create exactly the kind of chaos that the Act seeks to prevent.[27] State court interpretation of federal interstate tariffs is

---

convenience and necessity); 47 U.S.C. § 407 (authorizing suit *in federal court or state court of general jurisdiction* for common carrier's failure to comply with order of payment); 47 U.S.C. § 415(f) (establishing one-year limitation on suits brought *in federal or state courts* to enforce Commission order for payment of money); 47 U.S.C. § 553(c)(1) (authorizing suit *in federal court or any other court of competent jurisdiction* for unauthorized cable reception); 47 U.S.C. § 555(a) (authorizing suit *in federal court or state court of general jurisdiction* to review actions by franchising authority); 47 U.S.C. § 605(e)(3)(A) (authorizing civil action *in federal court or any other court of competent jurisdiction* for unauthorized publication).

[23]     *Gulf Offshore Co.*, 453 U.S. at 478.

[24]     *Id.* at 483-84.

[25]     *Dreamscape Design*, 414 F.3d at 670 ("Detariffing does not alter the fundamental design of the FCA, nor modify Congress's objective of uniformity in terms of and conditions for all localities.").

[26]     *See, id.* (holding that permitting "state law challenges to" carriers' service agreements "could thwart Congress's intent by creating a labyrinth of rates, terms and conditions.") (internal citations and quotations omitted); *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1094 (3d Cir. 1995) ("It seems to us that the congressional purpose can be achieved only if a uniform federal law governs as to the standards of service which the carrier must provide and as to the extent of liability for failure to comply with such standards.").

[27]     *Dreamscape Design*, 414 F.3d at 670.

therefore clearly incompatible with the federal interest in the uniform interpretation and application of federal tariffs and the Communications Act.

Second, all claims under the Act arise under federal law and are governed by federal common law.[28] Federal judges have greater expertise in the application of federal common law than do state judges exercising jurisdiction over federal claims. Third, Congress explicitly sought to limit state regulation over interstate communications rates, services and practices.[29] The exercise of state court jurisdiction is, of itself, state regulation.[30] Therefore, there is a "greater hospitality" in federal courts to the peculiarly federal claims arising under the Communications Act, because only federal courts can implement Congress's intent that states refrain from regulating interstate communications practices.

In sum, the plain language of the statute, the Communications Act's overall structure and context, and the clear incompatibility of state jurisdiction and federal interests, all demonstrate that section 207 excludes state courts from exercising jurisdiction over suits arising under the Communications Act.

C.    **The Court Lacks Jurisdiction Over Qwest's Count V, Because it is a Claim Under § 207 of the Communications Act**

Count V of Qwest's Complaint seeks damages resulting from Defendants' alleged violations of sections 201 and 203 of the Communications Act. This count concerns only Defendant's federal interstate tariff and KMC Data's provision of interstate services.[31] Specifically, Qwest alleges that Hypercube charged approximately $1.77 million in Common Trunk Port charges and Multiplexing charges under KMC Data's federal interstate tariff. Qwest asserts that KMC Data is not, in fact, providing Common Trunk Port services or Multiplexing services, and that the practice of collecting charges for interstate services that a carrier (allegedly) is not actually providing violates section 203 of the Communications Act. Qwest alleges further that this billing practice constitutes an "unjust, unreasonable, and discriminatory — and therefore unlawful" practice under section 201 of the Communications Act. Qwest then directly cites to section 207 of the act for the proposition that it is entitled to "full damages, in the

---

[28]    *Worldcom Inc. v. Graphnet, Inc.*, 343 F.3d 651, 654 (3rd Cir. 2003).

[29]    *Ivy Broadcasting Co. v. AT&T*, 391 F.2d 486, 490 (2d. Cir. 1969) (holding that "the establishment of a broad scheme for the regulation of interstate service by communications carriers indicates an intent on the part of Congress to occupy the field to the exclusion of state law").

[30]    *See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 243 (1959) (holding that the exercise of state court jurisdiction over an action constitutes an act of state regulation, because "regulation can be as effectively exerted through an award of damages as through some form of preventive relief").

