## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HYPERCUBE, LLC and KMC DATA, LLC ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 07-822-GMS |
| ) | |
| QWEST COMMUNICATIONS ) | **JURY TRIAL DEMANDED** |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION
## TO DEFENDANT'S MOTION FOR STAY PURSUANT TO
## THE *COLORADO RIVER* ABSTENTION DOCTRINE

OF COUNSEL:

Ky E. Kirby
Jonathan S. Frankel
Frank Lamancusa
Randall M. Levine
BINHGAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
(202) 373-6000

Dated: February 15, 2008
849008 / 32559

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiffs*
*HyperCube, LLC and KMC Data, LLC*

# **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES .................................................................................................... ii

I.    NATURE AND STAGE OF THE PROCEEDINGS .......................................................1

II.   SUMMARY OF ARGUMENT ........................................................................................1

III.  STATEMENT OF FACTS ...............................................................................................2

IV.  ARGUMENT ....................................................................................................................5

      A.    Legal Standards Applicable to *Colorado River* Abstention ...................................5

      B.    Abstention is Precluded Because There is Substantial Doubt that the State
           Court Will Resolve All Issues Between the Parties.................................................6

      C.    Qwest Fails to Demonstrate "Exceptional Circumstances" Warranting
           *Colorado River* Abstention ...................................................................................8

           1.    The "piecemeal litigation" factor does not weigh in favor of
                *Colorado River* abstention. ...........................................................................9

           2.    The "source of law" factor weighs against abstention, because
                Plaintiffs' claims arise under federal law................................................13

           3.    The adequacy of the state court to protect Plaintiffs' rights does not
                weigh in favor of abstention ......................................................................15

           4.    That some of the claims were first raised before the state court
                does not weigh heavily in favor of abstention. ..........................................16

            5.    The "inconvenience of the federal forum" factor does not weigh in
                favor of abstention. ...................................................................................18

           6.    Plaintiffs brought their federal complaint in good faith and for
                good cause...................................................................................................19

V.   CONCLUSION................................................................................................................21

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Affymetrix, Inc. v. Systeni, Inc.,*
   28 F. Supp.2d 192 (D. Del. 1998) ..................................................................................18

*Alabama Pub. Serv. Comm'n v. Southern Ry. Co.,*
   341 U.S. 341 (1951) .........................................................................................................6

*Allen v. Board of Educ., Unified School Dist. 436,*
   68 F.3d 401 (10th Cir. 1995) ..........................................................................................8

*Blum v. St. Paul Travelers Ins. Co.,*
   Civil Action No. 07-1268, 2007 WL 2213597 (E.D. Pa., July 30, 2007) ......................11

*Bass v. Butler,*
   258 F.3d 176 (3d Cir. 2001) ...........................................................................................17

*Cardio-Medical Assoc., Ltd. v. Crozer-Chester Med. Center,*
   721 F.2d (3d Cir. 1983) .............................................................................................17, 20

*Colorado River Water Conservation Dist. v. United States,*
   424 U.S. 800 (1976) ..............................................................................................*passim*

*County of Allegheny v. Frank Mashuda Co.,*
   360 U.S. 185 (1959) .........................................................................................................6

*Hartford Life Ins. Co. v. Rosenfeld,*
   Civil Action No. 05-5542 (KSH), 2007 WL 2226014 (D.N.J. Aug. 1, 2007) ................10

*IFC Interconsult, AG, v. Safeguard Int'l Partners, LLC,*
   438 F.3d 298 (3d Cir. 2006) .............................................................................................6

*In re Comcast Cellular Telecommunications Litigation,*
   949 F. Supp. 1193 (E.D. Pa. 1996) ................................................................................16

*In the Matter of Central Railroad Co. of New Jersey,*
   579 F.2d 804 (3d Cir. 1978) ...........................................................................................16

*Joint Stock Society "Trade House of Descendants of Peter Smirnoff v. Walker,*
   936 F. Supp. 177 (D. Del. 1996) ................................................................................18, 19

*Kentucky West Va. Gas Co. v. Penn. Public Utility Comm'n,*
   791 F.2d 1111 (3d Cir. 1986) ...........................................................................................9

*MCI Telecomms. Corp. v. Graphnet,*
    881 F. Supp. 126 (D.N.J. 1995) ................................................................................13, 14

*MCI Telecomms. Corp. v. Teleconcepts, Inc.,*
    71 F.3d 1086 (3d Cir. 1995)...........................................................................................14

*McMurray v. DeVink,*
    27 Fed. Appx. 88 (3rd Cir. 2002) (non-precedential opinion)...............................17

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,*
    460 U.S. 1 (1983)................................................................................................. *passim*

*Ryan v. Johnson,*
    115 F.3d 193 (3d Cir. 1997)................................................................................ *passim*

*Spring City Corp. v. American Buildings Co.,*
    193 F.3d 165 (3d Cir. 1999).................................................................................9, 10, 11

*Smith v. Central Ariz. Water Conservation Dist.,*
    418 F.3d 1028 (9th Cir. 2005) ........................................................................................8

*Truserv Corp. v. Flegles, Inc.,*
    419 F.3d 584 (7th Cir. 2005). .........................................................................................8

*University of Maryland at Baltimore v. Peat Marwick Main & Co.,*
    923 F.2d 265 (3d Cir. 1991)..........................................................................................16

*Worldcom, Inc. v Graphnet,*
    343 F.3d 651 (3d Cir. 2003)............................................................................13, 14, 16

*Worldcom Techs., Inc. v. Intelnet Int'l, Inc.,*
    No. CIV. A. 00-2284, 2001 WL 118957 (E.D. Pa. Feb. 8, 2001) .........................12

## STATUTES

28 U.S.C. § 1404....................................................................................................................18

47 U.S.C. § 207 (2007) ...................................................................................................15, 19

47 U.S.C. § 415 (2007) ...........................................................................................................20

## I.
## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs HyperCube, LLC ("HyperCube") and KMC Data, LLC ("KMC Data")

(together "Plaintiffs") commenced this action against Defendant Qwest Communications

Corporation ("Qwest" or "Defendant") on December 17, 2007, to seek payment for interstate

access services provided to Qwest by KMC Data and invoiced to Qwest since November 2005.

On January 22, 2008, Qwest filed a motion to stay the instant proceeding based on the abstention

doctrine established in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800

(1976). Plaintiffs contend that Qwest has failed to meet its substantial burden under *Colorado*

River and, thus, hereby file their opposition to Defendant's motion to stay.

Additionally, Plaintiffs file simultaneously with this opposition their Motion for a

Temporary Stay, pending a ruling in the related Colorado state court action that may

substantially affect the issues raised before this Court. Plaintiffs assert that such a stay is the

more appropriate mechanism to conserve the parties' and judicial resources.

## II.
## SUMMARY OF ARGUMENT

1.      Because substantial doubt exists that a Colorado state court proceeding involving

Plaintiffs and Qwest will resolve all issues between the parties, abstention pursuant to *Colorado*

*River* is precluded. Plaintiffs have currently pending before the Colorado state court motions to

dismiss Qwest's interstate claims and for voluntary dismissal of their own interstate

counterclaims. If the Colorado state court grants any portion of those motions, the state and

federal cases will not be parallel, and this Court will lack the power to abstain. Because the

Colorado state court's future ruling on Plaintiffs' pending motions cannot be prejudged,

substantial doubt exists that the matter in Colorado state court will remain parallel to the instant

case. Accordingly, the Court need not consider Qwest's "exceptional circumstances" arguments, and should deny Qwest's motion for abstention.

      2.     Furthermore, even if the state and federal proceedings remain parallel, Qwest has failed to demonstrate the necessary exceptional circumstances that warrant the extraordinary relief of *Colorado River* abstention. First, Qwest fails to identify a clearly articulated federal policy against piecemeal litigation and favoring state court resolution of Plaintiffs' claims. Second, all of Plaintiffs' claims arise under federal law and not state law, militating against abstention. Third, even if the state court were adequate to adjudicate all of Plaintiffs' claims this factor could not weigh in favor of abstention, because this factor is only relevant when it weighs *against* abstention. Here, the "adequacy of the state court" factor weighs against abstention, because the state Court is inadequate to adjudicate all of Plaintiffs' claims. Fourth, that the Colorado court first obtained jurisdiction over some of the claims raised here does not weigh heavily in favor of abstention, because there are many unresolved issues remaining before the Colorado state court, including, most particularly, whether it has subject matter jurisdiction over Qwest's federal claims. Fifth, Qwest fails to establish that the Delaware forum is inconvenient. Finally, Plaintiffs brought the present action in good faith and for good cause. On balance, Qwest fails to demonstrate such "exceptional circumstances" to warrant the Court's abdication of its "virtually unflagging" obligation to exercise jurisdiction over cases properly before it.

## III.
## STATEMENT OF FACTS

      KMC Data is a Delaware limited liability corporation with its principal place of business in Texas. KMC Data is in the business of, among other things, providing telecommunications service to various customers, including interexchange ("IXC") carriers (commonly referred to as long distance carriers) and commercial mobile radio service ("CMRS") carriers (commonly

2

referred to as wireless carriers). HyperCube, LLC is a Delaware limited liability corporation, and is the parent of its wholly owned subsidiary, KMC Data, LLC. Qwest is a publicly traded Delaware corporation with its primary place of business in Denver, Colorado.

Plaintiffs' claims in the present action concern only KMC Data's provision of *interstate* access services to Qwest. KMC Data is entitled to bill and to collect access and database query charges for the services it provides to Qwest when KMC Data's telecommunications network and facilities are used in connection with the completion of interstate calls from wireless carriers' customers to Qwest's toll-free service customers. Since October 2005, Qwest has received, accepted, and benefited from KMC Data's interstate access and database query services in connection with wireless calls bound for Qwest's toll-free customers. Qwest accepted the calls that KMC Data delivered to it. Qwest delivered those calls to the customers to which Qwest had assigned the toll-free numbers and charged its customers for those calls.

Commencing with KMC Data's bill for services rendered during October 2005, Qwest began withholding partial payment for interstate toll-free number (or "800") database queries provided by KMC Data to Qwest in connection with wireless toll-free calls. Over time, Qwest also started withholding payment for KMC Data's interstate access services in connection with such calls, including services that are known as common trunk port, multiplexing and tandem switching. By the date that the complaint in this matter was filed, Qwest had refused to pay approximately $1.8 million in KMC Data's charges to Qwest for services rendered. The amount that Qwest has failed to pay to KMC Data grows monthly as Qwest continues to receive services from KMC Data and continues to withhold full or partial payment for those services.

In June of 2006, Qwest initiated litigation against the plaintiffs in Colorado state court seeking a declaration that it is not liable for, and is entitled to return of its few partial payments

3

of, KMC Data's invoices for <u>intra</u>state access services and related database queries provided to Qwest in connection with wireless toll-free calls to Qwest's customers.[1]  In April 2007, Qwest was permitted to file its second amended complaint in that proceeding by which it expanded its request for declaratory relief and for refund of monies paid to include KMC Data's charges for <u>inter</u>state access services and related database queries that KMC Data had provided to Qwest. KMC Data counterclaimed against Qwest seeking payment for both the intrastate and interstate services provided, alleging breach of intrastate and interstate tariffs, breach of implied contract, action on open account, *quantum meruit*, unjust enrichment, and declaratory judgment.

