IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HYPERCUBE, LLC and KMC DATA, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-822-GMS |
| | ) | |
| QWEST COMMUNICATIONS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S ANSWERING BRIEF IN RESPONSE TO PLAINTIFFS' MOTION FOR A TEMPORARY STAY

|  |  |
|---|---|
| OF COUNSEL:<br><br>Timothy R. Beyer<br>Amy L. Benson<br>Lauren E. Schmidt<br>Brownstein Hyatt Farber Schreck, P.C.<br>410 Seventeenth Street, 22nd Floor<br>Denver, CO 80202-4437<br>303-223-1100 | Frederick L. Cottrell, III (#2555)<br>cottrell@rlf.com<br>Jeffrey L. Moyer (#3309)<br>moyer@rlf.com<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>302-651-7700<br>*Attorneys for Defendant*<br>*Qwest Communications Corporation* |

Dated: March 6, 2008

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDING ................................................................. 1

SUMMARY OF ARGUMENT ............................................................................................... 2

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT ........................................................................................................................... 7

CONCLUSION ........................................................................................................................ 9

## TABLE OF AUTHORITIES

### CASES

**Page**

*Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*,
544 F.2d 1207 (3rd Cir. 1976) ...................................................................................... 7

*Dentsply Intern., Inc. v. Kerr Mfg. Co.*,
734 F. Supp. 656 (D. Del. 1990) .................................................................................. 7

*ITC DeltaCom Commc'ns., Inc. v. U.S. LEC Corp.*,
2004 WL 3709999 (N.D. Ga. Mar. 15, 2004) .............................................................. 4

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ..................................................................................................... 7

*MCI World Com Network Servs., Inc. v. Paetec Commc'ns., Inc.*,
2005 WL 2145499 (E.D. Va. Aug. 31, 2005),
*aff'd*, 2006 WL 3026293 (4th Cir. Oct. 25, 2006) ................................................... 3, 4

### OTHER AUTHORITIES

*In re Access Charge Reform*,
19 F.C.C. Rcd 9108 (May 21, 2004) ........................................................................... 3

*In re Petitions of Sprint PCS & AT&T Corp.*,
17 FCC Rcd. 13192 (July 3, 2002), *pet. for review dismissed*,
*AT&T Corp. v. F.C.C.*, 349 F.3d 692 (D.C. Cir. 2003) ............................................... 4

RLF1-3259812-1

## NATURE AND STAGE OF THE PROCEEDING

This is a parallel proceeding. Plaintiffs HyperCube, LLC ("HyperCube") and KMC Data, LLC ("KMC Data") commenced this action on December 17, 2007. The Complaint seeks payment of access charges for the transmission of interstate telephone calls originated by wireless phone companies and sent to Qwest Communications Corporation ("Qwest") by KMC Data. The claims asserted by Plaintiffs here are identical to counterclaims asserted by Plaintiffs in a lawsuit pending in Colorado state court (the "Colorado proceeding"). The Colorado proceeding has been pending for nineteen months and is set for trial on June 9, 2008.

Qwest has filed a motion to transfer this case to the District of Colorado pursuant to 28 U.S.C. § 1404. Qwest has also filed a motion to stay this proceeding pending resolution of the parallel proceedings in Colorado and a motion to dismiss Plaintiffs' claims for relief for implied contract (Count II), open account (Count III), unjust enrichment (Count IV) and quantum meruit (Count V). Qwest requests that this Court decide its motion to transfer this case to the District of Colorado pursuant to 28 U.S.C. § 1404 before deciding the motion to stay, motion for a temporary stay and motion to dismiss. Doing so will permit these motions to be decided by the court in which the case will proceed.

## SUMMARY OF ARGUMENT

1.      Qwest requests that this Court deny Plaintiffs' motion to stay these proceedings and proceed to decide Qwest's motion to transfer this case to the federal District Court in Colorado. Although Qwest does not oppose staying this action and indeed seeks a stay of this action pending resolution of the parallel claims in the Colorado proceeding, this Court should deny the temporary stay that Plaintiffs seek. Plaintiffs' requested stay extends only until the Colorado court has decided Plaintiffs' motion to dismiss the parallel claims in the Colorado proceeding. *Under the stay requested by Plaintiffs, this case will go forward regardless of what the Colorado court decides.* Thus, the proposed stay offers no efficiencies for this Court or the parties and is unduly prejudicial to Qwest.

