IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HYPERCUBE, LLC and KMC DATA, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-822-GMS |
| | ) | |
| QWEST COMMUNICATIONS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
COUNTS II, III, IV AND V OF PLAINTIFFS' COMPLAINT
<u>PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>**

OF COUNSEL:

Timothy R. Beyer
Amy L. Benson
Lauren E. Schmidt
Brownstein Hyatt Farber Schreck, P.C.
410 Seventeenth Street, 22nd Floor
Denver, CO  80202-4437
303-223-1100

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
*Attorneys for Defendant
Qwest Communications Corporation*

Dated: March 6, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT...............................................................................................................................3

    I.    PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED CONTRACT, OPEN ACCOUNT, UNJUST ENRICHMENT AND QUANTUM MERUIT ARE BARRED BY THE FILED TARIFF DOCTRINE AND THEREFORE FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ......................................................................................................3

        A.    Plaintiffs' Reliance on Worldcom v. Graphnet Is Misplaced. ...........................5

        B.    Persuasive Authority Supports the Conclusion That Plaintiffs' Claims Are Barred.......................................................................................................7

    II.    PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED CONTRACT AND ACTION ON OPEN ACCOUNT FAIL TO PLEAD AN AGREEMENT BETWEEN THE PARTIES. .................................................................................9

        A.    The Complaint Does Not Plead Facts to Raise a Reasonable Expectation That Discovery Will Reveal Evidence of an Agreement Between the Parties................................................................................................9

        B.    The Implied Contract Is Not Entirely Unrelated to the Express Contract........................................................................................................12

CONCLUSION........................................................................................................................13

# TABLE OF AUTHORITIES

## CASES

Page

*AT&T Corp. v. JMC Telecom, LLC*,
470 F.3d 525 (3d Cir. 2006), *cert. denied*, 127 S. Ct. 2913 (2007) .................................. 3,5,8

*AT&T v. FCC*,
317 F.3d 227 (D.C. Cir. 2003) .................................................................................................. 7

*Access Charge Reform*,
19 FCC Rcd. 9108 (May 18, 2004) ............................................................................ 4, 5, 7, 10

*In re Access Charge Reform, Seventh Report & Order & Further Notice of
Proposed Rulemaking*, 16 FCC Rcd. 9923 (Apr. 27, 2001) .................................................. 10

*In re Air Crash Disaster*,
720 F. Supp. 1493 (D. Colo. 1989) ........................................................................................... 1

*Alliance Commc'ns Coop., Inc. v. Global Crossing Telecomm., Inc.*,
2007 WL 1964271 (D. S.D. July 2, 2007) ................................................................................ 8

*Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*,
524 U.S. 214 (1998) .................................................................................................................. 4

*Baer v. Chase*,
392 F.3d 609 (3d Cir. 2004) .................................................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) .............................................................................................................. 9

*Chevron, U.S.A., Inc. v. NRDC*,
467 U.S. 837 (1984) .................................................................................................................. 5

*In re Donald J. Trump Casino Secs. Litig.*,
7 F.3d 357 (3d Cir. 1993) .......................................................................................................... 1

*Douglas Parker Elec., Inc. v. Miss. Design & Dev. Corp.*,
949 So. 2d 874 (Miss. Ct. App. 2007) .................................................................................... 11

*In re Establishing Just & Reasonable Rates for Local Exchange Carriers*,
22 FCC Rcd. 11629 (June 28, 2007) ....................................................................................... 10

RLF1-3260436-1

*Evanns v. AT&T Corp.*,
229 F.3d 837 (9th Cir. 2000) ..................................................................................................3

*Five Star Steel Constr., Inc. v. Klockner Namasco Corp.*,
524 S.E.2d 783 (Ga. Ct. App. 1999)......................................................................................11

*ITC Deltacom Commc'ns, Inc. v. US LEC Corp.*,
2004 WL 3709999 (N.D. Ga. Mar. 15, 2004)....................................................................5, 11

*ITT Fed. Support Servs., Inc. v. United States*,
531 F.2d 522 (Fed. Cl. 1976)................................................................................................12

*In re Korean Air Lines Disaster*,
829 F.2d 1171 (D.C. Cir. 1987)..............................................................................................1

*MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.*,
204 Fed. Appx. 271, 272 n.2 (4th Cir. 2006).........................................................................3

*MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.*,
2005 WL 2145499 (E.D. Va. Aug. 31, 2005), *aff'd*, 204 Fed. Appx. 271 (4th Cir.
2006) ...............................................................................................................................7, 8, 12

*MGC Communc'ns, Inc. v. AT&T Corp.*,
14 FCC Rcd 11647 (July 16, 1999) ......................................................................................11

*Murphy v. F.D.I.C.*,
208 F.3d 959 (11th Cir. 2000) ................................................................................................1

*New York Life Ins. Co. v. K N Energy, Inc.*,
80 F.3d 405 (10th Cir. 1996) ..................................................................................................9

*In re Penn Cent. Transp. Co.*,
831 F.2d 1221 (3d Cir. 1987)..................................................................................................9

*Phillips v. County of Allegheny*,
--- F.3d --, 2008 WL 305025 (3d Cir. Feb. 5, 2008)..............................................................9

*TON Servs., Inc. v. Qwest Corp.*,
493 F.3d 1225 (10th Cir. 2007) ......................................................................................3, 6, 7

*In re U.S. Telepacific Corp. v. Tel-America of Salt Lake City, Inc.*,
19 FCC Rcd 24552 (Dec. 14, 2004) .......................................................................................5

*Union Tel. Co. v. Qwest Corp.*,
495 F.3d 1187 (10th Cir. 2007) ..........................................................................................6, 7

*Union Tel. Co. v. Qwest Corp.*,
2004 WL 4960780 (D. Wyo. May 11, 2004),
*aff'd*, 495 F. 3d 1187 (10th Cir. 2007) ..................................................................................8

*Worldcom, Inc. v. Graphnet, Inc.*,
343 F.3d 651 (3d Cir. 2003).................................................................................................5, 6

## OTHER AUTHORITIES

29 *Williston on Contracts* § 73:55 (4th ed. 2007)....................................................................9

**PRELIMINARY STATEMENT**

At issue in this case are the access charges Plaintiffs charge Qwest for the origination of wireless toll free interstate calls. Plaintiffs purport to charge Qwest for these calls under the terms of their federal interstate access tariff, and the complaint seeks payment pursuant to the terms of the tariff. However, the complaint also alleges that Plaintiffs are entitled to recover for the same services under their claims for breach of an implied contract, open account, quantum meruit and unjust enrichment. In this motion, Qwest seeks to dismiss these latter claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Because this is a parallel proceeding, Qwest has simultaneously filed a motion to transfer this case to the District of Colorado where a state court proceeding pending since June of 2006 is set for trial on June 9, 2008. Qwest respectfully requests that this Court decide Qwest's motion to transfer this case before ruling (if needed) on this motion to dismiss in order to ensure that this motion is decided by the court in which the case will proceed.[1] But regardless of who decides this motion, the claims should be dismissed for failing to state a claim upon which relief may be granted.

Plaintiffs have filed a tariff which governs their provision of interstate access services. Because the tariff sets forth the exclusive source of Plaintiffs' rights and obligations, Plaintiffs cannot recover for charges that are outside their tariff. Even if they could, Plaintiffs claims for breach of an implied contract and open account fail as a matter of law because Plaintiffs have

---

[1] Where a federal question claim is transferred from one federal forum to another, the transferee court is to apply its own circuit's interpretation of federal law. *Murphy v. F.D.I.C.*, 208 F.3d 959, 964 (11th Cir. 2000); *see also In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987) (applying law of the transferee court); *In re Donald J. Trump Casino Secs. Litig.*, 7 F.3d 357, 368 n.8 (3d Cir. 1993) (assuming without deciding that transferee court's precedent controls); *In re Air Crash Disaster*, 720 F. Supp. 1493, 1496 (D. Colo. 1989) (holding transferee court is bound by the law of its own circuit).

alleged facts precluding any express or implied agreement. For the reasons set forth below, Qwest requests that Plaintiffs claims for implied contract, open account, quantum meruit and unjust enrichment be dismissed.