[31]    Second Amended Complaint at ¶¶ 79-85.

amount of the unauthorized charges paid to Hypercube under KMC Data's federal tariff, plus reasonable attorney's fees, under sections 206 and 207 of the Communications Act."[32]

As in *Cour D'Alene Tribe*, under the express language of section 207 of the Communications Act, Qwest has no recourse at the state court for its Communications Act based claim. Jurisdiction to adjudicate a claim for damages against a carrier alleging a breach of the Communications Act rests only in the federal district courts or the FCC. Accordingly, this Court should dismiss Qwest's Count V for lack of subject matter jurisdiction.

**D.     The Court Lacks Jurisdiction Over the Interstate Portions of Qwest's Counts I, II, III, IV and VI Because They Constitute Claims Under § 207 of the Communications Act**

Qwest may not avoid section 207's grant of exclusive jurisdiction in the federal courts or the FCC by restyling its claims as state causes of action, where both the Court's analysis and the relief granted would be equivalent under the federal cause of action.[33] The United States Supreme Court has held that the violation of a regulation implementing the Act constitutes a violation of the Act, and is actionable under section 207.[34] A duly-filed tariff is considered a regulation under the Act.[35] Therefore, a suit alleging the breach of a federal tariff constitutes a suit for violation of the Communications Act.

Qwest's Counts I, II, III, IV and VI each allege a state law cause of action and are predicated upon a claim that Hypercube and KMC Data have violated KMC Data's interstate tariff. The analysis that the Court would undergo under the state causes of action is equivalent to the Court's analysis for the alleged breach of the interstate tariff. In order for the Court to find for the plaintiff on any of the state law claims – breach of contract, unjust enrichment, fraud, money had and received, and declaratory judgment – the Court must first determine whether Hypercube's actions conflicted with the terms of the interstate tariff.

The Court cannot adjudicate under Qwest's state law claims what the Court is prevented from adjudicating under Qwest's federal claims. A plaintiff may not avoid the Communication's Act's grant of exclusive jurisdiction by recasting its claims as state causes of action, where the

---

[32]     *Id. at ¶ 84.*

[33]     *See Veda, Inc. v. United States Dep't of Air Force*, 111 F.3d 37, 39 (6th Cir. 1997) (citing *A.E. Finley Assoc., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir.1990) ("[O]ne cannot circumvent exclusive jurisdiction in the Claims Court by suing simply for declaratory or injunctive relief in a case where such relief would be the equivalent of a judgment for money damages.").

[34]     *See Global Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, 127 S. Ct. 1513, 1519 (U.S. 2007) ("Insofar as the statute's language is concerned, to violate a regulation that lawfully implements § 201(b)'s requirements *is* to violate the statute.")(emphasis in original).

[35]     Even after detariffing, a federal tariff is not a mere contract, but is a federal regulation approved and enforced by the FCC, implementing the mandates of section 203. *See Cahmnen v. Sprint Corp.*, 133 F.3d 484, 488-89 (7th Cir. 1998).

analysis the Court would employ and the relief sought are equivalent – "a [c]ongressional grant of exclusive jurisdiction cannot be so easily circumvented."[26]

For all of the interstate components of Qwest's state causes of action, the Court must undergo the same analysis it is precluded from engaging in by section 207 of the Communications Act:

- Only after holding that Hypercube's actions violated the *interstate* tariff can the Court render a declaratory judgment under Count I declaring that Hypercube billed QCC for services either not covered under the tariff or not provided by KMC Data.

- Only after holding that Hypercube's actions violated the *interstate* tariff can the Court conclude under Count II that Defendants were unjustly enriched by the practice.

- Only after holding that Hypercube's actions violated the *interstate* tariff can the Court conclude under Count III that Defendants have "money that belongs to QCC."

- Only after holding that Hypercube's actions violated the *interstate* tariff can the Court conclude under Count IV that such conduct constitutes a breach of contract.