Plaintiffs concluded that the Colorado state court lacks subject matter jurisdiction over Qwest's claims directly relating to KMC Data's provision of and charges for interstate service, pursuant to the Communications Act's express grant of exclusive jurisdiction under 47 U.S.C. § 207 to the federal district courts and the Federal Communications Commission ("FCC"). Accordingly, on December 21, 2007, Plaintiffs filed a motion to dismiss Qwest's interstate claims for lack of subject matter jurisdiction under Rule 12(b)(1) of the Colorado Rules of Civil Procedure.  Plaintiffs simultaneously moved the Colorado court to grant voluntary dismissal of all interstate portions of their own counterclaims should it conclude that Qwest's claims were improperly before the state court.  Plaintiffs filed that motion to keep all claims related to KMC Data's interstate services and charges together in a single action.  Plaintiffs' motions presently are pending before the Colorado state court and are ripe for decision.

Plaintiffs' causes of action for the recovery of unpaid fees for interstate service began to accrue in December 2005.  To ensure that KMC Data's claims were not time barred under the Communications Act's two year statute of limitations, Plaintiffs brought the present action for

---

[1]     *Qwest Communications Corporation v. HyperCube, LLC, et al.*, Civil Action No. 06CV6404 .

the recovery of unpaid fees for interstate services on December 17, 2007. To preserve their interstate claims, KMC Data's claims in the federal court are the same as the counterclaims asserted in the Colorado state court that are the subject of Plaintiffs' motion for voluntary dismissal.

## IV.
## ARGUMENT

### A.    Legal Standards Applicable to *Colorado River* Abstention

Qwest moves the Court to stay these proceedings based on the abstention doctrine articulated in *Colorado River*,[2] asserting that a federal court can dismiss or stay a federal action in deference to a parallel litigation simultaneously proceeding in a state court when "extraordinary circumstances" are present.

The *Colorado River* abstention doctrine recognizes, however, that "the pendency of an action in the state court is no bar to proceedings concerning the same subject matter in the Federal court having jurisdiction."[3] Abstention from the exercise of federal jurisdiction is the exception, not the rule.[4] *Colorado River* abstention is an "extraordinary and narrow exception" to the "virtually unflagging" obligation of the District Court to hear cases properly before it.[5] Only under certain "extremely limited circumstances," may a federal court defer to pending state court proceedings.[6] "Abdication of the obligation to decide cases can be justified … only in the

---

[2]    *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

[3]    *Ryan v. Johnson*, 115 F.3d 193, 195 (3d Cir. 1997).

[4]    *Colorado River*, 424 U.S. at 813.

[5]    *Id.*

[6]    *Ryan*, 115 F.3d at 195.

exceptional circumstances where the order to the parties to repair to state court would clearly serve an important countervailing interest."[7]

A stay ordered pursuant to the *Colorado River* doctrine is no less an abstention than outright dismissal.[8] "[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses."[9] Accordingly, "only the clearest of justifications" will warrant the grant of a *Colorado River* stay.[10] Under this standard, this Court should deny Qwest's motion for the "extraordinary" relief of a *Colorado River* stay.[11]

**B.    Abstention is Precluded Because There is Substantial Doubt that the State Court Will Resolve All Issues Between the Parties**

"The threshold requirement for a district court to even entertain abstention is a contemporaneous parallel judicial proceeding."[12] If the cases are not parallel, the district court "lacks the power to abstain."[13] To be parallel, the cases must "involve the same parties and substantially identical claims, raising nearly identical allegations and issues."[14] A *Colorado River* stay of the present proceedings is not warranted because there is substantial doubt as to

---

[7]      *Id.* (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976), *citing County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)). "It was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." *Alabama Pub. Serv. Comm'n v. Southern Ry. Co.*, 341 U.S. 341, 361 (1951)(Frankfurter, J., concurring in result).

[8]      *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 27-28 (1983) ("We can say, however, that a stay is as much a refusal to exercise jurisdiction as a dismissal.").

[9]      *Id.*

[10]     *See, id.* at 16.

[11]     *Id.* at 14. ("The doctrine of abstention … is an *extraordinary* and narrow exception… .")

[12]     *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006).

[13]     *Ryan* 115 F.3d at 196.

[14]     *Id.* (internal quotations omitted).

6

whether the state and federal proceedings will remain identical and, thus, parallel. Any substantial doubt about this precludes abstention.[15]

As of this Answering Brief, the state and federal cases are parallel because Plaintiffs have sought declaratory rulings on and asserted claims in this Court that are substantially identical to the interstate claims and counterclaims in the related Colorado state court proceeding. However, Plaintiffs submit that it is unlikely the two proceedings will remain parallel. In the related Colorado proceeding, Plaintiffs have filed a motion to dismiss Qwest's interstate claims for lack of subject matter jurisdiction, and have moved to voluntarily dismiss KMC Data's own interstate counterclaims should the Colorado court rightfully conclude that it lacks subject matter jurisdiction to address Qwest's interstate claims. The claims subject to those motions are the claims raised in this Court.[16] Plaintiffs' motions are fully briefed and ripe for decision at this time. If the Colorado court grants Plaintiffs' motions, the state and federal proceedings will no longer be parallel, because the two cases will no longer contain "substantially identical claims." Rather, the Colorado suit will address only issues pertaining to *intra*state service and charges, governed by state law and KMC Data's state tariffs. This Court will address only issues pertaining to *inter*state service and charges, governed by federal common law, the Communications Act, and KMC Data's federal tariff. Thus, if the Colorado court grants Plaintiffs' pending motions, no parallel proceeding will exist and no basis will exist to stay the present proceedings under *Colorado River*.

---

[15]     *Moses H. Cone*, 460 U.S. at 28 ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *If there is any substantial doubt about this, it would be a serious abuse of discretion to grant the stay or dismissal at all.*") (emphasis added).

[16]     Defendants' Motion To Dismiss Certain Claims And Affirmative Defenses Pursuant To C.R.C.P. 12(b)(1) And C.R.C.P. 12(b)(5), And To Conditionally Dismiss KMC Data's Interstate Counterclaims Pursuant To C.R.C.P. 41(a)(2), attached hereto as Exhibit A.

Because Plaintiffs' motions are strongly supported by case law holding that state courts lack subject matter jurisdiction over interstate claims like Qwest's, there is substantial doubt as to whether the Colorado state court will address the merits of the federal issues raised there. Any substantial doubt as to whether the state proceedings will resolve the issues raised in the federal action is sufficient to preclude a stay pursuant to the *Colorado River* abstention doctrine.[17]  The United States Supreme Court has held that it would be a "serious abuse of discretion" to grant a *Colorado River* stay if there is any doubt that the state court will resolve all issues between the parties.[18]  Because it is impossible to predict the Colorado state court's ruling on Plaintiffs' pending motions before the state court, this Court should deny Qwest's motion for a *Colorado River* stay.

**C.    Qwest Fails to Demonstrate "Exceptional Circumstances" Warranting *Colorado River* Abstention**

Even if the state and federal proceedings remain parallel, this Court should deny Qwest's motion for stay pursuant to *Colorado River* because Qwest fails to demonstrate "exceptional circumstances" that warrant this Court's abdication of its "virtually unflagging obligation" to exercise the jurisdiction granted to it by Congress. As articulated in *IFC Interconsult*, the Third Circuit considers the following factors in a *Colorado River* abstention analysis: (1) which court

---

[17]    *Moses H. Cone*, 460 U.S. at 28 (1983); *see also Smith v. Central Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005) ("[T]he existence of substantial doubt as to whether the state proceedings will resolve federal action precludes granting of a *Colorado River* stay. Exact parallelism between the state and federal proceedings is not required; however any substantial doubt is sufficient to preclude a stay....") (internal quotations omitted); *Truserv Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005) ("Any doubt regarding the parallel nature of the state court suit should be resolved in favor of exercising jurisdiction.") (internal citations omitted); *Allen v. Board of Educ., Unified School Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995) ("The court should examine the state proceedings *as they actually exist* to determine whether they are parallel to the federal proceedings, resolving any doubt in favor of exercising federal jurisdiction.") (internal citations omitted) (emphasis in original).

[18]    *Moses H. Cone*, 460 U.S., at 28.

first assumed jurisdiction over a relevant res, if any; (2) whether abstention would aid in avoiding piecemeal litigation; (3) whether federal or state law applies; (4) whether the state action is sufficient to protect the federal plaintiff's rights; (5) which court first obtained jurisdiction; and (6) whether the federal court is inconvenient.[19]  There is a heavy presumption in favor of exercising federal jurisdiction.[20]  Applying this multifactor balancing test, Qwest has failed to overcome the significant requirements under *Colorado River* and this Court should therefore deny Qwest's motion for stay.

The factors relevant to a *Colorado River* analysis are addressed below, in order of importance to the Court's overall review.[21]

### 1. The "piecemeal litigation" factor does not weigh in favor of *Colorado River* abstention.

The Supreme Court has stated that the "piecemeal litigation" factor is the "paramount" factor in the *Colorado River* abstention analysis.[22]  Under the law of the Third Circuit, the "piecemeal litigation" factor favors abstention "*only* when there is evidence of a strong federal policy that all claims should be tried in the state courts."[23]  Qwest fails to identify such a policy. Accordingly, this factor does not weigh in favor of abstention.

Qwest argues that concurrent state and federal litigation may result in piecemeal litigation. Qwest's arguments, however, are deficient on their face to weigh in favor of abstention, because under the law of Third Circuit, "the mere possibility of concurrent state-

---

[19]    *IFC Interconsult*, 438 F.3d at 307 n.4.

[20]    *Ryan*, 115 F.3d at 200.

[21]    There is no property at issue in this litigation, therefore the first factor is inapplicable.

[22]    *Moses H. Cone*, 460 U.S. at 19.

[23]    *Ryan*, 115 F.3d at 197-98 (emphasis added); *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 172-73 (3d Cir. 1999); *Kentucky West Va. Gas Co. v. Penn. Public Utility Comm'n*, 791 F.2d 1111, 1118 (3d Cir. 1986).

federal litigation fails to satisfy the piecemeal adjudication test."[24]  In *Ryan v. Johnson*, the Third

Circuit declined to abstain from hearing a parallel personal injury case, holding that the mere

possibility of negative effects resulting from piecemeal litigation fails to satisfy the "piecemeal

adjudication" test.[25]  The Third Circuit held that where Congress grants federal jurisdiction,

"only a congressional intent to *require state-court adjudication* … will be sufficient to divest

it."[26]  Because no "strongly articulated" Congressional policy indicated that such cases should be

litigated solely in state court, the Third Circuit denied the motion for abstention.[27]

Qwest has not and cannot identify a "clearly articulated" federal policy requiring

resolution of Plaintiffs' claims in the state courts.  As evinced by Plaintiffs' motions to dismiss,

the Colorado state courts lack subject matter jurisdiction to even adjudicate Qwest's claims

under the Communications Act.  At best, Qwest can only contend that jurisdiction might be

concurrent (a contention with which Plaintiffs disagree).  "In the absence of such a federal

policy, the avoidance of piecemeal litigation factor is no help to a party seeking abstention."[28]

Accordingly, the "paramount" factor in the *Colorado River* analysis does not weigh in favor of

abstention.