2.      In the alternative, if this Court does stay these proceedings, Qwest respectfully submits this Court should enter a stay until either: (1) the Colorado court dismisses the parallel claims; or (2) the Colorado proceeding is terminated if the parallel claims are not dismissed.

## STATEMENT OF FACTS

Qwest is a long-distance company that transmits telephone calls originated by other companies to a point where the call can be transferred to the called party's local phone company. *See* Compl., ¶ 3 (D.I. 1). Companies that originate or terminate the calls to the calling parties may be wireless companies or landline companies. Landline companies that originate and terminate landline calls are referred to as local exchange carriers ("LECs"). Plaintiff KMC Data is a form of a local exchange carrier that is referred to as a competitive local exchange carrier ("CLEC"). *Id.*, ¶ 7. HyperCube is KMC Data's parent corporation and provides billing and collection services to KMC Data. *Id.*

At issue in this dispute are the access charges billed by Plaintiffs for interstate toll-free calls originated by wireless callers. Access charges (also called switched access charges) are charges that long distance companies like Qwest pay to landline companies to originate or terminate long distance calls. *See* Compl., ¶ 7; *MCI World Com Network Servs., Inc. v. Paetec Commc'ns., Inc.*, 2005 WL 2145499, at *1. (E.D. Va. Aug. 31, 2005), *aff'd,* 2006 WL 3026293 (4th Cir. Oct. 25, 2006). Access charges are typically defined by tariff and compensate the LEC for the use of its network. *See* Compl. ¶¶ 7, 15. If the call is an <u>inter</u>state call, the access charge is defined by the LEC's interstate access tariff, which is filed with the Federal Communications Commission ("FCC"). *Id.*, ¶ 15. If the call is an <u>intra</u>state call, the access charge is determined by the LEC's tariff filed in the state where the call occurs. *See Paetec Commc'ns.*, 2005 WL 2145499, at *1.

All tariffs, including access tariffs, must clearly identify each of the services offered and the associated rates, terms and conditions. *Access Charge Reform*, 19 FCC Rcd. 9108, ¶ 18 (May 21, 2004) ("Eighth Report and Order"). Absent an express contractual agreement to pay (and none is claimed here), the terms of applicable tariffs determine whether there is an

obligation to pay for call origination or termination. *E.g., Paetec Commc'ns.*, 2005 WL 2145499, at *4 (granting summary judgment to long distance company on CLEC claim for payment of wireless originated toll-free call access charges that were not within the scope of the CLEC's tariffs); *ITC DeltaCom Commc'ns., Inc. v. U.S. LEC Corp.*, 2004 WL 3709999, at *1 (N.D. Ga. Mar. 15, 2004) (vacated by stipulation of parties but cited with approval in *Eighth Report and Order*, n. 62).

In November 2005, Plaintiffs began billing Qwest access charges for toll-free calls originated by wireless companies. Compl., ¶ 16. Under FCC rules, wireless companies are not allowed to charge access charges for the origination or termination of wireless calls. *In re Petitions of Sprint PCS & AT&T Corp.*, 17 FCC Rcd. 13192 (July 3, 2002), *pet. for review dismissed, AT&T Corp. v. F.C.C.*, 349 F.3d 692 (D.C. Cir. 2003). Diving through a regulatory loophole, certain wireless companies send their calls to Plaintiffs and other wireline CLECs who then deliver them to Qwest and other long-distance companies. Plaintiffs then kick back a portion of the access charge revenue generated from the long distance carrier to the wireless carrier. *See* Compl., ¶ 9. In May 2004, the FCC largely limited this arbitrage opportunity for <u>inter</u>state calls. *See generally Eighth Report and Order*. However, Plaintiffs continue to pursue this scheme for <u>intra</u>state calls. In addition, Plaintiffs are billing Qwest <u>inter</u>state charges that are not within the scope of their federal tariff or in compliance with the Eighth Report and Order.