## ARGUMENT

I. **PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED CONTRACT, OPEN ACCOUNT, UNJUST ENRICHMENT AND QUANTUM MERUIT ARE BARRED BY THE FILED TARIFF DOCTRINE AND THEREFORE FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

As set forth in Qwest's opening brief in support of its motion to dismiss (D.I. 11) ("Opening Brief"), the filed tariff doctrine provides that "the terms of [a telecommunications carrier's filed] federal tariff are considered to be the law and therefore conclusively and exclusively enumerate the rights and liabilities as between the carrier and the customer." *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *see also Evanns v. AT&T Corp.*, 229 F.3d 837, 840 (9th Cir. 2000). Thus, federal courts "have no power to adjudicate claims which would 'invalidate, alter, or add to the terms of the filed tariff.'" *TON Servs.*, 493 F.3d at 1236 (quoting *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1084 (9th Cir. 2006)); *cf. AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 532 (3d Cir. 2006) ("According to the filed rate doctrine, a customer is prevented from enforcing contract or tort rights that contradict the tariff."), *cert. denied*, 127 S. Ct. 2913 (2007).

In seeking recovery of charges "not covered or governed by [KMC Data's filed] tariffs," Plaintiffs request precisely the relief that the filed tariff doctrine prohibits. *See JMC Telecom*, 470 F.3d at 532 ("The classic example of the preemptive power of the doctrine occurs when a customer makes a claim for a rate that was not filed by the carrier—such claims are barred."); *MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.*, 204 Fed. Appx. 271, 272 n.2 (4th Cir. 2006) ("Under the filed rate doctrine, a carrier is expressly prohibited from collecting charges for services that are not described in its tariff."). Because the claims that are at issue in this motion to dismiss seek to expand Plaintiffs' exclusive rights, as set forth in their filed tariff, and, thus, to add to the terms of Plaintiffs' filed tariff, they fail to state a claim upon which relief

3

can be granted. *See Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 227 (1998) ("The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.".

In arguing that the filed tariff doctrine is inapplicable, Plaintiffs attempt to distinguish between a deviation from the *rates* set forth in a filed tariff, which they concede would run afoul of the filed tariff doctrine, and the recovery of charges for *services* not covered by a filed tariff. Plaintiff's Answering Brief In Opposition To The Motion To Dismiss (D.I. 13) ("Ans. Brf.", p. 9). This is a distinction without a difference. Because a carrier's filed tariff sets forth the exclusive rights and obligations of the carrier, the only permissible rates are those expressed in the tariff. Thus, any additional charges, whether for services described in the tariff or not, *are* deviations from the filed rates. Indeed, the Supreme Court has already rejected this distinction, holding that the filed tariff doctrine applies equally to rates and services. *Cent. Office Tel.*, 524 U.S. at 223 ("Rates . . . do not exist in isolation. They have meaning only when one knows the services to which they are attached."). Just as a carrier is precluded from deviating from the *rates* set forth in its filed tariff, it is also precluded from deviating from the *services* covered by its tariff. *Id.* at 223-24.

The FCC reconfirmed this well-established rule of law in its Eighth Report and Order, which addressed access charges for the very calls at issue here, *i.e.* toll free calls originated by wireless carriers. In that Order, the FCC first reaffirmed that all tariffs, including the access tariff at issue here, must not only list the rates charged by the carrier, but must also "clearly identify each of the services offered." *Access Charge Reform*, 19 FCC Rcd. 9108, ¶18 (May 18, 2004) ("Eighth Report and Order"). The FCC then held that prior to the date of the Order (which reduced access charges going forward), carriers like Plaintiffs could charge access for

wireless originated toll free calls only if they were "otherwise in compliance with and supported by [their] tariff." *Id.* In support, the FCC cited with approval to the federal court's decision in *ITC Deltacom Commc'ns, Inc. v. US LEC Corp.*, 2004 WL 3709999 (N.D. Ga. Mar. 15, 2004), for its holding that "an IXC [*i.e.*, long distance carrier] has no duty to pay a competitive LEC [like KMC Data] for transiting wireless toll-free calls" where the terms of the tariff did not cover the services at issue. *Eighth Report and Order*, ¶ 18 n. 62. The Eighth Report and Order is entitled to great deference from this Court. *See e.g., JMC Telecom*, 470 F.3d at 534 ("Given the FCC's role in interpreting the [Federal Communications Act], the aforementioned decisions deserve Chevron-style deference"); *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 844 (1984) ("Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer").[2]

### A. Plaintiffs' Reliance on *Worldcom v. Graphnet* Is Misplaced.

Plaintiffs erroneously contend that *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651 (3d