- Only after holding that Hypercube's actions violated the *interstate* tariff can the Court conclude under Count VI that Defendants committed fraud by misrepresenting that its access charges were billed "per KMC Data LLC's interstate . . . tariffs."

Moreover, the relief sought under the state causes of action is the same as the relief sought under the expressly federal cause of action – money damages in the amount charged to Qwest under KMC Data's interstate tariff. Section 207 prohibits state courts from awarding money damages to plaintiffs in suits against common carriers for breach of federal interstate tariffs.

Accordingly, to the extent that Qwest's Counts I, II, III, IV and VI are predicated upon an allegation that Defendants' breached KMC Data's federal interstate tariff and the Communications Act, the Court lacks subject matter jurisdiction to adjudicate these claims, and should dismiss the interstate portions of these claims on that basis.

---

[26]     *See Heller, Ehrman, White & MacAuliffe v. Babbitt,* 992 F.2d 360, 364 (D.C. Cir. 1993); *Consolidated Edison Co. of New York, Inc. v. U.S., Dept. of Energy,* 247 F.3d 1378, 1385 (2d. Cir. 2001) ("This court and its sister circuits will not tolerate a litigant's attempt to artfully recast its complaint to circumvent the [exclusive] jurisdiction of the Court of Federal Claims"); *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1099 (9th Cir. 1990); *Eagle-Picher Indus., Inc. v. United States,* 901 F.2d 1530, 1532 (10th Cir.1990) (quoting *Rogers v. Ink,* 766 F.2d 430, 434 (10th Cir. 1985) ("A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States.")); *see also Am. Sci. Engg., Inc. v. Califano,* 571 F.2d 58, 61-63 (1st Cir. 1978); *Ala. Rural Fire Ins. Co. v. Naylor,* 530 F.2d 1221, 1225-26 (5th Cir.1976).

{00340549.1}                                        12

V.    **ARGUMENT ON C.R.C.P. 12(B)(1) MOTION TO DISMISS QWEST'S AFFIRMATIVE DEFENSES PREDICATED ON ALLEGED RATE DISCRIMINATION IN VIOLATION OF STATE PUBLIC UTILITIES STATUTES**

Defendants respectfully move the Court, pursuant to C.R.C.P. 12(b)(1), to dismiss Qwest's affirmative defense VII, alleging rate discrimination in violation of unidentified state public utilities statutes; and affirmative defense VIII, alleging unclean hands due to alleged rate discrimination in violation of unidentified state public utilities statutes, because the Court lacks subject matter jurisdiction to adjudicate rate discrimination claims.[37]

A.    **The State Public Utilities Statutes Vest Exclusive Jurisdiction in the State Public Utilities Commissions to Adjudicate Claims of Rate Discrimination**

Qwest itself has represented to the Court that most state statutes prohibiting rate discrimination vest exclusive jurisdiction over such claims in the state public utility or service commission: "Most of these states – for example Florida – vest exclusive jurisdiction for a rate discrimination challenge in the state public utilities commission."[38] Defendants do not dispute Qwest's assertion. The Florida Public Utilities Statute § 364.01 provides that "it is the legislative intent to give exclusive jurisdiction in all matters set forth in this chapter to the Florida Public Service Commission in regulating telecommunications companies." Furthermore, the commission "shall have jurisdiction to regulate and supervise each public utility with respect to its rates and service."[39] This jurisdiction extends to suits alleging rate discrimination.[40]

The same is true in California, the state in which Qwest has argued it received most of its intrastate access services from KMC Data. The California Public Utilities Code § 1759(a) states that no "court of this state, except the Supreme Court, to the extent specified in this article, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or...interfere with the commission in the performance of its official duties." The California Supreme Court applies a three part test to determine whether a particular action is precluded

---

[37]    For jurisdictional purposes, an affirmative defense is treated the same as an offensive claim. *See U.S. v. Dunifer*, 219 F.3d 1004, 1007 (9th Cir. 2000) (holding that the jurisdictional limitations of the Federal Communications Act apply to affirmative defenses as well as offensive claims); *U.S. v. Any and All Radio Transmission Equip.*, 207 F.3d 458, 463 (8th Cir. 2000) ("'Where exclusive jurisdiction is mandated by statute, a party cannot bypass the procedure by characterizing its position as a defense to an enforcement action'"). Therefore, the fact that Qwest's allegations of rate discrimination are raised as affirmative defenses is irrelevant for purposes of the Court's subject matter jurisdiction.