Recognizing that its arguments are insufficient under Third Circuit law, Qwest further

argues that "in combination with the other factors discussed in this motion … the avoidance of

---

[24]     *Ryan*, 115 F.3d at 198; *Spring City Corp.*, 193 F.3d at 172 ("[E]ven though it is important
to prevent piecemeal litigation, a stay is appropriate only when there is a strong federal policy
against such litigation.") (internal citations omitted).

[25]     *Ryan*, 115 F.3d at 199.

[26]     *Id.* (emphasis added).

[27]     *Id.*

[28]     *Hartford Life Ins. Co. v. Rosenfeld*, Civil Action No. 05-5542 (KSH), 2007 WL 2226014,
at *10 (D.N.J. Aug. 1, 2007) (unpublished opinion); *citing Ryan,* 115 F.3d at 198-99.

piecemeal litigation may counsel against hearing the case in federal court."[29]  Qwest's contention is unavailing.  In *Spring City Corp.*, the Third Circuit indicated "that abstention is never proper in the absence" of a federal policy satisfying the "piecemeal litigation" factor.[30]  The Third Circuit stated that "even though it is important to prevent piecemeal litigation, a stay is appropriate *only* when there is a strong federal policy against such litigation."[31]  Therefore, even if Qwest were to establish that all other *Colorado River* factors favored abstention (which it cannot), abstention would still be unwarranted.

Qwest erroneously argues that the "piecemeal litigation" factor is met in this case because, due to the presence of "inextricably intertwined" issues of state and federal law, the Court would be "presented with an incomplete picture" of the facts leading to the present dispute if it only addresses the parties' federal claims.  Qwest also erroneously argues that the "piecemeal litigation" factor is met because both the state and federal actions may require interpretation of KMC Data's federal tariff.  These contentions are insufficient to satisfy the "piecemeal litigation" factor.

First, contrary to Qwest's argument, this Court is competent to fully inform itself of the relevant facts leading to the present dispute, even if the Court only adjudicates the parties' interstate claims.  Second, the possibility that two courts may address KMC Data's federal tariff is not sufficient to satisfy the piecemeal litigation factor absent a clearly articulated policy

---

[29]     Defendant's Opening Brief in Support of Motion for Stay, at 12 (Qwest states that it "understands that the mere pendency of the state proceeding and the resulting piecemeal litigation may not be alone sufficient to justify a stay of the federal proceeding pursuant to the *Colorado River* doctrine.")

[30]     *See, e.g. Blum v. St. Paul Travelers Ins. Co.*, Civil Action No. 07-1268, 2007 WL 2213597, at *4 (E.D. Pa., July 30, 2007) (unpublished opinion) (recognizing Third Circuit's suggestion that absent satisfaction of the piecemeal litigation factor, abstention is never proper), *citing Spring City*, 193 F.3d at 172.

[31]     *Spring City Corp.*, 193 F.3d at 172. (emphasis added).

favoring such litigation in the state court.[32]  Qwest has not and cannot identify such a policy. In

an analagous case for the recovery of unpaid fees for interstate communications charges, the

Eastern District of Pennsylvania denied a motion for abstention, because the movant there also

failed to identify a federal policy favoring the avoidance of piecemeal litigation.[33]

As in the present case, in *Worldcom Techs., Inc. v. Intelnet Int'l., Inc.*, Worldcom brought

a parallel suit in the Eastern District of Pennsylvania for the recovery of monies owed for

interstate communications services, under theories of breach of federal tariff, *quantum meruit*

and unjust enrichment.[34]  Like Plaintiffs' claims in the present action, Worldcom's claims were

identical to counterclaims that it asserted in a parallel proceeding brought by Intelnet in state

court in New Jersey.[35]  Also like the present case, the parallel action in New Jersey state court

raised issues of state law relating to Worldcom's services.

The district court held that under the Third Circuit's holding in *Ryan*, "although

abstention would certainly foster the avoidance of piecemeal litigation, this factor is not satisfied

by the mere existence of concurrent state-federal litigation." Rather, this factor is only satisfied

where there exists "a strongly articulated congressional policy against piecemeal litigation in the

specific context of the case under review."[36]

---

[32]     *Ryan*, 115 F.3d at 197-98.

[33]     *Worldcom Techs., Inc. v. Intelnet Int'l, Inc.*, No. CIV. A. 00-2284, 2001 WL 118957, at
*1 (E.D. Pa. Feb. 8, 2001) (unpublished opinion).  While the Eastern District of Pennsylvania's
opinion is unreported and therefore non-precedential, its analysis is persuasive authority because
the facts and procedural posture are similar to the present case and because the Eastern District
of Pennsylvania also applies Third Circuit law.

[34]     *Id.*

[35]     *Id.* at *3.

[36]     *Id.*

In the absence of such a congressional policy, the district court held that the presence of state law issues in the state case, however related, did not weigh in favor of abstention. Thus, even if the state and federal actions "would most appropriately have been brought as a single suit, the context of the ... federal action d[id] not implicate a strongly articulated congressional policy against piecemeal litigation." The district court denied Intelnet's motion for abstention.[37]

Qwest's arguments in the present action are similarly insufficient. Because the law of the Third Circuit establishes that the failure to satisfy the "piecemeal litigation" factor precludes abstention, this Court need not even consider the remaining factors, and should deny Qwest's motion for abstention based on its failure to satisfy this factor alone.

### 2.    The "source of law" factor weighs against abstention, because Plaintiffs' claims arise under federal law.

Where federal law provides the rules of decision on the merits, "the presence of federal-law issues must always be a major consideration weighing against" abstention.[38] Qwest erroneously asserts that the majority of KMC Data's claims arise under state law. Third Circuit precedent makes clear that all of Plaintiffs' claims arise under the Communications Act or under federal common law.[39] Plaintiffs do not assert a single claim arising under state law and therefore the "source of law" factor weighs against abstention.

Plaintiffs seek recovery of unpaid charges for interstate communications services. KMC Data's Count I asserts a claim for breach of federal tariff. The Third Circuit expressly held that a

---

[37]    *Id.*

[38]    *Moses H. Cone*, 460 U.S. at 26.

[39]    *MCI Telecomms. Corp. v. Graphnet*, 881 F. Supp. 126, 131-32 (D.N.J. 1995); *Worldcom v. Graphnet*, 343 F.3d 651, 654 (3d Cir. 2003).

contract action for unpaid services under the terms and conditions set forth in a filed tariff "arises under" the laws of the United States.[40]

KMC Data's alternative claims under Counts II, III, IV and V also arise under federal law. In those Counts, if this Court finds that no federal tariff is applicable to the interstate communications services rendered, Plaintiffs seek recovery under theories of implied contract (Count II), open account (Count III), *quantum meruit* (Count IV), and unjust enrichment (Count V). The Third Circuit has held that all "[q]uestions concerning the duties, charges, and liabilities of telegraph or telephone companies with respect to interstate communications are to be governed *solely by federal law*."[41] For such causes of action, "[w]here neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law."[42] In all cases "[w]here a cause of action arises in direct relation to the provision of interstate communications services … it is clear that the Communications Act governs."[43] Because all of KMC Data's causes of action arise in direct relation to the provision of interstate communications services, federal law provides the rules of decision on the merits of KMC Data's claims. Therefore, the federal nature of Plaintiffs' claims weighs heavily against *Colorado River* abstention.

Even if Qwest were correct in its assertion that KMC Data's claims arise under state law, the "source of law factor" would still not weigh in favor of abstention. Qwest erroneously asserts that "the state law nature of the majority of the claims at issue in this litigation counsels in

---

[40]     *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1093 (3d Cir. 1995).

[41]     *Worldcom*, 343 F.3d at 644 (emphasis added) (*citing Ivy Broadcasting Co. v. AT&T, Co.*, 381 F.3d 486, 491 (2d Cir. 1968).

[42]     *Id.*

[43]     *MCI Telecomms. Corp.*, 881 F. Supp. at 131-32; *see also*, *In re Comcast Cellular Telecomms. Litig.*, 949 F. Supp. 1193, 1203 (E.D. Pa. 1996).

favor of stay." Qwest's argument once again directly contradicts established Third Circuit law. The Third Circuit holds that, "while the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law."[44]  Accordingly, even if KMC Data's claims arose entirely under state law, which they do not, the "source of law factor" still would not weigh in favor of abstention.

### 3. The adequacy of the state court to protect Plaintiffs' rights does not weigh in favor of abstention.

The adequacy of the state court to protect Plaintiffs' rights is virtually irrelevant to the Court's *Colorado River* analysis, because this factor cannot weigh in favor of abstention. "[T]he mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising jurisdiction."[45] Rather, the Third Circuit holds that "this factor is normally relevant only when the state forum is *in*adequate," and thus weighs *against* abstention.[46]  While Qwest's claims, on which Plaintiffs seek declaratory judgment here, *are not* properly before the Colorado state court, Plaintiffs concede that *their* claims for recovery of monies owed *are*.[47]

The Communications Act's jurisdictional provision, 47 U.S.C. § 207, applies only to suits by a person alleging damage by a common carrier for violations of the Communications Act.[48]  Section 207 does not apply to a collection action by a common carrier against its

---

[44]   *Ryan*, 115 F.3d at 199.

[45]   *Id.* at 200.

[46]   *Id.* (emphasis in original).

[47]   Plaintiffs do not concede that the state court would have jurisdiction over their claim for declaratory judgment that is at issue before this Court.

[48]   47 U.S.C. § 207 states: "Any person claiming to be damaged by any *common carrier* may either make complaint to the Commission ..., or may bring suit for the recovery of damages for which such *common carrier* may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction . . . ." (emphasis added).

customer. While such collection actions arise under federal law,[49] a state court may exercise concurrent jurisdiction over simple collection actions. Plaintiffs and Qwest agree that the Colorado state court is at least adequate to protect KMC Data's rights on its simple collection action against Qwest. Therefore, the "adequacy of the state court" factor is irrelevant to the Court's analysis, and fails to weigh in favor of abstention.[50]

Even as it notes that the issue is not properly before this Court, Qwest inserts irrelevant argument disputing Plaintiffs' contention that Section 207 provides for exclusive federal jurisdiction over *Qwest's* claims in federal court or before the FCC.[51] "Generally, it is not advisable to resolve questions, particularly ones with wide-ranging implications, that are not immediately presented in a case."[52] Even if Qwest were correct in its arguments, this factor could not weigh in favor of abstention. It is therefore unnecessary for the Court to consider Qwest's superfluous arguments relating to Section 207.

### 4. That some of the claims were first raised before the state court does not weigh heavily in favor of abstention.

While some of the issues and claims asserted in this action were first raised before the state court, this factor does not weigh in favor of abstention. As discussed above, the Colorado court has yet to rule on Plaintiffs' motion to dismiss Qwest's interstate claims for the lack of subject matter jurisdiction and Plaintiffs' motion for voluntary dismissal of their own interstate

---

[49]    *Worldcom*, 343 F.3d at 644.

[50]    *Id.*

[51]    Defendant's Opening Brief in Support of Its Motion to Stay, at 16-24.

[52]    *In the Matter of Central Railroad Co. of New Jersey*, 579 F.2d 804, 809 (3d Cir. 1978); *see also University of Maryland at Baltimore v. Peat Marwick Main & Co.*, 923 F.2d 265, 275-77 (3d Cir. 1991) (holding that, in a *Colorado River* analysis, "it would be inappropriate as well as unnecessary to express an opinion in the first instance on a state court jurisdictional question that is not essential to the outcome of the case before us."). Without so holding, the Third Circuit observed that "there can be no possible basis for abstaining if the state court to which the federal court defers lacks jurisdiction." *Id.* at 276 n.16.