Qwest filed an action in Colorado on June 12, 2006 after Plaintiffs threatened to block Qwest's calls if Qwest did not immediately pay all outstanding charges. *See* Opening Brief to the Mot. to Transfer (D.I. 9), Ex. 4 (Benson Dec., ¶ 2)(hereinafter "Opening Brf."). That action is pending in the Colorado District Court for the City and County of Denver, Colorado as Civil Action No. 06-CV-6404 (the "Colorado proceeding"). *Id.*

Prior to the initiation of the Colorado proceeding, Plaintiffs represented to Qwest that all of their charges were billed in accordance with their state and federal tariffs. *Id.* at Ex. 2 (May 23, 2006 letter from J. Mertz). Plaintiffs' representations were false. Qwest discovered after commencing the Colorado proceeding that not only were the intrastate charges outside the scope of Plaintiffs' filed state tariffs, but Plaintiffs did not even have state tariffs in the majority of states where they were charging for intrastate access. *Id.* at Ex. 3 (Mertz Dep., 118:7-118:16). During the course of the litigation, Qwest also discovered that Plaintiffs billed Qwest for interstate access services not provided under Plaintiffs' federal interstate tariff and that Plaintiffs manipulated their billing system so that intrastate calls in states where Plaintiffs had no state tariffs would be billed as interstate calls. *Id.* (Mertz Dep., 132:4-133:2).

Nevertheless, Plaintiffs filed counterclaims in the Colorado proceeding seeking payment for the billed access charges. *Id.* at Ex. 3 (Ans. and Counterclaims (Colorado proceeding)). Like Qwest's claims, Plaintiffs' counterclaims in the Colorado proceeding focus, in part, on the terms of Plaintiffs' federal interstate access tariff. At no time, however, did Plaintiffs seek to remove the Colorado proceeding to federal court, despite the presence of Qwest's federal claim which would have permitted them to do so. *See id.* at Ex. 5 (Second Am. Compl. (Colorado proceeding), ¶¶ 79-85).

Instead, Plaintiffs litigated the Colorado proceeding until it became apparent that they could not support some of the positions they asserted in that court; it was only then that they filed their complaint with this Court on December 17, 2007. At that time, the Colorado proceeding had been pending for eighteen months and Qwest's Second Amended Complaint, which asserted claims under the federal Communications Act, had been the operative complaint for four

months.[1] *Id.* at Ex. 4 (Benson Dec., ¶¶ 2-3). Plaintiffs filed their complaint in this Court shortly after Plaintiffs' expert testified in his deposition and declined to opine that Plaintiffs' federal charges at issue were within the scope of Plaintiffs' tariffs or in compliance with the requirements of the FCC's Eighth Report and Order. *Id.* at Ex. 6 (Ball Dep., 94:15-94:19; 109:15-109:18).

Despite the late stage of the Colorado proceeding, Plaintiffs now seek to shift to this Court – via a motion to dismiss in the Colorado proceeding and a newly filed complaint in this Court – various claims that not only are directly at issue in the Colorado proceeding, but are also highly interrelated with claims regarding intrastate wireless access charges which will proceed in Colorado. *See* Compl., ¶ 27 (acknowledging that "QCC's claims and KMC Data's counterclaims concerning only *intrastate* issues will remain in the [Colorado proceeding]"). While Plaintiffs contend that such a fractured litigation is necessary because the interstate portions of *Qwest's claims* in the Colorado proceeding are subject to exclusive federal jurisdiction, Plaintiffs do not dispute that the Colorado court has jurisdiction over the federal claims Plaintiffs have brought here. *See* Opening Brf., Ex. 4 (Benson Dec., ¶ 9).

---

[1] Qwest filed its motion to amend its complaint in April 2007. Opening Brf., Ex. 4 (Benson Dec., ¶ 3). The motion attached a copy of the Second Amended Complaint containing the federal Communications Act claim. Thus, Plaintiffs had notice that Qwest would assert federal claims in the Colorado proceeding almost eight months before commencing this action.