---

[2] Plaintiffs assert that because *ITC Deltacom* was subsequently vacated, it "should not be afforded any persuasive value." Ans. Brf., p. 21. The *ITC Deltacom* opinion was vacated at the joint request of the parties following the execution of a settlement agreement. *See* Ans. Brf., Ex. A ("This Court has been advised that ITC and US LEC have reached a settlement agreement with respect to all claims brought in this action. The parties have moved this Court to vacate its March 15, 2004 Order as part their settlement of all claims in this action."). Although vacated, the opinion has twice been cited with approval by the FCC, both before and after it was vacated. *See Eighth Report and Order*, ¶ 18 n. 62 (citing with approval to the *ITC Deltacom* opinion "holding that an IXC [or long distance carrier] has no duty to pay a competitive LEC [like KMC Data] for transiting wireless toll-free calls where the terms of the competitive LEC's tariff cover only access to the competitive LEC's own end-users or transport of traffic that originates or terminates through a LEC switching system"); *In re U.S. Telepacific Corp. v. Tel-America of Salt Lake City, Inc.*, 19 FCC Rcd. 24552, ¶ 9 n.31 (Dec. 14, 2004) (citing the *ITC Deltacom* opinion as an example where the district court correctly used its expertise to determine whether the long distance carrier had a duty to pay the access charges in dispute). Thus, while the decision was vacated by the court at the request of the parties, its holding – that a long distance carrier has no obligation to pay access charges outside of the carrier's filed access tariff – was twice cited with approval by the FCC.

Cir. 2003), "unambiguously supports Plaintiffs' position" that their claims are not barred by the filed rate doctrine. Ans. Brf., p. 6. It does not. In *Worldcom,* the defendant argued that because the plaintiff had not filed a telecommunications contract with the FCC, it could not recover under common law theories such as unjust enrichment. The Third Circuit disagreed, finding, *inter alia,* that the carrier could seek payment under the doctrine of unjust enrichment. *Worldcom,* 343 F.3d at 658. In doing so, the Third Circuit expressly noted that in that case *there was no filed tariff. Id.* at 656 n.2 ("We assume for purposes of this appeal that there is no filed tariff . . . ."); *cf. TON Servs.,* 493 F.3d at 1237 ("[T]he failure to file a required tariff has been held to defeat the application of the filed rate doctrine."). Had there been a tariff, the contracts at issue "would be unenforceable to the extent they conflicted with a filed tariff." *Worldcom,* 343 F.3d at 656 n.2.

Plaintiffs now attempt to extend the holding of *Worldcom* to circumstances in which there is a filed tariff. This would, of course, effectively abolish the filed tariff doctrine by permitting a carrier to rely on equitable claims whenever its tariff was inadequate. Such a result was surely not contemplated by the court in *Worldcom.* Indeed, the Tenth Circuit has read *Worldcom* as extending to only those situations in which the parties have negotiated and executed a contract for the services at issue, but have neglected to file it with the FCC. *Union Tel. Co. v. Qwest Corp.,* 495 F.3d 1187, 1197 (10th Cir. 2007) ("[I]t does not appear to us that *Worldcom* is apt, given that those parties had actually negotiated and executed a contract as required by the Communications Act, and had merely neglected to file it with the FCC.") The Tenth Circuit held that it would be "inappropriate to imply a contract in equity considering that under federal law Union had an obligation to contract directly with Qwest but chose not to do so." *Id.*

In this case, where Plaintiffs allege the charges at issue are subject to a filed tariff, it would be even more "inappropriate to imply a contract in equity" for services which Plaintiffs had an obligation to identify in their filed tariff.[3] *See id.*; *see also TON Servs.*, 493 F.3d at 1236 ("[C]ourts have no power to adjudicate claims which would . . . add to the terms of the filed tariff").[4]

### B. Persuasive Authority Supports the Conclusion That Plaintiffs' Claims Are Barred.

In the absence of controlling Third Circuit precedent, the decisions of other jurisdictions provide persuasive support for the conclusion that Plaintiffs may not rely on equitable theories of recovery to avoid the express, and exclusive, terms, of their filed tariff. Unlike *Worldcom*, in which the plaintiff had no filed tariff, the opinion of the Eastern District of Virginia in *Paetec Communications* is directly on point. *MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.*, 2005 WL 2145499 (E.D. Va. Aug. 31, 2005), *aff'd*, 204 Fed. Appx. 271 (4th Cir. 2006).