[38]    Qwest's Motion to Compel Removal of Defendants' Confidentiality Designations at p. 5 n.8.

[39]    Florida Public Utilities Statute, § 366.04.

[40]    *See Lake Worth Utilities Authority v. Barkett*, 433 So.2d 1278, 1279 (Fl. App. 1983) ("More specifically, the Commission has exclusive jurisdiction to determine the reasonableness of an electricity surcharge, *and whether or not it is discriminatory*").

from being raised in state court by section 1759: (a) whether the PUC possessed authority to formulate a policy concerning the subject matter at issue; (b) whether the PUC exercised that authority; and (c) whether the court action filed against the utility would hinder or interfere with those policies.[41] The California courts have held that the state PUC has authority to formulate policy over a telecommunications utility's practices and rates for purposes of adjudicating discrimination claims, and that the state courts may not decide discrimination cases without infringing upon the PUC's exclusive jurisdiction.[42] Accordingly, the California PUC exercises exclusive jurisdiction over suits alleging rate discrimination by a telecommunications carrier.

The same is true in New York. The New York Public Utilities Commission has exclusive original jurisdiction over public utility rates.[43] This jurisdiction extends to charges that a rate is "is unreasonable or unjustly discriminatory or unduly preferential."[44] Section 93 of the New York Public Service law provides for direct access to the courts in only two situations, neither of which is present here. The first is where a telephone corporation violates the "law of the state of New York," and the other is where an "order of the commission" is disobeyed.

**B.    Reasonableness Determinations Under State Discrimination Claims Require an Examination of the Reasonableness of the Rates Charged and Are Beyond the Court's Jurisdiction**

Qwest's affirmative defense VII alleges rate discrimination under unidentified state public utilities statutes. Qwest's affirmative defense VIII asserts Defendants' unclean hands due to rate discrimination in violation of those same unidentified state public utilities statutes. Regardless upon which statutes Qwest's claims ultimately rest, to evaluate those affirmative defenses, this Court must determine whether the rates Defendants charged Qwest or the rates charged other allegedly "similarly situated" customers were reasonable.[45]

But only state pubic utility commissions are vested with jurisdiction to determine the reasonableness of rates charged for intrastate services in a discrimination claim.[46] This Court,

---

[41]    *See People ex. rel. Orloff v. Pacific Bell*, 80 P.3d 201, 208 (Cal. 2003).

[42]    *See, Dollar-A-Day Rent-A-Car Systems, Inc. v. Pacific Tel. & Tel. Co.*, 26 Cal. App. 3rd 454, 461-462 (Cal. App. 1972) (holding that unless the California Public Utility Commission has first determined that a utility's charges are unjust, unreasonable or discriminatory, a state court has no jurisdiction to entertain claims for damages based on those charges).

[43]    *Van Dussen-Storto Motor Inn, Inc. v. Rochester Tel. Corp.*, 42 A.D.2d 400, 404 (N.Y. Sup. 1973).

[44]    New York Public Service Commission, § 97.

[45]    *Bayles v. Kansas Pac. Ry. Co.*, 22 P. 341, 342 (Colo. 1889) ("It is a well-settled elementary principle of the law of common carriers that mere inequality in charges does not amount to unjust discrimination. The requirement of the law is that the charge made shall be reasonable...the question is whether, under all the circumstances, the charge is reasonable...").

[46]    *See, e.g., CF&I Steel, L.P. v. PUC*, 949 P.2d 577, 584 (Colo. 1997) ("This statute shows the legislature's clear intent to place the primary duty and responsibility for the *determination of just and*

{00340549.1}                                    14

therefore, lacks the jurisdiction to examine the fundamental inquiry of any discrimination claim — whether any disparate rates charged similarly situated customers were unreasonable. Without the authority to decide that question, the Court lacks the jurisdiction to evaluate Qwest's affirmative defenses based on those grounds. Accordingly, the Court should grant Defendant's C.R.C.P. 12(b)(1) motion to dismiss Qwest's affirmative defenses VII and VIII for a lack of subject matter jurisdiction.