16

claims. The Colorado court may conclude that it lacks jurisdiction over the interstate claims raised before it, and permit voluntary dismissal of KMC Data's claims raised there. Such an action would eliminate any parallelism between claims before both courts and, therefore, this Court's need to review a stay under *Colorado River* would be moot.[53] If the Colorado court grants Plaintiffs' motion for voluntary dismissal, it will be as though KMC Data's counterclaims in that court never existed.[54] Plaintiffs will then be deemed to have filed their federal claims in the Delaware forum first.

Because there is substantial question over whether the Colorado state court actually has jurisdiction over some of the claims here,[55] this factor does not weigh in favor of abstention. This is particularly true where, as here, the party seeking the stay has failed to identify a federal policy against piecemeal litigation favoring resolution in the state courts.[56] The mere fact that the Colorado action has progressed further into discovery is not such an "exceptional circumstance" warranting the "extraordinary" measure of a *Colorado River* stay.

---

[53] *See, e.g. Bass v. Butler*, 258 F.3d 176, 179 (3d Cir. 2001) (finding *Colorado River* analysis is moot where subsequent developments in the state court render state and federal proceedings no longer parallel).

[54] *See Cardio-Medical Assoc., Ltd. v. Crozer-Chester Med. Center*, 721 F.2d 68, 77 (3d Cir. 1983) ("It is a well recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice. As regards the statute of limitations, the original complaint is treated as if it never existed.")

[55] Namely, Plaintiffs' claim seeking declaratory judgment.

[56] *See, e.g. McMurray v. DeVink*, 27 Fed. Appx. 88, 93 (3rd Cir. 2002) (non-precedential opinion). (Holding that "the order in which jurisdiction was obtained weighs in favor of abstention" however, "[t]his does not weigh heavily in the balance ... given our consideration of all of the other *Colorado River/Moses H. Cone* factors and the absence of a federal policy against piecemeal litigation. . . .").

**5.    The "inconvenience of the federal forum" factor does not weigh in favor of abstention.**

The "inconvenience of the federal forum" factor does not weigh in favor of abstention because Qwest fails to demonstrate any reason why the Delaware court is inconvenient.[57] Merely because Qwest believes that Delaware is *less convenient* than Colorado does not render Delaware inconvenient.

Qwest argues that the physical distance between the Colorado forum and the Delaware forum renders the Delaware forum inconvenient. One could just as easily argue that the distance between the two forums renders the Colorado forum inconvenient. However, the courts of this district have observed that "technological advances have made it more difficult for defendants to establish that litigating in Delaware is inconvenient for the parties and the witnesses."[58] This Court held that "[t]his is especially true when the defendants are substantial companies doing business in the national market place."[59] Because Qwest is a substantial corporation doing business in the national market place, it must "show some sort of 'unique or unexpected" burden in order to demonstrate that Delaware is an inconvenient forum."[60] Qwest fails to show any such "unique or unexpected" burden that might render Delaware, its chosen state of incorporation, inconvenient.

Qwest also argues that Delaware has little connection to the subject matter of the case. Qwest is incorporated in Delaware, and should expect to litigate in the Delaware forum.

---

[57]    Plaintiffs more fully address this issue in their Answering Brief in Opposition to Defendant's Motion to Transfer Pursuant to 28 U.S.C. § 1404, filed contemporaneously with the instant pleading.

[58]    *See, e.g. Joint Stock Society "Trade House of Descendants of Peter Smirnoff" v. Walker*, 936 F. Supp. 177, 187 (D. Del. 1996).

[59]    *Affymetrix, Inc.*, 28 F. Supp. 2d at 202. (internal citations omitted).

[60]    *Id.*

"Having received the benefits of Delaware incorporation," Qwest "cannot now complain that another corporation has chosen to sue it here."[61]  For these and the additional issues raised in Plaintiffs' memorandum in opposition to Qwest's request for transfer, Qwest fails to establish that the Delaware forum is inconvenient, therefore this factor does not weigh in favor of abstention.

### 6.    Plaintiffs brought their federal complaint in good faith and for good cause.

Plaintiffs' federal complaint is neither vexatious nor reactive contrary to Qwest's blanket assertions.  Plaintiffs brought their federal complaint prior to the Colorado court's resolution of Plaintiffs' pending motions to dismiss and for voluntary dismissal to prevent portions of KMC Data's claims from being time barred.

Plaintiffs possess a good faith belief that the Colorado state court lacks subject matter jurisdiction to adjudicate Qwest's interstate claims pursuant to Section 207 of the Communications Act.[62]  Based on this belief, Plaintiffs filed a motion to dismiss Qwest's interstate claims for lack of subject matter jurisdiction.  Plaintiffs have a substantial interest in ensuring that all interstate claims between the parties are litigated in one federal forum, in order to avoid duplicative litigation of the interstate issues, and to avoid the risk of conflicting judgments.

So that Plaintiffs could raise their interstate claims in a court with adequate jurisdiction to adjudicate both parties' interstate claims, Plaintiffs filed a motion for voluntary dismissal without prejudice of their own interstate claims simultaneously with their motion to dismiss Qwest's claims.  If the Colorado court grants Plaintiffs' motions, the state and federal proceedings will no longer be parallel.  Plaintiffs reasonably anticipate that Qwest will then affirmatively raise its

---

[61]    *Joint Stock Society*, 936 F. Supp. at 188-89.

[62]    47 U.S.C. § 207.

interstate claims in the present action (on which Plaintiffs already seek declaratory judgment in this action), and that this Court will resolve all interstate issues between the parties.

As discussed above, Plaintiffs' claims for the recovery of unpaid charges arise under the Communications Act and federal common law. The Communications Act provides that "[a]ll actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun within two years from the time the cause of action accrues, and not after."[63] Qwest ceased paying parts of its bills for KMC Data's services in December 2005.

"It is a well recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice."[64] If Plaintiffs had waited for the Colorado court to rule on their motion for voluntary dismissal before bringing their federal complaint, Plaintiffs would have run the risk that their claims would be time barred. There is no merit to Qwest's contention that Plaintiffs' federal complaint is "reactive." Plaintiffs filed their federal complaint for a good faith reason, even though it temporarily resulted in parallel litigation.

---

[63]    47 U.S.C. § 415.

[64]    *Cardio-Medical Assoc., Ltd.*, 721 F.2d at 77 ("It is a well recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice.  As regards the statute of limitations, the original complaint is treated as if it never existed.")

## V.
## <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should deny Qwest's motion for stay pursuant

to the *Colorado River* abstention doctrine.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Ky E. Kirby
Jonathan S. Frankel
Frank Lamancusa
Randall M. Levine
BINHGAM MCCUTCHEN LLP
2020 K Street, NW
Washington, DC 20006
(202) 373-6000

Dated: February 15, 2008
849008 / 32559

By:   */s/ David E. Moore*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE  19899
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

      *Attorneys for Plaintiffs*
      *HyperCube, LLC and KMC Data, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 15, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on February 15, 2008, the attached document was Electronically Mailed to the following person(s):

Thomas C. Grimm
Benjamin J. Schladweiler
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
tgrimm@mnat.com
bschladweiler@mnat.com

Robert G. Krupka
Laura M. Burson
Helen Hong
Kirkland & Ellis LLP
777 S. Figueroa Street, Suite 3400
Los Angeles, CA 90017
service-solvay@kirkland.com

By:  /s/ David E. Moore
   Richard L. Horwitz
   David E. Moore
   Potter Anderson & Corroon LLP
   Hercules Plaza, 6th Floor
   1313 N. Market Street
   P.O. Box 951
   Wilmington, DE 19899-0951
   (302) 984-6000
   rhorwitz@potteranderson.com
   dmoore@potteranderson.com

799366 / 30651

# EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | |
| QWEST COMMUNICATIONS CORPORATION,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>HYPERCUBE, LLC,<br><br>Defendant,<br><br>and<br><br>KMC DATA, LLC,<br><br>Defendant and Counterclaim-Plaintiff. | |
| Attorneys for Defendant HyperCube, LLC and Defendant and Counterclaim-Plaintiff KMC Data, LLC:<br><br>Richard L. Fanyo, #7238<br>David W. Furgason, #2122<br>Dufford & Brown, P.C.<br>1700 Broadway, Suite 2100<br>Denver, Colorado 80290-2101<br>Telephone: (303) 861-8013<br>Facsimile: (303) 832-3804<br>E-mail: rfanyo@duffordbrown.com<br>        dfurgason@duffordbrown.com | Case Number: 06cv6404<br><br><br>Div:<br><br>Ctrm: 19 |
| **DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS AND AFFIRMATIVE DEFENSES PURSUANT TO C.R.C.P. 12(b)(1) AND C.R.C.P. 12(b)(5), AND TO CONDITIONALLY DISMISS KMC DATA'S INTERSTATE COUNTERCLAIMS PURSUANT TO C.R.C.P. 41(a)(2)** ||

HyperCube, LLC ("HyperCube") and KMC Data, LLC ("KMC Data") (collectively, "Defendants"), by counsel, respectfully move that the Court, pursuant to C.R.C.P. 12(b)(1), dismiss for lack of subject matter jurisdiction Qwest Communications Corporation's ("Qwest's") claims that (1) allege a violation of the Federal Communications Act of 1934, as amended ("Communications Act" or "the Act"), 47 U.S.C. §§ 201, *et seq.*; and/or (2) allege a breach of

Defendants' federal interstate tariffs. Defendants further move that the Court dismiss for lack of subject matter jurisdiction Qwest's affirmative defenses that are premised on alleged rate discrimination in violation of state public utility statutes.

If the Court grants Defendants' 12(b)(1) motion, KMC Data respectfully requests that the Court exercise its discretion under C.R.C.P. 41(a)(2) and order the voluntary dismissal of KMC Data's interstate counterclaims, without prejudice, as well.

Finally, Defendants move that the Court, pursuant to C.R.C.P. 12(b)(5), dismiss those of Qwest's affirmative defenses that are premised on alleged rate discrimination in violation of state public utility statutes for failure to state claims upon which relief may be granted.

---

**CERTIFICATE OF COMPLIANCE WITH C.R.C.P. 121, § 1-15(8).** The undersigned counsel hereby states that counsel for the Defendants requested on December 14, 2007 that counsel for Plaintiff advise whether Plaintiff would voluntarily dismiss the claims that are the subject of this motion. Although Plaintiff's counsel advised that a response would be forthcoming within a few days, no response has been provided to date and counsel have therefore been unable to resolve the issues briefed herein.

---

## I.    INTRODUCTION

### A.    Introduction to Defendants' Motion to Dismiss Pursuant to C.R.C.P. 12(b)(1)

Defendants respectfully move the Court to dismiss from Qwest's Second Amended Complaint the entirety of Count V and the portions of Counts I, II, III, IV and VI which assert claims based on Defendants' charges for interstate access services provided by KMC Data under its federal interstate tariff because the Court lacks subject matter jurisdiction over claims for damages arising out of violations of interstate tariffs and the Communications Act.