## ARGUMENT

This Court has broad power to stay its proceedings, including the power to hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues. *E.g. Bechtel Corp. v. Local 215, Laborers' Int'l. Union of N. Am.*, 544 F. 2d 1207, 1215 (3rd Cir. 1976). However, in exercising its discretion, the Court must weigh the competing interests of the parties and attempt to maintain an even balance. *E.g. Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *Dentsply Intern., Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990).

Plaintiffs seek an order temporarily staying this action pending a decision in the Colorado proceeding on Plaintiffs' motion to dismiss Qwest's federal claims and Plaintiffs' related interstate counterclaims. Plaintiff's Motion For Temporary Stay (D.I. 14) ("Mot" at 1). Under the stay that Plaintiffs request, the stay ends even if the Colorado court *denies* Plaintiffs' motion to dismiss and the parallel claims remain in the Colorado proceeding. *See* Mot. at 3-4. Thus, the stay proposed by Plaintiffs requires that this case proceed regardless of the decision of the Colorado court.

Plaintiffs' request for a stay should be denied because it offers no efficiencies for the parties or this Court. Although Plaintiffs complain about the "duplicative" actions required, it is Plaintiffs who created these inefficiencies. Plaintiffs could have (and should have) removed the case to the federal court in the District of Colorado when the federal claims were added in August of 2007 if Plaintiffs believed that the state court lacked jurisdiction.[2] Plaintiffs instead

---

[2] Plaintiffs assert they did not commence the Delaware proceeding until December 2007 because they did not conclude that the Colorado court lacked subject matter jurisdiction over the federal claims until that time. Plaintiffs' explanation fails to explain their decision to file here. If Plaintiffs believed the Colorado court lacked jurisdiction over Qwest's federal claims, there was no need to file this action. Plaintiffs could simply litigate their claims in Colorado and collaterally challenge any judgment entered on Qwest's federal claims.

chose to file claims in the Colorado proceeding that are identical to the claims they have filed here. Plaintiffs did so only after their expert testified in his deposition that he had no opinion on whether the federal charges at issue in this action were within the scope of Plaintiffs' tariffs or in compliance with the requirements of the FCC's Eighth Report and Order. *See* Opening Brf., Ex. 6, (Ball Dep.). By filing a second parallel proceeding, therefore, Plaintiffs sought to complicate the impending state court trial and create a second opportunity to support their interstate charges in federal court in a venue that would not have been available to them had they simply removed the Colorado proceeding when Qwest added its federal claims.

Moreover, the stay requested by Plaintiffs further increases the costs to all parties. Because this action will proceed under the stay requested, it simply delays the inevitable litigation while the parties continue litigation in Colorado. It would be more efficient and less costly for the parties for this Court to instead decide (or have the transferee court decide) Qwest's motion to stay the entire proceeding until the parallel claims are resolved.[3]

---

[3] Qwest respectfully requests that this Court first decide its motion to transfer the case to the District of Colorado. This motion will need to be decided regardless of the outcome of the Colorado proceeding and deciding the transfer motion first will ensure that the other pending motions are decided by the court in which this case will proceed.

8

## CONCLUSION

For the reasons set forth herein, Qwest requests that this Court deny Plaintiffs' Motion for a Stay and instead proceed to decide Qwest's motion to transfer this case to the federal District Court in Colorado. In the alternative, if this Court does stay these proceedings, Qwest respectfully submits this Court should enter a stay until either: (1) the Colorado court dismisses the parallel claims; or (2) the Colorado proceeding is terminated if the parallel claims are not dismissed.

OF COUNSEL:

Timothy R. Beyer
Amy L. Benson
Lauren E. Schmidt
Brownstein Hyatt Farber Schreck, P.C.
410 Seventeenth Street, 22nd Floor
Denver, CO 80202-4437
303-223-1100

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
*Attorneys for Defendant*
*Qwest Communications Corporation*

Dated: March 6, 2008

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 6, 2008, I electronically filed the foregoing with the Clerk of Court using CM/ECF and caused the same to be served on the defendant at the addresses and in the manner indicated below:

**BY HAND DELIVERY**

Richard L. Horwitz
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19899-0951

_____
Jeffrey L. Moyer (#3309)