---

[3] Plaintiffs attempt to distinguish *Union Telephone* by arguing that it applies only to the obligation of local exchange carriers to establish reciprocal compensation agreements pursuant to 47 U.S.C. § 251. Ans. Brf., p. 13-14. However, just as the plaintiff in *Union Telephone* had an obligation to enter into an interconnection agreement, Plaintiffs here had an obligation to "clearly identify each of the services offered and the associated rates, terms, and conditions." *Eighth Report and Order*, ¶ 18. Thus, just as in *Union Telephone*, "allowing [Plaintiffs] to recover damages under a theory of unjust enrichment or quantum meruit would frustrate the federal regulatory mechanism." *Union Telephone Co.*, 495 F.3d at 1197. For purposes of this motion, it is irrelevant whether this regulatory mechanism arises from the filed tariff doctrine or Section 251 of the Communications Act.

[4] Plaintiffs cite *New Valley Corp. v. Pac. Bell*, 15 FCC Rcd. 5128 (March 10, 2000), and *In re Total Telecommc'ns Servs., Inc v. AT&T Corp.*, 16 FCC Rcd. 5726 (March 13, 2001), for the proposition that Qwest is required to pay for services not properly encompassed by Plaintiffs' filed tariff. Both are distinguishable. First, the FCC's holding in *Total Telecommc'ns.* was reversed by the Court of Appeals in *AT&T v. FCC*, 317 F.3d 227 (D.C. Cir. 2003). In doing so, the Court of Appeals criticized the FCC for failing to determine whether Total provided the exchange access service billed to AT&T and remanded the matter to the Commission "to consider AT&T's argument that Total did not provide access service." *Id.* at 239. Second, in its Eighth Report and Order issued after the remand of the *Total* decision, the FCC held that a carrier may collect access charges for the very calls at issue here only to the extent they are "in compliance with and supported by its tariff." *Eighth Report and Order*, ¶ 18. To the extent the FCC orders cited by Plaintiffs may be read to conflict with the more recent Eighth Report and Order, the Eighth Report and Order that covers the precise charges at issue here must control.

Just as in this case, the local exchange carrier in *Paetec* had filed an interstate tariff governing access charges and the long distance carrier objected to certain charges as outside the scope of this tariff. *Id.* at *2. Like Plaintiffs in this case, the local exchange carrier asserted alternative claims of implied contract, quantum meruit, and unjust enrichment. *Id.* In granting summary judgment in favor of the long distance carrier, the court held that the filed tariff doctrine barred these equitable claims. *Id.* at *5. Plaintiffs do not even attempt to distinguish *Paetec*, instead arguing simply that, as an unpublished opinion from another jurisdiction, it is entitled to no precedential value. Ans. Brf. p. 10-11. However, Qwest does not argue that *Paetec* is precedential or controlling on this Court. Instead, Qwest asserts that given the absence of any published Third Circuit case law directly on point, *Paetec* carries significant persuasive value.

Likewise, despite Plaintiffs' efforts to distinguish the other persuasive authority cited by Qwest in its Opening Brief, these cases each involved facts and claims similar to those at issue in this case. Specifically, in each of these cases, there was a filed tariff which set forth the exclusive terms of the parties' relationship, and in each of these cases, the carrier sought to recover, under equitable theories, charges not covered by the tariff. *See JMC Telecom*, 470 F.3d at 532 (rejecting claims that would contradict carrier's filed tariff); *Alliance Commc'ns Coop., Inc. v. Global Crossing Telecomm., Inc.*, 2007 WL 1964271, at *7 (D. S.D. July 2, 2007) (rejecting equitable claims for charges different than the charges required pursuant to the carrier's filed tariffs); *Union Tel. Co. v. Qwest Corp.*, 2004 WL 4960780, at *2 (D. Wyo. May 11, 2004) (rejecting equitable claims where carrier's filed tariffs were inapplicable), *aff'd*, 495 F.3d 1187 (10th Cir. 2007). For the same reasons these courts rejected the carrier's attempts to circumvent the terms of their filed tariffs, this Court should reject Plaintiffs' attempt to do so

here. Accordingly, Plaintiffs' claims for breach of implied contract, open account, unjust enrichment, and quantum meruit fail to state a claim upon which relief can be granted.