## VI.    ARGUMENT ON 12(B)(5) MOTION TO DISMISS QWEST'S AFFIRMATIVE DEFENSES VII AND VIII

Defendants also respectfully move the Court to dismiss Qwest's affirmative defenses VII and VIII for failure to state claims upon which relief may be granted. A motion to dismiss pursuant to C.R.C.P. 12(b)(5) tests the sufficiency of a pleading. A party "may seek dismissal for failure to state a claim at any stage in the proceedings prior to the entry of judgment."[47] When it appears on the face of the complaint that the complaint does not state a claim upon which relief can be granted, the claim is barred. The court has no jurisdiction of the subject matter, and the court can, for that reason, grant a motion to dismiss on that ground.[48]

Qwest's affirmative defense VII alleges that "KMC Data has improperly discriminated against Qwest in its originating access charges *in violation of state public utilities statutes.*" Qwest's affirmative defense VIII alleges that "KMC Data's claims are barred in whole or in part by the doctrine of unclean hands, having, among other acts, improperly discriminated against Qwest in its originating access charges, *in violation of state public utilities statutes.*"

Qwest's affirmative defenses therefore are based upon the statutes of other states. Qwest has failed to plead the specific statutes that Defendants have allegedly breached. "It is elementary that a statute of another state, if essential to the action or defense, must be pleaded. It is regarded as fact not law."[49]

Qwest's affirmative defenses VII and VIII must be dismissed because Qwest has failed to plead the foreign state statutes upon which its defenses are based, failed to allege the conduct that allegedly violated these statutes, and accordingly failed to state a claim upon which relief can be granted. The Court, therefore, should grant Defendants' 12(b)(5) motion to dismiss Qwest's affirmative defenses VII and VIII.

---

*reasonable utility rates* in the Commission, and [provide] a rather complete procedural structure for the Commission to follow in discharging its function") (internal citations omitted).

[47]    *Colorado Land & Resources, Inc. v. Credithrift of America, Inc.*, 778 P.2d 320, 322 (Colo. App. 1989).

[48]    *Fort Collins-Loveland Water Dist. v. City of Fort Collins*, 482 P.2d 986, 989 (1971).

[49]    *Fern v. Crandell*, 246 P. 270, 271 (Colo. 1926); *Pando v. Jasper*, 295 P.2d 229 (Colo. 1956) ("Statutes of foreign states must be pleaded and proved like other facts relied upon in support of claim or defense"); *Mitchell v. Liggett*, 199 P. 486 (Colo. 1921) (Judicial notice cannot be taken of a statute of another state.).

## VII. ARGUMENT ON CONDITIONAL MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO C.R.C.P. 41(a)(2)

Should the Court dismisses Qwest's interstate claims pursuant to Defendants' C.R.C.P. 12(b)(1) motion to dismiss, those claims will be addressed in federal court.[20] KMC Data therefore respectfully moves that, if the Court dismisses Qwest's interstate claims, the Court should exercise its discretion under C.R.C.P. 41(a)(2) to permit dismissal of the interstate portions of KMC Data's Counterclaims I, II, III, IV, V and VI without prejudice. Doing so, would allow all of the parties' interstate claims to be adjudicated in one forum -- the federal court -- and at one trial.

The interstate portions of KMC Data's counterclaims for which leave to take a voluntary dismissal without prejudice is requested are set forth below:

- Count I - Breach of Interstate Tariffs: The interstate portion of this claim alleges that Qwest accepted the terms and conditions set forth in KMC Data's federal interstate tariff, and accordingly is required by law to pay KMC Data the tariffed rates for the services provided. KMC Data further alleges that Qwest has received the services delineated in the federal tariff, and refused to pay the amounts due under the tariff rates. Qwest has therefore breached the terms and conditions of the federal tariff.