Pursuant to Section 207 of the Act, 47 U.S.C. § 207, the federal courts and the Federal Communications Commission are vested with exclusive jurisdiction over all claims for damages by a customer against a common carrier. Qwest's Count V and the interstate portions of Counts I, II, III, IV and VI are federal claims predicated upon Defendants' alleged violations of KMC Data's federal interstate tariff. Under section 207's grant of exclusive federal jurisdiction to the federal courts and the FCC, this Court lacks subject matter jurisdiction to adjudicate those claims.

Defendants also move that this Court dismiss Qwest's affirmative defenses VII and VIII which are predicated on alleged rate discrimination in violation of state public utility statutes. State public utilities statutes vest exclusive jurisdiction in the applicable state public utilities commissions to adjudicate claims alleging rate discrimination. Subject matter jurisdictional limitations apply as much to affirmative defenses as to offensive claims. Accordingly, this Court lacks subject matter jurisdiction to adjudicate Qwest's affirmative defenses VII and VIII and should dismiss these defenses pursuant to C.R.C.P. 12(b)(1).

B.    **Introduction to KMC Data's Conditional C.R.C.P. 41(a)(2) Motion for Voluntary Dismissal of Its Interstate Counterclaims**

In the event the Court grants Defendants' C.R.C.P. 12(b)(1) motion to dismiss Qwest's interstate claims, KMC Data respectfully requests that the Court exercise its discretion under C.R.C.P. 41(a)(2) to dismiss the interstate portions of Defendants' Second Amended Counterclaims without prejudice. If Qwest's interstate claims are dismissed, these claims will be litigated in federal court.[1] Consequently, in the interest of judicial economy, Defendants request that the Court dismiss the interstate portions of their own counterclaims, so that all interstate issues between the parties, including KMC Data's interstate counterclaims, may be litigated in that federal forum.

C.    **Introduction to Defendants' Motion to Dismiss Pursuant to C.R.C.P. 12(b)(5)**

Defendants further move that the Court, pursuant to C.R.C.P. 12(b)(5), dismiss Qwest's affirmative defenses VII and VIII that are premised on alleged rate discrimination in violation of state public utility statutes because of Qwest's failure to state a claim upon which relief may be granted. Despite its affirmative defenses being based upon other states' statutes, Qwest has failed to specify which statutes Defendants have allegedly violated. Accordingly, Qwest has not properly pled its affirmative defenses and they should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    Facts Leading to the Present Dispute

As has been discussed in previous pleadings, KMC Data provides, among other things, interstate and intrastate switched access service to various customers, including interexchange ("IXC") carriers (commonly referred to as long distance carriers) and commercial mobile radio service ("CMRS") carriers (commonly referred to as wireless carriers). These interstate and intrastate access services enable an IXC to originate or terminate long distance calls to end user customers using local network facilities of the Public Switched Telephone Network ("PSTN").

As an IXC, Qwest provides a toll-free, or "8XX," service. Businesses that purchase this 8XX service from Qwest are assigned an "800" or "888" toll-free number that allows their customers to telephone the business without incurring a long-distance, or toll, charge. Qwest relies on other carriers, such as KMC Data, to participate in the delivery of toll-free calls from the calling parties to the Qwest business customers that have been assigned the toll-free numbers by Qwest.

When KMC Data's local network facilities receive a wireless toll-free call destined to one of Qwest's customers, KMC Data then provides access services to Qwest in connection with that call, including switching and transport, and an associated 800 database query. If the originating and terminating points of the call are in the same state, then the type of service KMC

---

[1]    *KMC Data, LLC v. Qwest, LLC*, Case no. 07-822, (D. Del.). (Complaint filed Dec. 17, 2007) (Exhibit A hereto.)

Data provides to Qwest is called "intrastate switched access service."[2] KMC Data presently has tariffs on file with certain state public service or utility commissions which contain the rates, terms and conditions for intrastate switched access services in those states.[3] If the originating and terminating points of the call are not in the same state, then the type of service KMC Data provides to Qwest is called "interstate switched access service." KMC Data presently has a tariff on file with the Federal Communications Commission that contains the rates, terms, and conditions for its interstate switched access services.

Qwest disputes whether KMC Data's intrastate and interstate switched access tariffs cover the intrastate and interstate switched access services and associated 800 database queries provided to Qwest by KMC Data for the wireless toll-free calls made to Qwest's customers and, if not, whether Qwest has any obligation to pay for those services. KMC Data asserts that its intrastate and interstate tariffs cover the services and that those tariffs authorize the charges invoiced to Qwest. Qwest asserts the opposite, and refuses to pay for the vast majority of the services it has received and continues to receive.

### B.    Qwest's Claims for Damages Involving Federal Tariffs for Interstate Services

On April 16, 2007, ten months after the case was initiated, Qwest filed its Second Amended Complaint asserting eight claims for damages and declaratory relief. Only Qwest's claims regarding the Defendants' provision of interstate access services are the subject of the present motion.[4]

Count V of the Complaint seeks damages resulting from Defendants' alleged breach of KMC Data's federal interstate tariff, and for violations of sections 202 and 203 of the Communications Act. This count concerns only Defendant's federal interstate tariff and the provision of interstate services.[5]

In Counts I, II, III, IV and VI, Qwest seeks damages resulting from Defendants' conduct relating to both interstate and intrastate services. In these counts, Qwest fails to distinguish between damages arising from the provision of interstate services and damages arising from the provision of intrastate services, therefore, each count possesses both an interstate component and

---

[2]       *Id.* at ¶ 7.

[3]       *Id.* at ¶ 8.

[4]       Count VII of the Second Amended Complaint alleges only violations of Colorado State Public Utilities Statutes, and so only concerns damages arising from KMC Data's provision of intrastate services. Accordingly, Count VII is not subject to the present motion. Similarly, Count VIII is not subject to the present motion as it seeks injunctive relief prohibiting Hypercube and KMC Data from blocking calls to Qwest customers due to Qwest's failure to pay intrastate access charges.

[5]       Qwest Second Amended Complaint at ¶ 79-85.

an intrastate component.[6]  Only the interstate components of those counts are subject to this motion, as set forth below:

- Count I - Declaratory Judgment: The interstate portion of Count I seeks a declaration from the Court that: (1) Hypercube improperly billed Qwest for Common Trunk Port and Multiplexing services under its *interstate* tariffs; (2) that Qwest is entitled to a return of all *interstate* charges paid for Common Trunk Port and Multiplexing services; and (3) Qwest is entitled to retain all *interstate* charges withheld for the challenged services.

- Count II - Unjust Enrichment: The interstate portion of this claim asks the Court to find that Hypercube received the benefit of $1.97 million in improper access charges under its *interstate* tariffs.

- Count III - Money Had and Received: The interstate portion of this claim asks the Court to find that Hypercube possesses money that it improperly charged Qwest under its *interstate* tariffs, and that this money should be disgorged to Qwest.

- Count IV - Breach of Contract: The interstate portion of this claim asks the court to find that Hypercube's charges to Qwest under KMC Data's *interstate* tariff for services that KMC Data allegedly has not provided constitutes a breach of contract.

- Count VI - Fraud: The interstate portion of this claim asks the court to find that Hypercube falsely represented to Qwest that its access charges were properly billed per KMC Data's *interstate* access tariffs.

In sum, the entirety of Count V is an interstate claim, predicated upon a violation of federal laws and regulations. Counts I, II, III, IV and VI are comprised of interstate and intrastate portions.

## III.    LEGAL STANDARDS APPLICABLE TO 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Subject matter jurisdiction concerns a court's authority to deal with the class of cases in which it renders judgment.[7]  C.R.C.P 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Issues concerning subject matter jurisdiction cannot be waived, and may be raised at any time.[8]

---

[6]        Qwest Second Amended Complaint at ¶ 55-78, 86-91, 101-111.

[7]        *In Re Marriage of Stroud*, 631 P.2d 168 (Colo. 1981).

[8]        C.R.C.P. 12(h)(3); *Sanchez v. State*, 730 P.2d 328, 331 (Colo. 1986); *People in Interest of Clinton*, 742 P.2d 946, 947 (Colo. App. 1987). In resolving a motion under C.R.C.P. 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction to hear the action. *City of Lakewood v. Brace*, 919 P.2d 231, 244 (Colo. 1996).

## IV.    ARGUMENT ON MOTION TO DISMISS QWEST'S INTERSTATE CLAIMS

### A.    State Courts Lack Jurisdiction to Adjudicate Claims for Damages By a Customer Against a Common Carrier Under § 207 of the Communications Act

This Court lacks subject matter jurisdiction over Qwest's damages claims for violations of the Communications Act as such jurisdiction lies exclusively with the federal courts and the Federal Communications Commission. In enacting the Communications Act, Congress excluded state courts from adjudicating such disputes. Reviewing courts have agreed.

While a court may presume that state courts enjoy concurrent jurisdiction with federal courts,[2] Congress can preclude state court jurisdiction and limit jurisdiction to the federal courts, either explicitly or implicitly.[10] The presumption of concurrent jurisdiction, therefore, may be rebutted by: (1) an explicit statutory directive; (2) an unmistakable implication from legislative history; or (3) a clear incompatibility between state court jurisdiction and federal interests.[11]

Section 207 of the Communications Act satisfies all three prongs of this test. First, section 207 contains an express grant of jurisdiction to the federal courts and the FCC, to the exclusion of the state courts. To the extent the language of the Communications Act is insufficient, there is also an unmistakable implication from the context and structure of the Act indicating that where Congress intended to provide for concurrent jurisdiction, it did so *expressly*. Finally, because Congress intended to fully occupy the field of regulation over interstate telecommunications services, to the exclusion of state regulation of interstate telecommunications services, to permit state courts to interpret, enforce or invalidate federal interstate tariffs would constitute a clear incompatibility between state court jurisdiction and federal interests.

### B.    A Plain Reading of the Statute Shows That 47 U.S.C. § 207 Vests Exclusive Jurisdiction in the Federal Courts and the FCC

Section 207 of the Communications Act provides that "[a]ny person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make

---

[2]    *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981); *Consumer Crusade, Inc. v. Affordable Health Care Solutions, Inc.*, 121 P.3d 350, 353-54 (Colo. App. 2005).

[10]    *Gulf Offshore Co.*, 453 U.S. at 478; *Jilot v. State*, 944 P.2d 566, 568 (Colo. App. 1997). It is within Congress' powers to establish exclusive jurisdiction in a federal forum to adjudicate issues of federal law in a particular area that Congress has authority to regulate under the Constitution. *International Longshoremen's Ass'n, AFL-CIO v. Davis*, 106 S. Ct. 1904, 1910 (U.S. 1986).

[11]    *Gulf Offshore Co.*, 453 U.S. at 478.

complaint to the Commission..., or may bring suit..., in any district court of the United States of competent jurisdiction."[12]

When interpreting a statute, Colorado courts first look to its language, which the Court shall construe as written if that language is clear and unambiguous.[13] Under the language of section 207, Congress explicitly directs that plaintiffs shall have the choice of only one of two alternatives: *either* the federal district courts, *or* the FCC. Congress's use of the "either/or" function, therefore excludes any other alternatives beyond those listed and forecloses the possibility of jurisdiction in state courts. While the Colorado courts have not previously construed the language of section 207, the weight of authority reaches the same conclusion and holds that section 207 provides for exclusive jurisdiction in either the federal district courts or the FCC.[14]

Additionally, Congress's use of the word "may" in section 207 does not imply that its grant of jurisdiction to the federal courts or the FCC is permissive rather than mandatory. While in some circumstances, the use of the word "may" can be interpreted to imply that a grant of jurisdiction is merely permissive, the term "may" can also be used to "express a wish or desire," or used as a synonym for "shall" or "must."[15] In construing section 207 and in order to effectuate Congress' intent as expressed by its employ of the "either/or" function, Congress's use of the word "may" is properly interpreted as a synonym for "shall" or "must."