## II. PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED CONTRACT AND ACTION ON OPEN ACCOUNT FAIL TO PLEAD AN AGREEMENT BETWEEN THE PARTIES.

The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), heightened the requirements for pleading a claim under Fed. R. Civ. P. 8. As the Third Circuit explained, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Phillips v. County of Allegheny*, --- F.3d ---, 2008 WL 305025, at *4 (3d Cir. Feb. 5, 2008). It is therefore no longer sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of [the proscribed] conduct." *Id.* at *5 (quoting *Twombly*, 127 S. Ct. at 1965 n.8). Under the test set forth by the Third Circuit, following *Twombly*, a complaint must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element. *Id.* at *6.

### A. The Complaint Does Not Plead Facts to Raise a Reasonable Expectation That Discovery Will Reveal Evidence of an Agreement Between the Parties.

A required element of the claim for breach of implied contract and action on open account is that there be a mutual agreement. *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987) ("An implied-in-fact contract is a true contract arising from mutual agreement and intent to promise . . . ."); *New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 412 (10th Cir. 1996) ("Implied in fact contracts arise from conduct of the parties which evidences a mutual intention to contract with each other." (citation omitted)); 29 *Williston on Contracts* § 73:55 (4th ed. 2007) ("An account stated is nothing more or less than a contract . . . ." (citation omitted)). Here, Plaintiffs have alleged no facts which would raise a reasonable expectation that discovery will reveal the evidence of an agreement. Plaintiffs have instead alleged that Qwest has

9

repeatedly failed to pay the charges and claimed that the services were of no benefit. Compl. ¶¶ 19-21 (D.I. 1).

Plaintiffs contend that despite these allegations, Plaintiffs have alleged an agreement to pay for the services. Plaintiffs point to their allegations that Qwest knows the rates Plaintiffs charge and Qwest's assertion that it would suffer irreparable harm if KMC Data stopped providing the services. Ans. Brf., p. 15. These allegations do not plead "facts to raise a reasonable expectation that discovery will reveal evidence" of an agreement. When a carrier such as KMC Data transfers calls between two other carriers (as Plaintiffs allege that they do here), the carrier (referred to as an intermediate or transiting carrier) is in a monopolistic position in which its exercises complete control over the call. *Eighth Report & Order,* ¶ 17 (noting that an intermediate carrier has monopoly power when sending a call from another carrier to a long distance carrier). Moreover, the FCC requires that the long distance carrier accept the call. *Id.* ("[A]n IXC *[i.e.* long distance carrier like Qwest] may have no choice but to accept traffic from an intermediate competitive LEC [like KMC Data] chosen by the originating or terminating carrier.") Thus, the FCC prohibits Qwest and other long distance carriers from taking steps to block the receipt of the call. *In re Establishing Just & Reasonable Rates for Local Exchange Carriers,* 22 FCC Rcd. 11629, ¶ 1 (June 28, 2007) ("Because the ubiquity and reliability of the nation's telecommunications network is of paramount importance to the explicit goals of the Communications Act of 1934, as amended,…we reiterate here that Commission precedent does not permit unreasonable call blocking by [long distance] carriers.").[5]

---

[5] *See also In re Access Charge Reform, Seventh Report & Order & Further Notice of Proposed Rulemaking,* 16 FCC Rcd. 9923, ¶ 24 (Apr. 27, 2001) ("If such refusals to exchange traffic were to become a routine bargaining tool, callers might never be assured that their calls would go through. We are particularly concerned with preventing such a degradation of the country's telecommunications network. It is not difficult to foresee instances in which the failure of a call

Thus, alleging that Qwest knows the rates charged by Plaintiffs and receives the calls is not sufficient to allege an agreement between Qwest and Plaintiffs to pay for the calls. Similarly, alleging that Qwest has argued it will suffer irreparable harm if the services are not provided is not sufficient to allege an agreement to pay for the calls. Because Plaintiffs occupy a monopoly position with respect to each call, Qwest has no choice but to accept the call from Plaintiffs and cannot force Plaintiffs or the wireless carriers they serve to reroute the calls so that they do not come through Plaintiffs. Coupled with Plaintiffs' clear and unambiguous allegations that Qwest has told Plaintiffs it receives no benefit from Plaintiffs and that Qwest refuses to pay for the calls, Plaintiffs have not (and cannot) meet the standards required by *Twombly* in pleading an agreement to pay for the calls.[6]