- Count II - Breach of Implied Contract: In the alternative to Count I, if the Court should find that KMC Data's interstate tariff does not cover the services provided by KMC Data to Qwest, by insisting on uninterrupted provision of services to Qwest, Qwest entered into an implied contract with KMC Data to pay KMC Data at the tariffed rates.

- Count III - Action on Open Account: In the alternative to counts I and II, Qwest created an open account by accepting and benefiting from the interstate access services and database query services offered by KMC Data. KMC Data has been damaged by Qwest's failure to pay the charges accrued on the account.

- Count IV - Quantum Meruit: In the alternative to the previous counts, KMC Data alleges that if there is no express or implied contract between the parties, Qwest is bound to pay the fair market value of the interstate access services provided to Qwest.

- Count V - Unjust Enrichment: In the alternative to the previous counts, KMC Data alleges that if there is no express or implied contract between the parties, Qwest is bound to pay the fair market value of the interstate services, because Qwest inequitably accepted and retained a benefit conferred by KMC Data.

- Count VI - Declaratory Judgment: The interstate portion of this claim asks the Court to declare that Qwest has breached the express and implied interstate contracts between the

---

[20]    Defendants already have filed a complaint in federal court seeking Declaratory Judgment that they have not committed the Communications Act and interstate-based violations that Qwest has alleged here. *See KMC Data, LLC v. Qwest, LLC*, Case no. 07-822 (D. Del.) (Complaint filed Dec. 17, 2007). (Exhibit A).

parties, and that Qwest is contractually obligated to make timely payment for the interstate charges and late fees as they become due.

**A.    Legal Standards Applicable to C.R.C.P. 41(a)(2) Motion for Voluntary Dismissal**

C.R.C.P. 41(a)(2) provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court." "Although [Rule 41(a)(2)] gives the court discretion to grant or deny a motion to dismiss, a plaintiff's motion to dismiss voluntarily without prejudice generally should be granted, unless granting the motion will cause some legal prejudice to the defendant."[51] The fact that the plaintiff may later bring the same suit against the defendant in another court in and of itself is not sufficient prejudice to a defendant to warrant denying a motion to voluntarily dismiss.[52]

In determining whether a voluntary dismissal without prejudice would cause harm to a defendant, the trial court considers: (a) the duplicative expense of separate litigation; (b) the extent to which the current suit has progressed, including effort and expenses incurred by the defendant; (c) the adequacy of plaintiff's explanation for the need to dismiss; (d) the plaintiff's diligence in bringing the motion to dismiss; and (e) any undue vexatiousness on plaintiff's part.[53]

**B.    The Court Should Grant Voluntary Dismissal Because Qwest Will Not Be Prejudiced Thereby and Dismissal Will Serve the Interest of Judicial Economy**

Granting voluntary dismissal will not prejudice plaintiff QCC under the Court's standard, and will serve the interest of judicial economy.[54] First, if the Court grants Defendants' 12(b)(1) motion regarding Qwest's interstate claims, then Qwest's interstate claims will be adjudicated in federal court. Unless the Court permits dismissal without prejudice of KMC Data's interstate counterclaims, then duplicative litigation is inevitable because Qwest's and KMC Data's interstate claims and counterclaims will be tried in different cases even though they are virtually mirror images of each other. Qwest therefore cannot be prejudiced by the duplicative expense of separate litigation, because there will be a separate litigation of the interstate issues regardless and, given that fact, permitting all interstate claims to be tried before one federal tribunal reduces duplication.

Second, dismissal of KMC Data's interstate claims will not halt or retard the procession of the litigation of the remaining intrastate issues in the state court. Rather, permitting voluntary dismissal of Defendants' interstate counterclaims without prejudice will serve to streamline the

---

[51]    *Tillery v. District Court*, 692 P.2d 1079, 1085 (Colo. 1984); *Powers v. Professional Rodeo Cowboys*, 832 P.2d 1099, 1102 (Colo. App. 1992).