In *Coeur D'Alene Tribe*, the Ninth Circuit applied this rule of statutory construction when it ordered the dismissal of an Indian Tribe's claim for damages under the Communications Act, holding that section 207 precluded jurisdiction in the Tribal courts.[16] The Ninth Circuit held that

---

[12]     47 U.S.C. § 207.

[13]     *See Consumer Crusade, Inc. v. Affordable Health Care Solutions, Inc.*, 121 P.3d 350, 352 (Colo. App. 2005).

[14]     *See e.g., AT&T Corp. v. Coeur D'Alene Tribe*, 295 F.3d 899, 905 (9th Cir. 2002) ("By its express language, § 207 establishes concurrent jurisdiction in the FCC and federal district courts only, leaving no room for adjudication in any other forum - be it state, tribal, or otherwise."); *Citibank, N.A. v. Graphic Scanning Corp.*, 618 F.2d 222, 225 (2d. Cir. 1980) (holding that Communications Act vests exclusive jurisdiction over claims for damages for statutory violations in the federal courts or the FCC); *Van Dussen-Storto Motor Inn, Inc. v. Rochester Telephone Corp.*, 338 N.Y.S.2d 31, 36 (N.Y. App. Div. 1972) ("Since the [Communications Act] is explicit regarding jurisdiction, this Court is deprived of jurisdiction and plaintiff's claims based on violation of the [Communications Act] must be dismissed"); *McCollum v. Western Union Telegraph Co.*, 175 S.W.2d 544, 547 (Tenn. 1943) ("If the suit were based on a violation of the Federal [Communications Act] it would not be cognizable in State Court.").

[15]     *See Board of Com'rs of Pueblo County v. Smith*, 45 P. 357, 362 (Colo. 1896) (holding that in certain classes of statutes the word "may" is to be construed as "must or shall"); *Carleno Coal Sales v. Ramsay Coal Co.*, 270 P.2d 755, 757 (Colo. 1954) ("It is not always true that use of the word 'may' imposes only a permissive right or procedure. It has been held that this word, when considered with the subject matter of a statute, means 'must' or 'shall'").

[16]     *Coeur D'Alene Tribe*, 295 F.3d at 905.

because the statute established alternative fora in the district courts and the FCC, "the Tribe had no recourse to its own courts for vindication of its [Communications Act]-based claim and - like any other plaintiff - could choose only between filing a complaint with the FCC or suing AT&T in federal district court." The 9th Circuit ultimately concluded that because "exclusive jurisdiction rested in either of the two statutorily-provided federal fora, the Tribal Court lacked jurisdiction to entertain the Tribe's claim."[17] This same reasoning applies to the jurisdiction of the Court in the present action.

> **1.    There is an unmistakable implication from the structure and context of the Communications Act that Congress intended to vest exclusive jurisdiction in the federal courts and the FCC.**

As discussed more fully in *Gulf Offshore Co.*, a Congressional grant of exclusive jurisdiction may also be implied from the legislative history of a particular statute.[18] However, the legislative history of the Communications Act does not discuss section 207 in particular, nor has section 207 been amended since its enactment in 1934.[19]

In the alternative to such typical sources of legislative history, a basic guide to the meaning of statutory language is the context of the statute as a whole.[20] "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[21]

Under section 207, Congress expressly vests jurisdiction for claims for damages regarding violations of the Communications Act only in the federal district courts and the FCC, without providing for concurrent jurisdiction in the state courts. This omission is significant when taken in the context of the rest of the Communications Act, wherein Congress provided *explicitly* for concurrent jurisdiction when it so intended.[22] Thus, while Congress has elsewhere

---

[17]    *Id.*

[18]    *Gulf Offshore Co.*, 453 U.S. at 478.

[19]    Congress largely copied section 9 of the Interstate Commerce Act when it wrote the language of Communications Act § 207. The relevant sections (in both statutes) authorize an injured person to recover "damages" for an "unlawful" charge or practice; and they state that, to do so, the person may bring suit either before the commission or in a "court" "of the United States." *See Global Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, 127 S. Ct. 1513, 1517 (2007).

[20]    *See Consumer Crusade, Inc.*, 121 P.3d at 352.

[21]    *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (internal quotations and citations omitted).

[22]    *See International Science & Technology Institute, Inc. v. Inacom Communications*, 106 F.3d 1146, 1152 (4th Cir. 1997) (employing the above analysis to hold that § 227 (b)(3) of the Communications Act vests exclusive jurisdiction under the Telephone Consumer Protection Act ["TCPA"] in the *state courts*); 47 U.S.C. § 214(c) (authorizing injunction by *any court of general jurisdiction* for extension of lines or discontinuation of services contrary to certificates of public

in the Communications Act explicitly expressed its intent to provide concurrent jurisdiction, it did not do so in section 207. Accordingly, there is an unmistakable implication from the structure and context of the statute, taken as a whole, that Congress intended to vest exclusive jurisdiction in the federal district courts and the FCC over claims for damages alleging violations of the Communications Act.

> **2.   State court jurisdiction of section 207 claims is clearly incompatible with Congress's intent to fully occupy the field of regulation of interstate telecommunications services.**

Exclusive federal jurisdiction may also be implied where a clear incompatibility between state court jurisdiction and federal interests exists.[23] The factors generally recommending exclusive jurisdiction under this prong include: (1) the desirability of uniform interpretation; (2) the expertise of federal judges in federal law; and (3) the assumed greater hospitality of federal courts to peculiarly federal claims.[24]

One of the principal purposes of the Communications Act was to create a uniform system of laws and regulations over interstate communications services.[25] Accordingly, the uniform interpretation of both the Communications Act itself, and the federal tariffs that implement the mandates of sections 201 and 202, is of utmost importance to achieving Congress's interest in establishing a uniform system of laws and regulations.[26] If state courts were permitted to create a second body of law interpreting the Communications Act and federal tariffs, federal tariffs could be found to mean different things in different localities. This would create exactly the kind of chaos that the Act seeks to prevent.[27] State court interpretation of federal interstate tariffs is

---

convenience and necessity); 47 U.S.C. § 407 (authorizing suit *in federal court or state court of general jurisdiction* for common carrier's failure to comply with order of payment); 47 U.S.C. § 415(f) (establishing one-year limitation on suits brought *in federal or state courts* to enforce Commission order for payment of money); 47 U.S.C. § 553(c)(1) (authorizing suit *in federal court or any other court of competent jurisdiction* for unauthorized cable reception); 47 U.S.C. § 555(a) (authorizing suit *in federal court or state court of general jurisdiction* to review actions by franchising authority); 47 U.S.C. § 605(e)(3)(A) (authorizing civil action *in federal court or any other court of competent jurisdiction* for unauthorized publication).

[23]     *Gulf Offshore Co.*, 453 U.S. at 478.

[24]     *Id.* at 483-84.

[25]     *Dreamscape Design*, 414 F.3d at 670 ("Detariffing does not alter the fundamental design of the FCA, nor modify Congress's objective of uniformity in terms of and conditions for all localities.").

[26]     *See, id.* (holding that permitting "state law challenges to" carriers' service agreements "could thwart Congress's intent by creating a labyrinth of rates, terms and conditions.") (internal citations and quotations omitted); *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1094 (3d Cir. 1995) ("It seems to us that the congressional purpose can be achieved only if a uniform federal law governs as to the standards of service which the carrier must provide and as to the extent of liability for failure to comply with such standards.").

[27]     *Dreamscape Design*, 414 F.3d at 670.

therefore clearly incompatible with the federal interest in the uniform interpretation and application of federal tariffs and the Communications Act.

Second, all claims under the Act arise under federal law and are governed by federal common law.[28] Federal judges have greater expertise in the application of federal common law than do state judges exercising jurisdiction over federal claims. Third, Congress explicitly sought to limit state regulation over interstate communications rates, services and practices.[29] The exercise of state court jurisdiction is, of itself, state regulation.[30] Therefore, there is a "greater hospitality" in federal courts to the peculiarly federal claims arising under the Communications Act, because only federal courts can implement Congress's intent that states refrain from regulating interstate communications practices.

In sum, the plain language of the statute, the Communications Act's overall structure and context, and the clear incompatibility of state jurisdiction and federal interests, all demonstrate that section 207 excludes state courts from exercising jurisdiction over suits arising under the Communications Act.

### C.   The Court Lacks Jurisdiction Over Qwest's Count V, Because it is a Claim Under § 207 of the Communications Act

Count V of Qwest's Complaint seeks damages resulting from Defendants' alleged violations of sections 201 and 203 of the Communications Act. This count concerns only Defendant's federal interstate tariff and KMC Data's provision of interstate services.[31] Specifically, Qwest alleges that Hypercube charged approximately $1.77 million in Common Trunk Port charges and Multiplexing charges under KMC Data's federal interstate tariff. Qwest asserts that KMC Data is not, in fact, providing Common Trunk Port services or Multiplexing services, and that the practice of collecting charges for interstate services that a carrier (allegedly) is not actually providing violates section 203 of the Communications Act. Qwest alleges further that this billing practice constitutes an "unjust, unreasonable, and discriminatory – and therefore unlawful" practice under section 201 of the Communications Act. Qwest then directly cites to section 207 of the act for the proposition that it is entitled to "full damages, in the

---

[28]     *Worldcom Inc. v. Graphnet, Inc.*, 343 F.3d 651, 654 (3rd Cir. 2003).

[29]     *Ivy Broadcasting Co. v. AT&T*, 391 F.2d 486, 490 (2d. Cir. 1969) (holding that "the establishment of a broad scheme for the regulation of interstate service by communications carriers indicates an intent on the part of Congress to occupy the field to the exclusion of state law").

[30]     *See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 243 (1959) (holding that the exercise of state court jurisdiction over an action constitutes an act of state regulation, because "regulation can be as effectively exerted through an award of damages as through some form of preventive relief").

[31]     Second Amended Complaint at ¶¶ 79-85.

amount of the unauthorized charges paid to Hypercube under KMC Data's federal tariff, plus reasonable attorney's fees, under sections 206 and 207 of the Communications Act."[32]

As in *Cour D'Alene Tribe*, under the express language of section 207 of the Communications Act, Qwest has no recourse at the state court for its Communications Act based claim. Jurisdiction to adjudicate a claim for damages against a carrier alleging a breach of the Communications Act rests only in the federal district courts or the FCC. Accordingly, this Court should dismiss Qwest's Count V for lack of subject matter jurisdiction.

### D.   The Court Lacks Jurisdiction Over the Interstate Portions of Qwest's Counts I, II, III, IV and VI Because They Constitute Claims Under § 207 of the Communications Act

Qwest may not avoid section 207's grant of exclusive jurisdiction in the federal courts or the FCC by restyling its claims as state causes of action, where both the Court's analysis and the relief granted would be equivalent under the federal cause of action.[33] The United States Supreme Court has held that the violation of a regulation implementing the Act constitutes a violation of the Act, and is actionable under section 207.[34] A duly-filed tariff is considered a regulation under the Act.[35] Therefore, a suit alleging the breach of a federal tariff constitutes a suit for violation of the Communications Act.