Nor does the complaint allege any agreement on price. As set forth in Qwest's Opening Brief, there can be no open account where the parties have not agreed upon a price. *See, e.g., Douglas Parker Elec., Inc. v. Miss. Design & Dev. Corp.*, 949 So.2d 874, 877 (Miss. Ct. App. 2007) ("[A]n open account must contain a final and certain agreement on price." (internal quotation omitted)); *ITC Deltacom Commc'ns, Inc. v. US LEC Corp.*, 2004 WL 3709999 (N.D. Ga. Mar. 15, 2004); *Five Star Steel Constr., Inc. v. Klockner Namasco Corp.*, 524 S.E.2d 783,

---

to go through would represent a serious problem, and, in certain circumstances, it could be life-threatening.").

[6] Plaintiffs' reliance on *MGC Communc'ns, Inc. v. AT&T Corp.*, 14 FCC Rcd. 11647 (July 16, 1999), as support for the assertion that they have alleged an agreement is misplaced. *See* Ans. Brf., p. 17-18. In *MGC Communications*, the issue was not whether the parties had entered into an implied agreement or an open account, but whether AT&T had taken the steps necessary to terminate service under MGC Communications filed tariff. *Id.*, ¶ 1 ("In this proceeding, complainant MGC Communications, Inc., asserts that defendant AT&T Corp. has improperly refused to pay for originating exchange access service that AT&T ordered and accepted pursuant to MGC's validly filed tariff.") The FCC's delineation of the steps necessary to terminate services under MGC Communications' tariff, which was the issue addressed by the FCC in *MGC Communications*, does not apply here.

11

785 (Ga. Ct. App. 1999) ("A suit on open account is available . . . where the price of such goods or services has been agreed upon . . . ."). Accordingly, this Court should dismiss Plaintiffs' claims for breach of an implied contract and open account for failing to allege claims upon which relief may be granted.

### B.      The Implied Contract Is Not Entirely Unrelated to the Express Contract.

In addition, Plaintiffs cannot state a claim for breach of implied contract because Plaintiffs' tariff constitutes an express contract addressing the provision of interstate access services and the associated interstate access charges. For an implied contract to be valid, it "must be entirely unrelated to the express contract." *ITT Fed. Support Servs., Inc. v. United States*, 531 F.2d 522, 528 n.12 (Fed. Cl. 1976). While Plaintiffs' allegations regarding the existence of an implied contract rest on the assumption that their tariff does not cover the particular services and charges at issue, it does not follow that the subject of the alleged implied contract is *entirely unrelated* to the subject of Plaintiffs' tariff.

Plaintiffs' argument – that they have alleged an implied contract not covered by the tariff – should be rejected. Because Plaintiffs' interstate tariff addresses interstate access charges, this tariff is the sole contract between the parties on this issue and Plaintiffs' allegations of an implied contract relating to these access charges are precluded. *See Baer v. Chase*, 392 F.3d 609, 616-17 (3d Cir. 2004) ("There cannot be an implied-in-fact contract if there is an express contract that covers the same subject matter."); *Paetec Commc'ns*, 2005 WL 2145499, at *3 (noting a carrier's filed tariff is "the exclusive source of the terms and conditions by which it provides to its customers the services covered by the tariff").

RLF1-3260056-1

## CONCLUSION

For the reasons set forth in this reply brief and in Qwest's Opening Brief, Qwest respectfully requests that this Court dismiss Counts II, II, IV and V of Plaintiffs' Complaint.

OF COUNSEL:

Timothy R. Beyer
Amy L. Benson
Lauren E. Schmidt
Brownstein Hyatt Farber Schreck, P.C.
410 Seventeenth Street, 22nd Floor
Denver, CO  80202-4437
303-223-1100

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
*Attorneys for Defendant*
*Qwest Communications Corporation*

Dated:  March 6, 2008

13

RLF1-3260056-1

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 6, 2008, I electronically filed the foregoing with the Clerk of Court using CM/ECF and caused the same to be served on the defendant at the addresses and in the manner indicated below:

**BY HAND DELIVERY**

Richard L. Horwitz
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19899-0951

_____
Jeffrey L. Moyer (#3309)