[52]    *Powers*, 832 P.2d at 1099.

[53]    *Id.*

[54]    *Powers*, 832 P.2d at 1099.

remainder of the litigation, limiting the universe of issues to be tried the purely intrastate concerns and reducing confusion.

Third, it is in all parties' economic and legal interests to litigate all of the federal issues in one forum and at one trial. KMC Data's need for voluntary dismissal without prejudice is adequate because there is a substantial danger that if Qwest's interstate claims proceed in federal court, and Defendants' interstate counterclaims proceed in state court, inconsistent outcomes may ensue. Further, because Qwest's interstate claims and KMC Data's interstate counterclaims arise from the same core of operative fact, and will require analysis and construction of the same federal laws and tariffs, all parties have an interest in a single review of the inherently federal issues.

Fourth, KMC Data has not been delinquent in seeking voluntary dismissal. KMC Data seeks dismissal of its interstate counterclaims in connection with its concurrent 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. KMC Data is filing both in response to the discovery of a defect in the Court's subject matter jurisdiction. KMC Data did not unduly delay in seeking dismissal of the interstate counterclaims because as soon it recognized the jurisdictional defect, its counsel contacted Qwest to correct the issue voluntarily. In the absence of Qwest's agreement, KMC Data is forced to file these concurrent motions.

Fifth and finally, KMC Data does not request voluntary dismissal to be "vexatious," but, as discussed above, to pursue the interests of judicial economy. Accordingly, should Qwest's interstate claims be dismissed for lack of subject matter jurisdiction, this Court should grant KMC Data's motion to voluntarily dismiss without prejudice the interstate portions of its counterclaims I, II, III, IV, V and VI.

## VIII.  CONCLUSION

For all of the foregoing reasons, Defendant Hypercube, LLC and Defendant and Counterclaim-Plaintiff KMC Data, LLC respectfully request that the Court:

    (1)    DISMISS Qwest's Count V in its entirety, for lack of subject matter jurisdiction;

    (2)    DISMISS the identified interstate portions of Qwest's Counts I, II, III, IV and VI, for lack of subject matter jurisdiction;

    (3)    DISMISS Qwest's Affirmative Defenses VII and VIII, for lack of subject matter jurisdiction;

    (4)    Grant Leave for Voluntary Dismissal without prejudice of the identified interstate portions of KMC Data's Counterclaims I, II, III, IV, V and VI; and

    (5)    ORDER any other relief that the Court deems just and equitable.

Dated this 21st day of December, 2007.

Respectfully submitted:
DUFFORD & BROWN, P.C.

*Original signature on file at the offices of*
*Dufford & Brown, P.C.*

*s/ Richard L. Fanyo*
Richard L. Fanyo, #7238
David W. Furgason, #2122
Christian D. Hammond, #34271
1700 Broadway, Suite 2100
Denver, Colorado  80290-2101
Telephone:  (303) 861-8013
Facsimile:  (303) 832-3804
E-mail: rfanyo@duffordbrown.com
       dfurgason@duffordbrown.com
       chammond@duffordbrown.com

Ky E. Booth Kirby
Jon Frankel
Frank G. Lamancusa
Randall M. Levine
Bingham McCutchen LLP
2020 K Street NW
Washington, D.C. 20007
(202) 373-6000

ATTORNEYS FOR HYPERCUBE, LLC and
KMC DATA, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2007, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS AND AFFIRMATIVE DEFENSES PURSUANT TO C.R.C.P. 12(b)(1) AND C.R.C.P. 12(b)(5), AND TO CONDITIONALLY DISMISS KMC DATA'S INTERSTATE COUNTERCLAIMS PURSUANT TO C.R.C.P. 41(a)(2)** was served via Lexis/Nexis upon the following:

Timothy R. Beyer
Amy L. Benson
Lauren E. Schmidt
Brownstein Hyatt Farber Schreck, P.C.
410 Seventeenth Street, 22nd Floor
Denver, Colorado 80202-4437

*/s/ Darcie Kurtak*
Darcie Kurtak

{00340549.1}