Qwest's Counts I, II, III, IV and VI each allege a state law cause of action and are predicated upon a claim that Hypercube and KMC Data have violated KMC Data's interstate tariff. The analysis that the Court would undergo under the state causes of action is equivalent to the Court's analysis for the alleged breach of the interstate tariff. In order for the Court to find for the plaintiff on any of the state law claims – breach of contract, unjust enrichment, fraud, money had and received, and declaratory judgment – the Court must first determine whether Hypercube's actions conflicted with the terms of the interstate tariff.

The Court cannot adjudicate under Qwest's state law claims what the Court is prevented from adjudicating under Qwest's federal claims. A plaintiff may not avoid the Communication's Act's grant of exclusive jurisdiction by recasting its claims as state causes of action, where the

---

[32]    *Id. at* ¶ 84.

[33]    *See Veda, Inc. v. United States Dep't of Air Force,* 111 F.3d 37, 39 (6th Cir. 1997) (citing *A.E. Finley Assoc., Inc. v. United States,* 898 F.2d 1165, 1167 (6th Cir.1990) ("[O]ne cannot circumvent exclusive jurisdiction in the Claims Court by suing simply for declaratory or injunctive relief in a case where such relief would be the equivalent of a judgment for money damages.").

[34]    *See Global Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.,* 127 S. Ct. 1513, 1519 (U.S. 2007) ("Insofar as the statute's language is concerned, to violate a regulation that lawfully implements § 201(b)'s requirements *is* to violate the statute.")(emphasis in original).

[35]    Even after detariffing, a federal tariff is not a mere contract, but is a federal regulation approved and enforced by the FCC, implementing the mandates of section 203. *See Cahnmen v. Sprint Corp.,* 133 F.3d 484, 488-89 (7th Cir. 1998).

analysis the Court would employ and the relief sought are equivalent – "a [c]ongressional grant of exclusive jurisdiction cannot be so easily circumvented."[36]

For all of the interstate components of Qwest's state causes of action, the Court must undergo the same analysis it is precluded from engaging in by section 207 of the Communications Act:

- Only after holding that Hypercube's actions violated the *interstate* tariff can the Court render a declaratory judgment under Count I declaring that Hypercube billed QCC for services either not covered under the tariff or not provided by KMC Data.

- Only after holding that Hypercube's actions violated the *interstate* tariff can the Court conclude under Count II that Defendants were unjustly enriched by the practice.

- Only after holding that Hypercube's actions violated the *interstate* tariff can the Court conclude under Count III that Defendants have "money that belongs to QCC."

- Only after holding that Hypercube's actions violated the *interstate* tariff can the Court conclude under Count IV that such conduct constitutes a breach of contract.

- Only after holding that Hypercube's actions violated the *interstate* tariff can the Court conclude under Count VI that Defendants committed fraud by misrepresenting that its access charges were billed "per KMC Data LLC's interstate . . . tariffs."

Moreover, the relief sought under the state causes of action is the same as the relief sought under the expressly federal cause of action – money damages in the amount charged to Qwest under KMC Data's interstate tariff. Section 207 prohibits state courts from awarding money damages to plaintiffs in suits against common carriers for breach of federal interstate tariffs.

Accordingly, to the extent that Qwest's Counts I, II, III, IV and VI are predicated upon an allegation that Defendants' breached KMC Data's federal interstate tariff and the Communications Act, the Court lacks subject matter jurisdiction to adjudicate these claims, and should dismiss the interstate portions of these claims on that basis.

---

[36]    *See Heller, Ehrman, White & MacAuliffe v. Babbitt,* 992 F.2d 360, 364 (D.C. Cir. 1993); *Consolidated Edison Co. of New York, Inc. v. U.S., Dept. of Energy,* 247 F.3d 1378, 1385 (2d. Cir. 2001) ("This court and its sister circuits will not tolerate a litigant's attempt to artfully recast its complaint to circumvent the [exclusive] jurisdiction of the Court of Federal Claims"); *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1099 (9th Cir. 1990); *Eagle-Picher Indus., Inc. v. United States,* 901 F.2d 1530, 1532 (10th Cir.1990) (quoting *Rogers v. Ink,* 766 F.2d 430, 434 (10th Cir. 1985) ("A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States.")); *see also Am. Sci. Engg., Inc. v. Califano,* 571 F.2d 58, 61-63 (1st Cir. 1978); *Ala. Rural Fire Ins. Co. v. Naylor,* 530 F.2d 1221, 1225-26 (5th Cir.1976).

V.    **ARGUMENT ON C.R.C.P. 12(B)(1) MOTION TO DISMISS QWEST'S AFFIRMATIVE DEFENSES PREDICATED ON ALLEGED RATE DISCRIMINATION IN VIOLATION OF STATE PUBLIC UTILITIES STATUTES**

Defendants respectfully move the Court, pursuant to C.R.C.P. 12(b)(1), to dismiss Qwest's affirmative defense VII, alleging rate discrimination in violation of unidentified state public utilities statutes; and affirmative defense VIII, alleging unclean hands due to alleged rate discrimination in violation of unidentified state public utilities statutes, because the Court lacks subject matter jurisdiction to adjudicate rate discrimination claims.[37]

A.    **The State Public Utilities Statutes Vest Exclusive Jurisdiction in the State Public Utilities Commissions to Adjudicate Claims of Rate Discrimination**

Qwest itself has represented to the Court that most state statutes prohibiting rate discrimination vest exclusive jurisdiction over such claims in the state public utility or service commission: "Most of these states – for example Florida – vest exclusive jurisdiction for a rate discrimination challenge in the state public utilities commission."[38] Defendants do not dispute Qwest's assertion. The Florida Public Utilities Statute § 364.01 provides that "it is the legislative intent to give exclusive jurisdiction in all matters set forth in this chapter to the Florida Public Service Commission in regulating telecommunications companies." Furthermore, the commission "shall have jurisdiction to regulate and supervise each public utility with respect to its rates and service."[39] This jurisdiction extends to suits alleging rate discrimination.[40]

The same is true in California, the state in which Qwest has argued it received most of its intrastate access services from KMC Data. The California Public Utilities Code § 1759(a) states that no "court of this state, except the Supreme Court, to the extent specified in this article, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or…interfere with the commission in the performance of its official duties." The California Supreme Court applies a three part test to determine whether a particular action is precluded

---

[37]    For jurisdictional purposes, an affirmative defense is treated the same as an offensive claim. *See U.S. v. Dunifer*, 219 F.3d 1004, 1007 (9th Cir. 2000) (holding that the jurisdictional limitations of the Federal Communications Act apply to affirmative defenses as well as offensive claims); *U.S. v. Any and All Radio Transmission Equip.*, 207 F.3d 458, 463 (8th Cir. 2000) ("'Where exclusive jurisdiction is mandated by statute, a party cannot bypass the procedure by characterizing its position as a defense to an enforcement action'"). Therefore, the fact that Qwest's allegations of rate discrimination are raised as affirmative defenses is irrelevant for purposes of the Court's subject matter jurisdiction.

[38]    Qwest's Motion to Compel Removal of Defendants' Confidentiality Designations at p. 5 n.8.

[39]    Florida Public Utilities Statute, § 366.04.

[40]    *See Lake Worth Utilities Authority v. Barkett*, 433 So.2d 1278, 1279 (Fl. App. 1983) ("More specifically, the Commission has exclusive jurisdiction to determine the reasonableness of an electricity surcharge, *and whether or not it is discriminatory*").

from being raised in state court by section 1759: (a) whether the PUC possessed authority to formulate a policy concerning the subject matter at issue; (b) whether the PUC exercised that authority; and (c) whether the court action filed against the utility would hinder or interfere with those policies.[41] The California courts have held that the state PUC has authority to formulate policy over a telecommunications utility's practices and rates for purposes of adjudicating discrimination claims, and that the state courts may not decide discrimination cases without infringing upon the PUC's exclusive jurisdiction.[42] Accordingly, the California PUC exercises exclusive jurisdiction over suits alleging rate discrimination by a telecommunications carrier.

The same is true in New York. The New York Public Utilities Commission has exclusive original jurisdiction over public utility rates.[43] This jurisdiction extends to charges that a rate is "is unreasonable or unjustly discriminatory or unduly preferential."[44] Section 93 of the New York Public Service law provides for direct access to the courts in only two situations, neither of which is present here. The first is where a telephone corporation violates the "law of the state of New York," and the other is where an "order of the commission" is disobeyed.

**B.    Reasonableness Determinations Under State Discrimination Claims Require an Examination of the Reasonableness of the Rates Charged and Are Beyond the Court's Jurisdiction**

Qwest's affirmative defense VII alleges rate discrimination under unidentified state public utilities statutes. Qwest's affirmative defense VIII asserts Defendants' unclean hands due to rate discrimination in violation of those same unidentified state public utilities statutes. Regardless upon which statutes Qwest's claims ultimately rest, to evaluate those affirmative defenses, this Court must determine whether the rates Defendants charged Qwest or the rates charged other allegedly "similarly situated" customers were reasonable.[45]

But only state pubic utility commissions are vested with jurisdiction to determine the reasonableness of rates charged for intrastate services in a discrimination claim.[46] This Court,

---

[41]    *See People ex. rel. Orloff v. Pacific Bell*, 80 P.3d 201, 208 (Cal. 2003).

[42]    *See*, *Dollar-A-Day Rent-A-Car Systems, Inc. v. Pacific Tel. & Tel. Co.*, 26 Cal. App. 3rd 454, 461-462 (Cal. App. 1972) (holding that unless the California Public Utility Commission has first determined that a utility's charges are unjust, unreasonable or discriminatory, a state court has no jurisdiction to entertain claims for damages based on those charges).

[43]    *Van Dussen-Storto Motor Inn, Inc. v. Rochester Tel. Corp.*, 42 A.D.2d 400, 404 (N.Y. Sup. 1973).

[44]    New York Public Service Commission, § 97.

[45]    *Bayles v. Kansas Pac. Ry. Co.*, 22 P. 341, 342 (Colo. 1889) ("It is a well-settled elementary principle of the law of common carriers that mere inequality in charges does not amount to unjust discrimination. The requirement of the law is that the charge made shall be reasonable...the question is whether, under all the circumstances, the charge is reasonable...").

[46]    *See, e.g., CF&I Steel, L.P. v. PUC*, 949 P.2d 577, 584 (Colo. 1997) ("This statute shows the legislature's clear intent to place the primary duty and responsibility for the *determination of just and*

therefore, lacks the jurisdiction to examine the fundamental inquiry of any discrimination claim – whether any disparate rates charged similarly situated customers were unreasonable. Without the authority to decide that question, the Court lacks the jurisdiction to evaluate Qwest's affirmative defenses based on those grounds. Accordingly, the Court should grant Defendant's C.R.C.P. 12(b)(1) motion to dismiss Qwest's affirmative defenses VII and VIII for a lack of subject matter jurisdiction.

## VI.    ARGUMENT ON 12(B)(5) MOTION TO DISMISS QWEST'S AFFIRMATIVE DEFENSES VII AND VIII

Defendants also respectfully move the Court to dismiss Qwest's affirmative defenses VII and VIII for failure to state claims upon which relief may be granted. A motion to dismiss pursuant to C.R.C.P. 12(b)(5) tests the sufficiency of a pleading. A party "may seek dismissal for failure to state a claim at any stage in the proceedings prior to the entry of judgment."[47] When it appears on the face of the complaint that the claim does not state a claim upon which relief can be granted, the claim is barred. The court has no jurisdiction of the subject matter, and the court can, for that reason, grant a motion to dismiss on that ground.[48]

Qwest's affirmative defense VII alleges that "KMC Data has improperly discriminated against Qwest in its originating access charges *in violation of state public utilities statutes*." Qwest's affirmative defense VIII alleges that "KMC Data's claims are barred in whole or in part by the doctrine of unclean hands, having, among other acts, improperly discriminated against Qwest in its originating access charges, *in violation of state public utilities statutes*."

Qwest's affirmative defenses therefore are based upon the statutes of other states. Qwest has failed to plead the specific statutes that Defendants have allegedly breached. "It is elementary that a statute of another state, if essential to the action or defense, must be pleaded. It is regarded as fact not law."[49]

Qwest's affirmative defenses VII and VIII must be dismissed because Qwest has failed to plead the foreign state statutes upon which its defenses are based, failed to allege the conduct that allegedly violated these statutes, and accordingly failed to state a claim upon which relief can be granted. The Court, therefore, should grant Defendants' 12(b)(5) motion to dismiss Qwest's affirmative defenses VII and VIII.

---

*reasonable utility rates* in the Commission, and [provide] a rather complete procedural structure for the Commission to follow in discharging its function") (internal citations omitted).

[47]    *Colorado Land & Resources, Inc. v. Credithrift of America, Inc.*, 778 P.2d 320, 322 (Colo. App. 1989).

[48]    *Fort Collins-Loveland Water Dist. v. City of Fort Collins*, 482 P.2d 986, 989 (1971).

[49]    *Fern v. Crandell*, 246 P. 270, 271 (Colo. 1926); *Pando v. Jasper*, 295 P.2d 229 (Colo. 1956) ("Statutes of foreign states must be pleaded and proved like other facts relied upon in support of claim or defense"); *Mitchell v. Liggett*, 199 P. 486 (Colo. 1921) (Judicial notice cannot be taken of a statute of another state.).

## VII.  ARGUMENT ON CONDITIONAL MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO C.R.C.P. 41(a)(2)

Should the Court dismisses Qwest's interstate claims pursuant to Defendants' C.R.C.P. 12(b)(1) motion to dismiss, those claims will be addressed in federal court.[50] KMC Data therefore respectfully moves that, if the Court dismisses Qwest's interstate claims, the Court should exercise its discretion under C.R.C.P. 41(a)(2) to permit dismissal of the interstate portions of KMC Data's Counterclaims I, II, III, IV, V and VI without prejudice. Doing so, would allow all of the parties' interstate claims to be adjudicated in one forum -- the federal court -- and at one trial.

The interstate portions of KMC Data's counterclaims for which leave to take a voluntary dismissal without prejudice is requested are set forth below:

- Count I - Breach of Interstate Tariffs: The interstate portion of this claim alleges that Qwest accepted the terms and conditions set forth in KMC Data's federal interstate tariff, and accordingly is required by law to pay KMC Data the tariffed rates for the services provided. KMC Data further alleges that Qwest has received the services delineated in the federal tariff, and refused to pay the amounts due under the tariff rates. Qwest has therefore breached the terms and conditions of the federal tariff.

- Count II - Breach of Implied Contract: In the alternative to Count I, if the Court should find that KMC Data's interstate tariff does not cover the services provided by KMC Data to Qwest, by insisting on uninterrupted provision of services to Qwest, Qwest entered into an implied contract with KMC Data to pay KMC Data at the tariffed rates.

- Count III - Action on Open Account: In the alternative to counts I and II, Qwest created an open account by accepting and benefiting from the interstate access services and database query services offered by KMC Data. KMC Data has been damaged by Qwest's failure to pay the charges accrued on the account.

- Count IV- Quantum Meruit: In the alternative to the previous counts, KMC Data alleges that if there is no express or implied contract between the parties, Qwest is bound to pay the fair market value of the interstate access services provided to Qwest.

- Count V - Unjust Enrichment: In the alternative to the previous counts, KMC Data alleges that if there is no express or implied contract between the parties, Qwest is bound to pay the fair market value of the interstate services, because Qwest inequitably accepted and retained a benefit conferred by KMC Data.

- Count VI - Declaratory Judgment: The interstate portion of this claim asks the Court to declare that Qwest has breached the express and implied interstate contracts between the

---

[50]    Defendants already have filed a complaint in federal court seeking Declaratory Judgment that they have not committed the Communications Act and interstate-based violations that Qwest has alleged here. *See KMC Data, LLC v. Qwest, LLC*, Case no. 07-822 (D. Del.) (Complaint filed Dec. 17, 2007). (Exhibit A).

parties, and that Qwest is contractually obligated to make timely payment for the interstate charges and late fees as they become due.

### A.    Legal Standards Applicable to C.R.C.P. 41(a)(2) Motion for Voluntary Dismissal

C.R.C.P. 41(a)(2) provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court." "Although [Rule 41(a)(2)] gives the court discretion to grant or deny a motion to dismiss, a plaintiff's motion to dismiss voluntarily without prejudice generally should be granted, unless granting the motion will cause some legal prejudice to the defendant."[51] The fact that the plaintiff may later bring the same suit against the defendant in another court in and of itself is not sufficient prejudice to a defendant to warrant denying a motion to voluntarily dismiss.[52]

In determining whether a voluntary dismissal without prejudice would cause harm to a defendant, the trial court considers: (a) the duplicative expense of separate litigation; (b) the extent to which the current suit has progressed, including effort and expenses incurred by the defendant; (c) the adequacy of plaintiff's explanation for the need to dismiss; (d) the plaintiff's diligence in bringing the motion to dismiss; and (e) any undue vexatiousness on plaintiff's part.[53]

### B.    The Court Should Grant Voluntary Dismissal Because Qwest Will Not Be Prejudiced Thereby and Dismissal Will Serve the Interest of Judicial Economy

Granting voluntary dismissal will not prejudice plaintiff QCC under the Court's standard, and will serve the interest of judicial economy.[54] First, if the Court grants Defendants' 12(b)(1) motion regarding Qwest's interstate claims, then Qwest's interstate claims will be adjudicated in federal court. Unless the Court permits dismissal without prejudice of KMC Data's interstate counterclaims, then duplicative litigation is inevitable because Qwest's and KMC Data's interstate claims and counterclaims will be tried in different cases even though they are virtually mirror images of each other. Qwest therefore cannot be prejudiced by the duplicative expense of separate litigation, because there will be a separate litigation of the interstate issues regardless and, given that fact, permitting all interstate claims to be tried before one federal tribunal reduces duplication.

Second, dismissal of KMC Data's interstate claims will not halt or retard the procession of the litigation of the remaining intrastate issues in the state court. Rather, permitting voluntary dismissal of Defendants' interstate counterclaims without prejudice will serve to streamline the

---

[51]    *Tillery v. District Court*, 692 P.2d 1079, 1085 (Colo. 1984); *Powers v. Professional Rodeo Cowboys*, 832 P.2d 1099, 1102 (Colo. App. 1992).

[52]    *Powers*, 832 P.2d at 1099.

[53]    *Id.*

[54]    *Powers*, 832 P.2d at 1099.

remainder of the litigation, limiting the universe of issues to be tried the purely intrastate concerns and reducing confusion.

Third, it is in all parties' economic and legal interests to litigate all of the federal issues in one forum and at one trial. KMC Data's need for voluntary dismissal without prejudice is adequate because there is a substantial danger that if Qwest's interstate claims proceed in federal court, and Defendants' interstate counterclaims proceed in state court, inconsistent outcomes may ensue. Further, because Qwest's interstate claims and KMC Data's interstate counterclaims arise from the same core of operative fact, and will require analysis and construction of the same federal laws and tariffs, all parties have an interest in a single review of the inherently federal issues.

Fourth, KMC Data has not been delinquent in seeking voluntary dismissal. KMC Data seeks dismissal of its interstate counterclaims in connection with its concurrent 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. KMC Data is filing both in response to the discovery of a defect in the Court's subject matter jurisdiction. KMC Data did not unduly delay in seeking dismissal of the interstate counterclaims because as soon it recognized the jurisdictional defect, its counsel contacted Qwest to correct the issue voluntarily. In the absence of Qwest's agreement, KMC Data is forced to file these concurrent motions.

Fifth and finally, KMC Data does not request voluntary dismissal to be "vexatious," but, as discussed above, to pursue the interests of judicial economy. Accordingly, should Qwest's interstate claims be dismissed for lack of subject matter jurisdiction, this Court should grant KMC Data's motion to voluntarily dismiss without prejudice the interstate portions of its counterclaims I, II, III, IV, V and VI.

## VIII. CONCLUSION

For all of the foregoing reasons, Defendant Hypercube, LLC and Defendant and Counterclaim-Plaintiff KMC Data, LLC respectfully request that the Court:

(1)    DISMISS Qwest's Count V in its entirety, for lack of subject matter jurisdiction;

(2)    DISMISS the identified interstate portions of Qwest's Counts I, II, III, IV and VI, for lack of subject matter jurisdiction;

(3)    DISMISS Qwest's Affirmative Defenses VII and VIII, for lack of subject matter jurisdiction;

(4)    Grant Leave for Voluntary Dismissal without prejudice of the identified interstate portions of KMC Data's Counterclaims I, II, III, IV, V and VI; and

(5)    ORDER any other relief that the Court deems just and equitable.

Dated this 21st day of December, 2007.

Respectfully submitted:
DUFFORD & BROWN, P.C.

*Original signature on file at the offices of*
*Dufford & Brown, P.C.*

*s/ Richard L. Fanyo*
Richard L. Fanyo, #7238
David W. Furgason, #2122
Christian D. Hammond, #34271
1700 Broadway, Suite 2100
Denver, Colorado 80290-2101
Telephone: (303) 861-8013
Facsimile: (303) 832-3804
E-mail: rfanyo@duffordbrown.com
          dfurgason@duffordbrown.com
          chammond@duffordbrown.com

Ky E. Booth Kirby
Jon Frankel
Frank G. Lamancusa
Randall M. Levine
Bingham McCutchen LLP
2020 K Street NW
Washington, D.C. 20007
(202) 373-6000

ATTORNEYS FOR HYPERCUBE, LLC and
KMC DATA, LLC

{00340549.1}                                        19

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2007, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS AND AFFIRMATIVE DEFENSES PURSUANT TO C.R.C.P. 12(b)(1) AND C.R.C.P. 12(b)(5), AND TO CONDITIONALLY DISMISS KMC DATA'S INTERSTATE COUNTERCLAIMS PURSUANT TO C.R.C.P. 41(a)(2)** was served via Lexis/Nexis upon the following:

Timothy R. Beyer
Amy L. Benson
Lauren E. Schmidt
Brownstein Hyatt Farber Schreck, P.C.
410 Seventeenth Street, 22nd Floor
Denver, Colorado 80202-4437

*/s/ Darcie Kurtak*
Darcie Kurtak

{00340549.1}