IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HYPERCUBE, LLC and KMC DATA, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-822-GMS |
| | ) | |
| QWEST COMMUNICATIONS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STAY FEDERAL
PROCEEDINGS PENDING RESOLUTION OF PARALLEL STATE COURT ACTION**

OF COUNSEL:

Timothy R. Beyer
Amy L. Benson
Lauren E. Schmidt
Brownstein Hyatt Farber Schreck, P.C.
410 Seventeenth Street, 22nd Floor
Denver, CO  80202-4437
303-223-1100

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
*Attorneys for Defendant*
*Qwest Communications Corporation*

Dated:  March 6, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.   QWEST'S MOTION TO STAY SHOULD BE DECIDED AFTER THIS
     COURT DECIDES QWEST'S MOTION TO TRANSFER. ....................................... 2

II.  THIS FEDERAL ACTION IS PARALLEL TO THE ONGOING
     COLORADO PROCEEDING, AS IT PRESENTLY EXISTS. ................................... 2

III. EXCEPTIONAL CIRCUMSTANCES WARRANT DEFERENCE TO THE
     COLORADO PROCEEDING. ................................................................................... 4

     A.   The Colorado Proceeding Is Less Than Four Months From Trial and
          Discovery Is Nearing Completion. ................................................................. 5

     B.   A Stay of the Federal Proceedings Would Avoid Piecemeal Litigation
          and Advance the Policies Inherent in the Federal Filed Tariff Doctrine. .......... 7

     C.   The Adequacy of the Colorado Proceeding Counsels In Favor of a
          Stay. ............................................................................................................... 8

     D.   Plaintiffs' Claims Are Governed, in Part, by Principles of State Law. ............ 8

     E.   The Delaware District Court Is an Inconvenient Forum. ............................... 10

     F.   Plaintiffs' Complaint Filed Before This Court Is Reactive. ........................... 11

CONCLUSION .................................................................................................................. 13

i

# TABLE OF AUTHORITIES

## CASES

*Affymetrix, Inc. v. Synteni, Inc.,*
28 F. Supp. 2d 192 (D. Del. 1998)....................................................................................11

*AT&T Corp. v. JMC Telecom, LLC,*
470 F.3d 525 (3d Cir. 2006).............................................................................................9

*In re Air Crash Disaster,*
720 F. Supp. 1493 (D. Colo. 1989)...................................................................................2

*Allen v. La. State Bd. of Dentistry,*
835 F.2d 100 (5th Cir. 1988) ...........................................................................................6

*Bechtel Corp. v. Local 215, Laborers' Intern. Union of N. Am.,*
544 F.2d 1207 (3rd Cir. 1976) .........................................................................................6

*Burns v. Watler,*
931 F.2d 140 (1st Cir. 1991).............................................................................................8

*Colo. River Water Conservation Dist. v. United States,*
424 U.S. 800 (1976)............................................................................................4, 5, 7, 8

*In re Donald J. Trump Casino Secs. Litig.,*
7 F.3d 357 (3d Cir. 1993)..................................................................................................2

*Evanns v. AT&T Corp ,*
229 F.3d 837 (9th Cir. 2000) ...........................................................................................7

*Fisher Dev. Co. v. Boise Cascade Corp.,*
37 F.3d 104 (3d Cir. 1994)................................................................................................9

*Fox v. Maulding,*
16 F.3d 1079 (10th Cir. 1994) ..................................................................................2, 3, 6

*Great W. Sugar Co. v. N. Natural Gas Co.,*
661 P.2d 684 (Colo. App. 1982).....................................................................................10

*IFC Interconsult, AG v. Safeguard Int'l Partners,*
438 F.3d 298 (3d Cir. 2006), *cert. denied,* 127 S. Ct. 136 (2006) .........................................2

*In re Korean Air Lines Disaster,*
829 F.2d 1171 (D.C. Cir. 1987)........................................................................................2

*MCI Telecommunications Corp. v. Graphnet, Inc.,*
881 F. Supp. 126 (D.N.J. 1995) ............................................................9

*MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.,* 204 Fed. Appx.
271, 272 n.2 (4th Cir. 2006) ...............................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ....................................................................*passim*

*Murphy v. F.D.I.C.,*
208 F.3d 959 (11th Cir. 2000) .............................................................2

*Ryan v. Johnson,*
115 F.3d 193 (3d Cir. 1997) .........................................................3, 7, 8

*S. Utah Wilderness Alliance v. Bureau of Land Mgmt.,*
425 F.3d 735 (10th Cir. 2005) .............................................................9

*Smith v. Cent. Ariz. Water Conservation Dist.,*
418 F.3d 1028 (9th Cir. 2005) .............................................................3

*Spring City Corp. v. Am. Bldgs. Co.,*
193 F.3d 165 (3d Cir. 1999) ...............................................................7

*In re Sprint PCS and AT&T Corp. Declaratory Ruling Regarding CMRS Access
Charges,*
17 F.C.C. Rcd 13192 (2002), *pet. for review dismissed, AT&T Corp. v. FCC,* 349
F.3d 692 (D.C. Cir. 2003) .................................................................10

*TruServ Corp. v. Flegles, Inc.,*
419 F.3d 584 (7th Cir. 2005) ...............................................................4

*Tyrer v. City of S. Beloit,*
456 F.3d 744 (7th Cir. 2006) ..........................................................6, 10

*Worldcom, Inc. v. Graphnet, Inc.,*
343 F.3d 651 (3d Cir. 2003) ...............................................................9

## PRELIMINARY STATEMENT

This is a parallel proceeding. Plaintiffs HyperCube, LLC ("HyperCube") and KMC Data, LLC ("KMC Data") (collectively, "Plaintiffs") filed their complaint in this Court on December 17, 2007, asserting claims against Defendant Qwest Communications Corporation ("Qwest") relating to charges billed under Plaintiffs' interstate tariff. The claims are identical to claims already pending before a Colorado state court. Qwest seeks a stay of this parallel action pending the resolution of those claims in the Colorado proceeding.

The Colorado proceeding has been ongoing for approximately twenty months and is less than four months from trial. It is an appropriate forum for resolving the dispute and Plaintiffs' delay in initiating this action evinces a last-minute effort to complicate and delay the impending Colorado trial. In addition, the policy of uniformity inherent in the federal filed tariff doctrine would be undermined by the piecemeal litigation that would result from allowing this federal action to proceed, and it would be both inconvenient and inefficient for the parties to litigate this action in Delaware while the Colorado proceeding is ongoing. Accordingly, this case should be stayed pending the conclusion of the Colorado proceeding.

## ARGUMENT

### I.    QWEST'S MOTION TO STAY SHOULD BE DECIDED AFTER THIS COURT DECIDES QWEST'S MOTION TO TRANSFER.

At the same time Qwest filed its motion to stay this proceeding pending resolution of the ongoing Colorado proceeding, Qwest filed a motion to transfer this proceeding to Colorado pursuant to 28 U.S.C. § 1404 (D.I. 8). Because the forum in which this litigation proceeds may impact the resolution of this motion and Qwest's Motion to Dismiss (D.I. 10), Qwest respectfully requests that this Court rule on Qwest's motion to transfer before deciding whether to stay these federal proceedings.[1]

### II.    THIS FEDERAL ACTION IS PARALLEL TO THE ONGOING COLORADO PROCEEDING AS IT PRESENTLY EXISTS.

In addressing the threshold issue of whether the concurrent state and federal proceedings are parallel, this Court must "examine the state proceedings *as they actually exist*" to determine whether they involve substantially the same parties and claims as the federal proceedings. *See Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (emphasis in original). Where the proceedings, as they actually exist, not as they theoretically could exist, "involve the same parties and substantially identical claims, raising nearly identical allegations and issues," the proceedings are parallel and the threshold requirement for application of the *Colorado River* doctrine is satisfied. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306

---

[1] If this case is transferred to the District of Colorado, that court will not be bound by the Third Circuit case law on which Plaintiffs almost exclusively rely. While neither the Third Circuit nor the Tenth Circuit has explicitly weighed in on the issue in a published opinion, a majority of the federal circuits have held that where a federal question claim is transferred from one federal forum to another, the transferee court is not bound by the law of the transferor circuit, but should instead apply its own circuit's interpretation of federal law. *See, e.g., Murphy v. F D I C*, 208 F.3d 959, 964 (11th Cir. 2000); *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987); *see also In re Donald J Trump Casino Secs Litig*, 7 F.3d 357, 368 n 8 (3d Cir. 1993) (assuming without deciding that transferee court's precedent controls); *In re Air Crash Disaster*, 720 F. Supp. 1493, 1496 (D. Colo. 1989) (holding transferee court is bound by the law of its own circuit). Thus, the Third Circuit case law relied on by Plaintiffs, particularly with respect to the "piecemeal adjudication" factor, applies only if Qwest's motion to transfer is denied. Otherwise, Tenth Circuit law will govern the resolution of this motion.

(3d Cir. 2006)(internal quotations omitted), *cert. denied*, 127 S. Ct. 136 (2006); *Fox*, 16 F.3d at 1081 (rejecting consideration of how "state proceedings could have been brought in theory").

Here, there can be no dispute that this action is parallel to the ongoing Colorado proceeding. Each action involves the assertion of the same six claims by Plaintiffs against Qwest. With respect to the interstate portions of Plaintiffs' claims in the Colorado proceeding, Plaintiffs' claims before this Court are not merely "substantially identical" or involving "substantially the same issues" as their claims in the Colorado proceeding, but rather track their state court claims word for word. *See Ryan v. Johnson*, 115 F.3d 193, 195-96 (3d Cir. 1997) ("[C]ases are parallel when they involve the same parties and claims."); *Fox*, 16 F.3d at 1081 ("Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."). Indeed, Plaintiffs concede that at this time the state and federal cases are parallel. *See* Plaintiffs' Answering Brief in Opposition to Motion to Stay (D.I. 15) ("Ans. Brf" at 7)(D.I. 15). ("As of this Answering Brief, the state and federal cases are parallel....") This concession is alone sufficient to defeat Plaintiffs' argument that this Court "lacks the power to abstain." *Id.* at 6.

Nevertheless, Plaintiffs contend that the speculative possibility that certain of their claims will be dismissed from the Colorado proceeding undercuts the otherwise parallel nature of this proceeding. This argument is in direct contravention of the principle that the proceedings should be examined "as they actually exist." *Fox*, 16 F.3d at 1081. Plaintiffs assert that courts properly reject stays when there is substantial doubt regarding the parallel nature of concurrent proceedings, but the cases they cite for this notion are inapposite. In each of these cases, it was unclear whether the concurrent state proceedings, as currently framed, would address the issues raised in the federal action. *See Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028,

3

1033 (9th Cir. 2005) (noting that although state complaint referenced subcontracts at issue in federal action, it was unclear whether the state complaint sought a determination of rights under these contracts); *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592-93 (7th Cir. 2005) (explaining that although claims arose out of the same relationship, the same claims were not raised in state court). In other words, there was uncertainty whether the state claims were indeed parallel claims as they then existed. Here, there is no dispute. Plaintiffs concede that the two actions are parallel. Moreover, Plaintiffs cite no case in which the mere possibility that identical claims would subsequently be dismissed from the state court action precluded a stay of the federal proceedings. In light of the identity of claims and issues raised in the Colorado proceeding, it is therefore undisputed that the Colorado proceeding, as it is currently framed, will address the merits of the claims raised by Plaintiffs in this Court and this threshold requirement is satisfied.

## III.    EXCEPTIONAL CIRCUMSTANCES WARRANT DEFERENCE TO THE COLORADO PROCEEDING.

Plaintiffs' opposition to a stay of these federal proceedings suffers from two fundamental flaws. First, by repeatedly relying on the general rule regarding a federal court's obligation to exercise jurisdiction, Plaintiffs fail to appreciate that the *Colorado River* exception to this general rule was created by the Supreme Court for precisely these circumstances. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-818 (1976). Second, Plaintiffs repeatedly err in treating the nonexclusive factors set forth in *Colorado River* and *Moses H. Cone* as a "mechanical checklist," addressing each factor separately and concluding that it alone is insufficient to justify a stay. Despite Plaintiffs' attempt to divide and conquer the relevant factors individually, however, the proper course for this Court is to evaluate "the combination of factors" that justifies the stay. *Colo. River*, 424 U.S. at 818-19. As the Supreme Court has explained, "[n]o one factor is necessarily determinative" and "[t]he weight to be given to any one

4

factor may vary greatly from case to case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983) (quoting *Colo. River*, 424 U.S. at 818-19). In this case, the totality of the circumstances surrounding the concurrent proceedings and this federal action counsels in favor of a stay.

A.     **The Colorado Proceeding Is Less Than Four Months From Trial and Discovery Is Nearing Completion.**

Plaintiffs' understated acknowledgements that "some of the issues and claims asserted in this action were first raised before the state court" and that "the Colorado action has progressed further into discovery" (*see* Ans. Brf. at 16-17) do not begin to address the wide disparity in the relative progress of the two proceedings. More accurate is Plaintiffs' statement in their answering brief in opposition to Qwest's motion to transfer this proceeding to the federal District Court in Colorado. There, Plaintiffs acknowledge that the Colorado litigation is in its "advanced stages." *See* Plaintiffs' Ans. Brf. in Opp. to Mot. to Transfer (D.I. 16) at 13.

The Supreme Court has explained that in considering the order in which jurisdiction was obtained, "priority should . . . be measured . . . in terms of how much progress had been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Given this principle, it would be difficult to conceive of a situation in which this factor would weigh more heavily than it does in this case. As set forth above and in Qwest's opening brief in support of its motion to stay (D.I. 7) ("Opening Brief"), the Colorado proceeding has now been ongoing for approximately twenty months, since June 2006, and discovery (which was once closed and then reopened) is scheduled to be completed by April 20, 2008. In fact, trial is scheduled to begin just three months from now, on June 9, 2008. In contrast, this federal action has not proceeded beyond the filing of Plaintiffs' Complaint.

5

Plaintiffs fail to cite a single case, and Qwest is aware of none, in which a court declined to stay a parallel federal proceeding that was commenced so close to the scheduled state court trial date. In contrast, numerous courts have concluded a stay was appropriate in similar circumstances. *See, e.g., Tyrer v. City of S. Beloit*, 456 F.3d 744, 755 (7th Cir. 2006) (affirming stay where "a number of significant events [had] taken place in [the state] case" at the time the federal suit was filed); *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100, 104 (5th Cir. 1988) (affirming stay where "there [had] been extensive discovery in state court" and "the federal suit had not moved beyond the filing of amended and supplemental complaints").

To avoid this, Plaintiffs again fall back on their erroneous argument that these identical claims will be dismissed from the state action and that, therefore, the two proceedings will not remain parallel. Although dismissal of Plaintiffs' claims from the Colorado proceeding may affect the extent to which the two proceedings are parallel, consideration of such a speculative contingency contradicts this Court's obligation to view the state proceedings "as they actually exist," *Fox*, 16 F.3d at 1081, and, in any event, Qwest believes the claims will not be dismissed from the state court action. *See* Ex. A (Qwest's Colorado Brf. in Opposition to Mot. to Dismiss) attached hereto. Even if the claims were dismissed from the Colorado proceeding, this Court might nonetheless reasonably opt to continue the stay until the conclusion of the Colorado proceeding, simply to avoid unnecessarily complicating a sister tribunal's management of the dispute between the parties. *E.g., Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F. 2d 1207, 1215 (3rd Cir. 1976) ("a district court has broad power to stay its proceedings, including the power to "hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."). Plaintiffs' request to proceed forthwith in

6

this forum with their tardy complaint flouts the principles of "wise judicial administration" that

the *Colorado River* doctrine was designed to protect. *Colo. River*, 424 U.S. at 818.

**B.    A Stay of the Federal Proceedings Would Avoid Piecemeal Litigation and Advance the Policies Inherent in the Federal Filed Tariff Doctrine.**

As an initial matter, Plaintiffs erroneously attempt to treat this consideration as a

necessary and dispositive factor in the application of the *Colorado River* doctrine. Ans. Brf., at

13. Even in *Moses H. Cone,* a case where the Supreme Court noted that the danger of piecemeal

litigation was of "paramount" importance, it made equally clear that "[t]he weight to be given to

any one factor may vary greatly from case to case, depending on the particular setting of the

case." *Moses H. Cone*, 460 U.S. at 16, 19. Thus, contrary to Plaintiffs' contentions, there is no

"piecemeal adjudication test" that must be satisfied before this Court has the power to stay this

federal action. Rather, like each of the other considerations, the danger of piecemeal litigation is

just one in a "combination of factors counseling against [the] exercise" of this Court's

jurisdiction. *Colo. River*, 424 U.S. at 818-19. The Third Circuit case law relied upon by

Plaintiffs to suggest otherwise must be read in light of this controlling Supreme Court precedent.

In any event, the federal filed tariff doctrine gives rise to a "strong federal policy against

[piecemeal] litigation" that would be undermined if this Court were to deny Qwest's motion to

stay. *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 172 (3d Cir. 1999); *see also Ryan*, 115

F.3d at 198. Pursuant to the filed tariff doctrine, the terms of a telecommunications carrier's

filed tariff are "considered to be the law and to therefore conclusively and exclusively enumerate

the rights and liabilities as between the carrier and the customer." *Evanns v. AT&T Corp.*, 229

F.3d 837, 840 (9th Cir. 2000) (quotation omitted). Because Plaintiffs' rights and obligations in

this action are governed exclusively by their interstate tariff, it is important that there be one

interpretation of this tariff. Inconsistencies in the interpretation of Plaintiffs' interstate tariff

would leave Plaintiffs' rights and obligations with respect to its customers unclear, and thus, would go "beyond the routine inefficiency that is the inevitable result of parallel proceedings." *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir. 1991). This need for uniformity that is inherent in the federal filed tariff doctrine suggests that tariff claims, in particular, should not proceed simultaneously in two different courts. Where, as here, such claims are nearing resolution in state court, this federal policy supports the conclusion that the claims should be litigated in state court alone.

C.    **The Adequacy of the Colorado Proceeding Counsels In Favor of a Stay.**

Plaintiffs again concede that their claims for recovery of monetary damages from Qwest are properly before the Colorado state court and, therefore, that the Colorado proceeding is adequate to protect Plaintiffs' rights. *See* Ans. Brf. at 16 ("Plaintiffs and Qwest agree that the Colorado state court is at least adequate to protect KMC Data's rights on its simple collection action against Qwest"). Thus, with respect to the claims before this Court, there is no dispute that the Colorado proceeding is "an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. Contrary to Plaintiffs' suggestion otherwise, Qwest does not contend that the adequacy of the Colorado proceeding is alone sufficient to justify a stay of the federal proceeding. However, it is clear that this factor is met in this case and because there is an adequate forum in Colorado, this Court is not precluded from entering the stay requested in this motion. *See Ryan*, 115 F.3d at 200.

D.    **Plaintiffs' Claims Are Governed, in Part, by Principles of State Law.**

Aside from Plaintiffs' claims for breach of interstate tariff and declaratory judgment, which Qwest concedes arise under federal law, Plaintiffs' remaining claims are traditional state law claims. As set forth in Qwest's briefs in support of its motion to dismiss, these claims for implied contract, open account, quantum meruit and unjust enrichment are in direct conflict with

8

the federal filed tariff doctrine inherent in the Federal Communications Act and are therefore precluded, regardless of whether they arise under state law or federal common law. *See AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 532 (3d Cir. 2006) ("The classic example of the preemptive power of the doctrine occurs when a customer makes a claim for a rate that was not filed by the carrier—such claims are barred."); *MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.*, 204 Fed. Appx. 271, 272 n.2 (4th Cir. 2006) ("Under the filed rate doctrine, a carrier is expressly prohibited from collecting charges for services that are not described in its tariff.").

To the extent these claims survive the motion to dismiss, Plaintiffs rely on *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651 (3d Cir. 2003), and *MCI Telecomms. Corp v. Graphnet, Inc.*, 881 F. Supp. 126 (D. N.J. 1995), for the proposition that these claims, which are not based on contract or any right set forth in the Communications Act, nevertheless arise under federal law. Ans. Brf., p. 13-14. However, neither case specifically addressed whether the non-contract claims at issue here arise under federal law. Moreover, even if federal common law applies, the Court may look to state law. *E.g., Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104, 108 (3d Cir. 1994) ("Giving content to…federal [common] law, however, can be accomplished in two different ways: courts can look to state law and incorporate it into the federal law, or they can fashion federal common law"); *S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 762 (10th Cir. 2005) ("The real question, we think, is not whether state law applies or federal law applies, but whether federal law looks to state law to flesh out details of interpretation"). Indeed, the FCC has concluded that claims outside of a tariff should be decided with reference to state law. In its 2002 Order, the Federal Communications Commission confirmed that it is state law that governs claims for charges for originating calls outside of a

tariffed environment. *In re Sprint PCS & AT&T Corp.*, 17 FCC Rcd. 13192, ¶ 13 (July 3, 2002), *pet. for review dismissed*, *AT&T Corp. v. F.C.C.*, 349 F.3d 692 (D.C. Cir. 2003) ("[T]he existence of a contract [for access charges for wireless calls] is a matter to be decided under state law").

Thus, regardless of whether the rule of decision is provided by federal common law or state common law, the claims fit squarely within the realm of state court expertise. *See Great W. Sugar Co. v. N. Natural Gas Co.*, 661 P.2d 684, 690 (Colo. Ct. App. 1982) (holding "state courts are competent to interpret [interstate] tariffs"). Further, because Plaintiffs concede their claims for monetary recovery are properly before the state court and because Plaintiffs first chose to assert their claims in the Colorado proceeding, the significance of the source of law in resolving Qwest's motion to stay is substantially diminished. *See Moses H. Cone*, 460 U.S. at 25 (explaining source-of-law factor has less significance where federal jurisdiction is concurrent with that of the state courts); *Tyrer*, 456 F.3d at 757 (stating the fact that plaintiff chose to bring federal claims first in a state forum limits the significance of the presence of a federal question in determining whether a federal court should abstain). In combination with the other factors discussed in this brief, the presence of state law issues weighs in favor of a stay.

**E.    The Delaware District Court Is an Inconvenient Forum.**

In the context of this case and in light of the advanced stage of the Colorado proceeding, it would be extremely inconvenient for the parties to suddenly shift significant portions of their claims across the country to this Court. As discussed above, this case has been ongoing in Colorado for approximately twenty months and all parties have been proceeding as if the claims of all parties would be resolved in Colorado. Accordingly, most of the documents and records that will be at issue in the litigation and which were identified as exhibits in the Colorado proceeding are already located in Colorado. Reply Brief In Support Of Defendant's Motion To

Transfer ("Mot. to Transfer" at 8).    In addition, many witnesses are located in Colorado, including two former employees of Qwest who would need to be subpoenaed to appear in this federal action, if they would not appear voluntarily. *Id.* On the other hand, neither party has any connection with Delaware other than as their state of incorporation. *Cf. Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 199 (D. Del. 1998) (noting, in the context of a motion to transfer, that "the weaker the connection between the forum and either the plaintiff or the lawsuit, the greater the ability of a defendant to show sufficient inconvenience").

Aside from reciting general principles regarding the effect of technological advances and the expectation that a party may be called into court in its state of incorporation, Plaintiffs offer no justification for rejecting the common sense conclusion that it would be inconvenient to simultaneously litigate nearly identical actions in two separate forums that are approximately 1500 miles apart.    Indeed, the cases relied on by Plaintiffs arise in the context of a motion to transfer and do not address the effect of concurrent proceedings on the inconvenience of a distant forum.    In other words, while the litigation of Plaintiffs' claims in Delaware may not have been sufficiently inconvenient in a vacuum, such litigation is surely inconvenient where the same claims have long been proceeding in Colorado.    These unique circumstances give rise to a "unique and unexpected burden" associated with litigating this action in the Delaware forum.    *Cf. Affymetrix*, 28 F.Supp. 2d at 202 (requiring defendant to show a "unique or unexpected burden" of the Delaware forum *in the context of a motion to transfer*).

## F.    Plaintiffs' Complaint Filed Before This Court Is Reactive.

As justification for their decision to file this federal action in the late stages of the parallel Colorado proceeding, Plaintiffs state only that the filing of this federal action was necessary to prevent portions of their claims from being time barred.    However, in offering this justification, Plaintiffs give no explanation for their decision to delay the filing of this federal action until the

11

Colorado proceeding was on the verge of trial, rather than filing it when Plaintiffs first asserted their claims for interstate access charges. Nor do Plaintiffs explain their decision not to simply remove the entire case to federal court in August 2007 when Qwest's addition of claims under the Federal Communications Act would have indisputably permitted Plaintiffs to do so.

When viewed in light of all the circumstances, it appears that Plaintiffs chose to proceed in state court first and preserve the opportunity for a second bite at the apple in federal court. Then, as the Colorado proceeding neared completion and Plaintiffs' expert testified he could not support Plaintiffs' position with respect to the interstate access charges,[2] Plaintiffs chose to take advantage of their second chance. Thus, Plaintiffs' delay in initiating the federal action and last-minute filing of their complaint supports the conclusion that this federal action is no more than a tactical effort to influence the litigation in the Colorado proceeding. Such conduct is, at best, "reactive," and therefore weighs in favor of a stay. *See Moses H. Cone*, 460 U.S. at 17 n.20 ("[T]he vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation.").

---

[2] *See* Opening Brf., p. 6.

## CONCLUSION

For the reasons set forth in this reply brief and in Qwest's Opening Brief, Qwest respectfully requests that this Court stay this litigation pending resolution of the parallel claims in the Colorado proceeding.

OF COUNSEL:

Timothy R. Beyer
Amy L. Benson
Lauren E. Schmidt
Brownstein Hyatt Farber Schreck, P.C.
410 Seventeenth Street, 22nd Floor
Denver, CO  80202-4437
303-223-1100

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
*Attorneys for Defendant*
*Qwest Communications Corporation*

Dated:  March 6, 2008

13

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 6, 2008, I electronically filed the foregoing with the

Clerk of Court using CM/ECF and caused the same to be served on the defendant at the

addresses and in the manner indicated below:

## BY HAND DELIVERY

Richard L. Horwitz
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE   19899-0951

_____
Jeffrey L. Moyer (#3309)

# EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | |
| QWEST COMMUNICATIONS CORPORATION,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>HYPERCUBE, LLC,<br><br>Defendant,<br><br>and KMC DATA, LLC,<br><br>Defendant and Counterclaim-Plaintiff. | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff Qwest Communications Corporation:<br><br>Timothy R. Beyer, #12168<br>Amy L. Benson, #15894<br>Lauren E. Schmidt, #37002<br>BROWNSTEIN HYATT FARBER SCHRECK, LLP<br>410 Seventeenth Street, Suite 2200<br>Denver, Colorado 80202-4437<br>Phone Number: (303) 223-1100<br>FAX Number: (303) 223-1111<br>E-mail:tbeyer@bhfs.com<br>     abenson@bhfs.com<br>     lschmidt@bhfs.com | Case Number: 06CV6404<br><br>Div:<br>Ctrm.: 19 |
| **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS AND AFFIRMATIVE DEFENSES PURSUANT TO C.R.C.P. 12(b)(1) AND C.R.C.P. 12(b)(5), AND TO CONDITIONALLY DISMISS KMC DATA'S INTERSTATE COUNTERCLAIMS PURSUANT TO C.R.C.P. 41(a)(2)** | |

Plaintiff Qwest Communications Corporation ("Qwest"), through its counsel, Brownstein

Hyatt Farber Schreck, LLP, submits the following response to Defendants' Motion to Dismiss

Certain Claims and Affirmative Defenses Pursuant to C.R.C.P. 12(b)(1) and C.R.C.P. 12(b)(5),

and to Conditionally Dismiss KMC Data's Interstate Counterclaims Pursuant to C.R.C.P.

41(a)(2).

## INTRODUCTION

This case arises from the improper access charges billed by HyperCube and KMC Data

(collectively, "Defendants") in connection with wireless toll-free calls made to Qwest customers.

As alleged in Qwest's Second Amended Complaint, the central issue in this litigation is whether

Defendants are improperly billing Qwest for access charges in violation of various provisions of

their state and federal tariffs. Based on Defendants' unlawful and fraudulent billing practices,

Qwest filed this lawsuit, asserting both federal and state law claims involving Defendants' tariffs.

Although Defendants could have removed the case to federal court based on Qwest's claim under

the Federal Communications Act (the "Communications Act" or the "Act"), Defendants failed to

do so. In fact, Defendants asserted counterclaims in state court which, like Qwest's claims,

involved the interpretation and enforcement of Defendants' federal tariffs.

Despite asserting counterclaims which are nearly identical to Qwest's claims and

conceding that this Court has jurisdiction over those counterclaims, Defendants now move to

dismiss certain of Qwest's claims and affirmative defenses for lack of subject matter jurisdiction

and for failure to state a claim. As detailed below, this motion should be denied because this

Court has jurisdiction over Qwest's claims pursuant to its presumptive concurrent jurisdiction

over questions of federal law. Although Defendants could have removed the case as presenting a

federal question, the availability of federal removal jurisdiction does not deprive this Court of

jurisdiction where the case is not so removed. This Court should also deny Defendants' motion

to dismiss Qwest's affirmative defenses. Not only is Defendants' motion to dismiss Qwest's affirmative defenses untimely, but there is no basis for granting the relief requested. For the reasons set forth below, Qwest requests that Defendants' motion be denied.

## BACKGROUND

As set forth in Qwest's Second Amended Complaint, Qwest is an interexchange carrier ("IXC"), or long distance carrier, that transmits telephone calls originated by other carriers to a point where the call can be transferred to the called party's local phone company. KMC Data is a competitive local exchange carrier ("CLEC") that transmits toll-free calls originated by wireless carriers to Qwest and other interexchange carriers for the purpose of generating access charges from IXCs that would not otherwise be owed. HyperCube is KMC's parent corporation and provides billing and collection services to KMC Data. As relevant to this litigation, Defendants bill Qwest for certain access charges in connection with their transmission of wireless originated toll-free calls.

Defendants claim that their charges to Qwest are properly billed pursuant to KMC Data's federal and state tariffs. These tariffs, filed with the Federal Communications Commission ("FCC") or state regulatory body, contain the rates, terms and conditions under which service is provided and payment, if any, is owed. Charges for interstate calls are defined by Defendants' interstate tariff, while charges for intrastate calls are defined by the state tariffs. Absent a specific agreement between carriers, a carrier is permitted to charge only for those services defined in its tariff. *E.g., MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc*, No. Civ.A.04-1479, 2005 WL 2145499, at *4 (E.D. Va. Aug. 31, 2005), *aff'd* 204 Fed. Appx. 271 (4th Cir. 2006) (holding that an IXC has no duty to pay a CLEC access charges for wireless

originated toll-free calls where the services provided were not within the scope of the CLEC's state or federal tariffs). Because Qwest has no separate agreement with Defendants, these tariffs constitute the sole source of any obligation to pay for the services at issue. *Id.*

In November 2005, Defendants began billing Qwest access charges for wireless originated toll-free calls that were outside the scope of Defendants' filed state and federal tariffs. As alleged in the Second Amended Complaint, where Defendants had state tariffs, those tariffs did not cover the wireless originated 8XX calls at issue. In some states, Defendants simply have no state tariffs. In addition, Defendants billed Qwest for services not provided under their interstate tariff and billed Qwest for intrastate calls in states where they had no state tariffs by falsely labeling those calls as interstate. In short, Defendants have improperly billed Qwest for amounts that Qwest does not owe pursuant to Defendants' tariffs. When Qwest questioned Defendants regarding these charges, Defendants misrepresented the nature of the charges billed, and concealed their billing manipulations.

Based on these improper charges and Defendants' misrepresentations and fraudulent concealment of the nature of the charges, Qwest filed its Second Amended Complaint on April 16, 2007, asserting eight claims under both state and federal law. In response to Qwest's Second Amended Complaint, Defendants asserted six counterclaims which essentially mirrored the claims asserted by Qwest and sought damages for Qwest's alleged failure to pay for Defendants' services under its tariffs. Like Qwest's claims, Defendants' counterclaims focused, in part, on the terms of Defendants' federal interstate tariff. At no time did Defendants seek to remove the action to federal court, despite the existence of Qwest's federal claim which would have permitted them to do so.

Although Qwest's Second Amended Complaint was filed eight months ago, Defendants now, just forty-five days before trial, seek to shift to federal court in Delaware, via a motion to dismiss in this Court and a newly filed complaint in Delaware court, various claims that are highly interrelated with the state claims which Defendants concede are properly lodged in this Court. Defendants assert that this Court lacks subject matter jurisdiction over the claims, contending that federal courts and the FCC have exclusive jurisdiction over claims brought pursuant to the Communications Act, and that this exclusive jurisdiction encompasses each of Qwest's state law claims to the extent they assert violations of Defendants' interstate tariffs.[1] Defendants similarly seek to dismiss Qwest's Affirmative Defenses VII and VIII on the ground that exclusive jurisdiction over claims of rate discrimination rests with the state public utility commissions, and on the ground that these defenses "fail to state a claim upon which relief can be granted." Defendants, however, concede that this Court retains jurisdiction over the interstate portions of Defendants' counterclaims. Defendants therefore seek to voluntarily dismiss their own claims if this Court grants their Motion to Dismiss Qwest's interstate claims.

For the reasons discussed more fully below, this Court should deny Defendants' Motion to Dismiss. Because Congress did not affirmatively divest state courts of the jurisdiction to adjudicate disputes arising under the Communications Act, jurisdiction over such claims is not

---

[1] Defendants seek to dismiss:(1) those portions of Qwest's claims in Counts I (declaratory judgment), II (unjust enrichment), III (money had and received), IV (breach of contract/tariff), and VI (fraud) that relate to interstate charges; and (2) Qwest's claims in Count V for violation of §§ 201 and 203 of the Communications Act under § 207 of the Act (47 U.S.C. § 207). In addition, Defendants' seek to dismiss two affirmative defenses (VII and VIII) pleaded in response to Defendants' Second Amended Counterclaims. These affirmative defenses allege rate discrimination in violation of state regulatory law. See Ans. to Second Am. Countercl., VII (KMC Data has improperly discriminated against QCC in its originating access charges in violation of state public utilities statutes) and VIII (KMC Data claims are barred in whole or in part by the doctrine of unclean hands, having, among other acts, improperly discriminated against QCC in its originating access charges in violation of state public utilities statutes and in falsely and fraudulently billing charges).

exclusively lodged in federal courts, and this Court retains jurisdiction over all of Qwest's

claims. Similarly, because claims of rate discrimination under many state statutes may be

brought in any court of competent jurisdiction and because such claims are raised as affirmative

defenses in this case, this Court retains jurisdiction over Qwest's Affirmative Defenses VII and

VIII as well. Finally, Defendants' Motion to Dismiss Qwest's Affirmative Defenses VII and

VIII pursuant to C.R.C.P. 12(b)(5) should be denied not only because a Rule 12(b)(5) motion is

an improper vehicle to dismiss an affirmative defense, but also because these defenses have been

properly pleaded.

## DISCUSSION

A.    **Congress Did Not Vest Federal Courts and the FCC With Exclusive Jurisdiction Over Claims Brought Pursuant to § 207 of the Communications Act**

It is axiomatic that under the federal system of the United States, states possess a

sovereignty equal to and concurrent with that of the federal government, subject only to the

limitations of the Supremacy Clause. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). Under this

system of dual sovereignty, the Supreme Court has repeatedly explained that "state courts have

inherent authority, and are thus presumptively competent, to adjudicate claims arising under the

laws of the United States." *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 822 (1990);

*Tafflin*, 493 U.S. at 458. Indeed, while this principle has long lain at the heart of the federal

judicial system, the Supreme Court has reaffirmed and emphasized the vigor of the principle in

recent decisions. *See Yellow Freight*, 494 U.S. at 826 ("[T]he presumption of concurrent

jurisdiction . . . lies at the core of our federal system."); *Tafflin*, 493 U.S. at 459 (describing the

presumption in favor of concurrent state court jurisdiction as "deeply rooted"). Thus, there is a

strong presumption in favor of concurrent state court jurisdiction, and exclusive federal

jurisdiction has long been the exception rather than the rule. *See Charles Dowd Box Co. v.*
*Courtney*, 368 U.S. 502, 523 (1962).

Federal courts have exclusive jurisdiction over a particular federal cause of action only if
Congress, "in an exercise of its powers under the Supremacy Clause, affirmatively divest[s] state
courts of their presumptively concurrent jurisdiction." *Yellow Freight*, 494 U.S. at 823; *see also*
*Telluride Co. v. Varley*, 934 P.2d 888, 890 (Colo. App. 1997) ("When a federal question is
presented, state and federal courts have concurrent jurisdiction unless Congress has affirmatively
given exclusive jurisdiction to the federal courts."). Such a divestment of state court jurisdiction
can be demonstrated only in one of three ways: (1) an explicit statutory directive; (2) an
unmistakable implication from legislative history; or (3) a clear incompatibility between state
court jurisdiction and federal interests. *Tafflin*, 493 U.S. at 459-60 (quoting *Gulf Offshore Co. v.*
*Mobil Oil Corp.*, 453 U.S. 473, 478 (1981). It is not sufficient that those involved in enacting,
enforcing, and interpreting the particular law at issue may have anticipated that litigation would
occur solely in the federal courts. *See Yellow Freight*, 494 U.S. at 826. Rather, Congress must
have unambiguously determined that state courts should not be permitted to exercise their
concurrent jurisdiction over the claims. *See id.* at 825-26 (requiring a "legislative decision," as
opposed to a "universally shared" expectation, to overcome the presumption of concurrent state
court jurisdiction). Because none of the three factors necessary for exclusive federal jurisdiction
is present with respect to 47 U.S.C. § 207, this Court has jurisdiction pursuant to its presumptive
concurrent jurisdiction.

**1.    47 U.S.C. § 207 Contains No Explicit Statutory Directive of Exclusive Federal**
      **Jurisdiction**

Section 207 of the Communications Act states as follows:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207. Contrary to Defendants' assertions, it is clear that this statutory provision does not contain an "explicit statutory directive" sufficient to divest state courts of their presumptive jurisdiction to hear claims brought under this section. *See Tafflin*, 493 U.S. at 460.

Despite Defendants' attempts to water down the "explicit statutory directive" requirement by dissecting the language of 47 U.S.C. § 207, this requirement is exactly what it says it is. For a statute to divest the presumptive jurisdiction of a state court through an explicit statutory directive, there must be "language that *expressly* confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction." *Yellow Freight*, 494 U.S. at 823. In another provision of the Communications Act, Congress unequivocally provided such a statement. *See* 47 U.S.C. § 227(f)(2) (providing that "[t]he district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under [47 U.S.C. § 227(f)]"). In fact, there are numerous examples of statutes in which Congress expressly confined jurisdiction to federal courts. *See, e g*, 29 U.S.C. § 1132(e)(1) ("Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter . . . ."); 15 U.S.C. § 80a-35(b)(5) ("Any action pursuant to this subsection may be brought only in an appropriate district court of the United States."); 15 U.S.C. § 78aa ("The district courts of the United States . . . shall have exclusive jurisdiction of

violations of this chapter or the rules and regulations thereunder . . . ."); 18 U.S.C. § 3231 ("The

district courts of the United States shall have original jurisdiction, exclusive of the courts of the

States, of all offenses against the laws of the United States."). Unlike these other statutes, the

language of 47 U.S.C. § 207 contains no such explicit statutory directive. As the United States

Supreme Court held in *Yellow Freight,* the omission of such language is "strong, and arguably

sufficient, evidence" that Congress did not have the requisite intent to divest state courts of their

presumptive jurisdiction. *Yellow Freight*, 494 U.S. at 823.

     In *Yellow Freight*, the statute at issue provided that United States courts "*shall* have

jurisdiction of actions brought under this subchapter." 494 U.S. at 823 (citing 42 U.S.C. §

2000e-5(f)(3)). Despite the apparently mandatory nature of this language, the Court held that the

text of the statute failed to "unequivocally state that the jurisdiction of the federal courts is

exclusive." *Id.* Similarly, in *Tafflin*, the Supreme Court found that a statute providing that suit

*may* be brought in any United States district court was "plainly permissive" and did not oust state

courts of their concurrent jurisdiction. 493 U.S. at 460-61; *see also Larry H. Miller Corp.-

Denver v. Urban Drainage and Flood Control Dist.*, 64 P.3d 941, 946 (Colo. App. 2003)

(explaining that the term "may" is "generally deemed to be permissive absent evidence of

legislative intent to the contrary"). If the *Yellow Freight* language is insufficient to divest state

courts of their presumptive jurisdiction, then certainly the permissive wording of 47 U.S.C. § 207

is insufficient as well. Indeed, at least one court has held that the Supreme Court decisions in

*Tafflin* and *Yellow Freight* compel the conclusion that 47 U.S.C. § 207 does not vest exclusive

jurisdiction in the federal courts and the FCC. *See US Sprint Commc'ns Co. v. Computer

Generation, Inc.*, 401 S.E.2d 573, 575 (Ga. Ct. App. 1991). Significantly, this is the *only* case

concerning jurisdiction under 47 U.S.C. § 207 where the court has undertaken the analysis required by the Supreme Court in *Tafflin* and *Yellow Freight*.

Defendants' argument with respect to the language of the statute underscores the absence of any explicit statutory directive. Unable to point to any express provision which provides for exclusive federal jurisdiction, Defendants instead assert that a statute providing that a claim may be brought in either federal court or before the FCC unambiguously precludes jurisdiction in state courts. However, "it is black letter law that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." *Tafflin*, 493 U.S. at 461; *see also Yellow Freight*, 494 U.S. at 825 (holding that affirmative description of jurisdiction of federal court and complete silence on role of state courts is insufficient to give rise to exclusive federal jurisdiction). Thus, simply because Congress provided that a claim may be brought in federal court or before the FCC does not support the converse proposition that a claim may *not* be brought in state court. *See Tafflin*, 493 U.S. at 460-61 (statutory provision that a person "may sue . . . in any appropriate United States district court" was "plainly permissive" and did not divest state courts of jurisdiction over such claims).

Nor is the case law relied on by Defendants authoritative in this case. First, Defendants entirely ignore the Supreme Court's decisions in *Tafflin* and *Yellow Freight*. Defendants instead rely heavily on a statement of dicta in *AT&T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899, 905 (9th Cir. 2002). In *Coeur d'Alene Tribe*, the issue was not whether a state court had jurisdiction over a claim brought pursuant to 47 U.S.C. § 207, but whether jurisdiction was proper over such claims in the tribal courts. *Id.* at 903-05; *see also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 727 (9th Cir. 2007) (characterizing the issue in *Coeur d'Alene Tribe* as "whether *tribal*

*courts* had jurisdiction to adjudicate claims brought pursuant to the FCA" (emphasis added)). However, the "historical and constitutional assumption of concurrent state-court jurisdiction over federal-law cases is completely missing with respect to tribal courts." *Nevada v. Hicks*, 533 U.S. 353, 367 (2001). Because the presumption of concurrent jurisdiction shapes the analysis of whether *state courts* have been divested of jurisdiction over federal claims, the holding that *tribal courts* do not have such jurisdiction is wholly irrelevant. To the extent the Ninth Circuit extended its holding beyond the question of jurisdiction in tribal courts, this language has been rejected as dicta by the Ninth Circuit itself. *See Lozano*, 504 F.3d at 726 (agreeing with the district court that the holding in *Coeur d'Alene Tribe* is "confined to the adjudication of claims in the tribal forum"). Significantly, the court in *Coeur d'Alene Tribe* did not even mention the Supreme Court's decisions in *Tafflin* or *Yellow Freight* or the test set forth therein.

Each of the other cases cited by Defendants for the proposition that federal courts have exclusive jurisdiction over Communications Act claims was decided prior to the Supreme Court's decisions in *Tafflin* and *Yellow Freight*, which, as noted above, clarified and strengthened the presumption of state court jurisdiction. While Defendants cite language from these cases to suggest that the express language of 47 U.S.C. § 207 precludes jurisdiction in state courts, the decision in *Yellow Freight* makes clear that the language in § 207 does not begin to rise to that required to confer exclusive jurisdiction.

### 2. 47 U.S.C. § 207 Contains No Legislative History Which Could Give Rise to Exclusive Federal Jurisdiction

Although a grant of exclusive federal jurisdiction may also arise from an "unmistakable implication from legislative history," *see Tafflin*, 493 U.S. at 459, Defendants concede that no such legislative history exists with regard to 47 U.S.C. § 207. Thus, like the statute at issue in

*Tafflin*, the legislative history of 47 U.S.C. § 207 "reveals no evidence that Congress even considered the question of concurrent state court jurisdiction." *Id.* at 461. The absence of any legislative history whatsoever should end the inquiry with respect to this factor. *Id.* at 463 ("Under *Gulf Offshore*, legislative silence counsels, if not compels, us to enforce the presumption of concurrent jurisdiction."); *see also US Sprint Commc'ns Co.*, 401 S.E.2d at 365 (holding that state courts have concurrent jurisdiction over claims under the Communications Act based in part on the "total lack of proof of any preemptive legislative understanding").

Nevertheless, Defendants apparently contend that the reference to "legislative history" in *Gulf Offshore Co.* and *Tafflin* permits the court to look not only to the legislative history of the statute, but in the absence of such legislative history, to the structure and context of the Communications Act as a whole. Defendants cite no authority to specifically support this proposition and, notably, the structure and context of a federal act is not included as one of the permissible methods to determine whether Congress intended to divest state courts of jurisdiction to hear federal claims. *See Tafflin*, 493 U.S. at 459-60 (listing only explicit language of statute, legislative history, and clear incompatibility as relevant factors). While it is true, as Defendants argue, that the context of a statute may generally be relevant to the question of congressional intent, "the question [of exclusive jurisdiction] is not whether any intent at all may be divined from legislative silence on the issue, but whether Congress in its deliberations may be said to have affirmatively or unmistakably intended jurisdiction to be exclusively federal." *Id.* at 462.

Further, even assuming the structure and context of the Communications Act may be considered as part of the legislative history of 47 U.S.C. § 207, Defendants' argument is without merit. As noted above, Congress expressly provided for exclusive federal jurisdiction over

claims brought pursuant to Section 227(f) of the Communications Act. 47 U.S.C. § 227(f)(2). To the extent other provisions of the Act are relevant, Congress' failure to include similar language in 47 U.S.C. § 207 lends additional support to the conclusion that it did not intend federal jurisdiction to be exclusive for claims brought under that statutory provision. In addition, because state courts are always presumed to have jurisdiction over federal claims, it is unnecessary for Congress to provide explicitly for concurrent state court jurisdiction. The fact that Congress chose to do so in certain provisions of the Communications Act does not support the conclusion that its failure to do so with respect to 47 U.S.C. § 207 was an intentional effort to oust state courts of their presumptive jurisdiction. At most, the superfluous authorization of concurrent jurisdiction in other provisions of the Communications Act is ambiguous. It certainly does not suggest an "unmistakable implication" of congressional intent.[2] *See id.* at 462 (explaining that a court may not speculate as to what Congress' intent might have been).

### 3.    State Court Jurisdiction Over Claims Brought Pursuant to 47 U.S.C § 207 Is Not Clearly Incompatible With Federal Interests

Where, as here, the statutory language and legislative history are insufficient to overcome the strong presumption of concurrent state court jurisdiction, the court may consider whether there is clear incompatibility between state court jurisdiction and the federal interests underlying the statute to determine whether exclusive federal jurisdiction is appropriate. Specifically, the

---

[2] Defendants' reliance on *Int'l Sci & Tech Inst, Inc v Inacom Commc'ns, Inc*, 106 F.3d 1146, 1152 (4th Cir. 1997), is misplaced. In *International Science*, the issue was not whether *federal* courts had exclusive jurisdiction but whether *state* courts had exclusive jurisdiction. *Id* at 1151-52. In concluding state courts did have exclusive jurisdiction over the particular claim at issue, the court expressly based its conclusion on the distinction between state courts, which are courts of general jurisdiction and are presumed competent, and federal courts, which are courts of limited jurisdiction and require a specific jurisdictional grant. *Id* Because there is no presumption of federal jurisdiction, the rule set forth in *Tafflin*, which controls this case, was inapplicable *id* at 1152; *see also Foxhall Realty Law Offices*, 156 F.3d 432, 435 (2d Cir 1998) ("[A]lthough the use of the word 'may' in federal statutes conferring jurisdiction on federal courts has not been held to confer exclusive jurisdiction on those courts . . use of the word "may" to confer jurisdiction on state courts has a different effect ").

court may consider (1) the desirability of uniform interpretation; (2) the expertise of federal judges in federal law; and (3) the assumed greater hospitality of federal courts to peculiarly federal claims. *See Tafflin*, 493 U.S. at 464; *Gulf Shore*, 453 U.S. at 483-84. These factors, however, must be analyzed in light of the broad, overarching presumption of concurrent state court jurisdiction. Nothing in the underlying policies of the Communications Act suggests that the exercise of state court jurisdiction in this case would be clearly incompatible with these or any other federal interests.

First, state court jurisdiction over claims brought pursuant to 47 U.S.C. § 207 would not undermine the uniformity of the federal law. Contrary to Defendants' exaggerated assertions, the exercise of state court jurisdiction would not permit state courts to create a "second body of law" interpreting the Communications Act and federal tariffs. Rather, as with any federal question over which state courts have concurrent jurisdiction, federal courts would retain primary authority for the interpretation of the federal law and state courts would "be guided by federal court interpretations of the [Communications Act], just as federal courts sitting in diversity are guided by state court interpretations of state law." *Tafflin*, 493 U.S. at 465. Thus, lawsuits brought in state court pursuant to 47 U.S.C. § 207 would not be "state law challenges" to carriers' service agreements, as Defendants incorrectly assert, but federal law challenges which happen to be brought in state courts. Further, where erroneous state court interpretations of federal law threaten to undermine this national uniformity, Supreme Court review remains available to restore it, just as it remains available for erroneous interpretations of federal law by federal courts. *See id.*; *Pan Am Petro Corp. v. Superior Court*, 366 U.S. 656, 665 (1961). While the simultaneous interpretation of a single federal law in multiple jurisdictions always creates a risk

of jurisdictional variations, such inconsistency is a function of the American judicial system and is made no more likely by the exercise of state court jurisdiction.[3] *Tafflin*, 493 U.S. at 465; *Dowd Box Co.*, 368 U.S. at 514 (noting "diversities and conflicts may occur, no less among the courts of the eleven federal circuits, than among the courts of the several States").

Second, the mere fact that claims pursuant to 47 U.S.C. § 207 arise under federal law and are governed by federal law is not sufficient to divest state courts of their presumptive concurrent jurisdiction. *See Yellow Freight*, 494 U.S. at 826 (holding state courts have concurrent jurisdiction over claims arising under Title VII). While federal courts may have greater experience in applying federal law, this greater experience is not alone sufficient to preclude the exercise of state court jurisdiction. *Id.* Indeed, to hold otherwise would be to ignore the fundamental principle that the existence of a federal question does not create exclusive federal jurisdiction. *See id* ; *Gulf Offshore Co.*, 453 U.S. at 478 n.4 ("Permitting state courts to entertain federal causes of action facilitates the enforcement of federal rights."); *Dowd Box Co.*, 368 U.S. at 507 ("[N]othing in the concept of our federal system prevents state courts from enforcing rights created by federal law."). Although the presence of the federal question, and the corresponding experience of federal judges in addressing such claims, would have permitted Defendants to remove the case to federal court, *see Yellow Freight*, 494 U.S. at 826, they did not do so. Having failed to take advantage of this avenue which was indisputably available, Defendants cannot now argue that Qwest's federal claims are beyond the realm of state court

---

[3] In addition, where a particular issue or claim requires a greater degree of uniformity or specialized expertise, a primary jurisdiction referral to the FCC remains an available option in state court, just as it would in federal court. *See TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238-39 (10th Cir. 2007); *Public Serv. Co of Colo. v. Mile Hi Cable Partners*, 995 P.2d 310, 312 (Colo. App. 1999); *see also Jenkins v. Entergy Corp.*, 197 S.W.3d 785, 800 (Tex. App. 2006) (distinguishing the primary jurisdiction doctrine from the exclusive jurisdiction doctrine).

expertise. *See id.* (noting "state courts are just as able as federal courts to adjudicate Title VII claims"); *Tafflin*, 493 U.S. at 465 (explaining Court had "full faith in the ability of state courts to handle the complexities of civil RICO actions"); *Great W. Sugar Co. v. N. Natural Gas Co.*, 661 P.2d 684, 690 (Colo. App. 1982) (holding "state courts are competent to interpret [interstate] tariffs as a question of law."); *US Sprint Commc'ns Co.*, 401 S.E.2d at 575 (holding state courts have jurisdiction to decide claims arising under Section 207 of the Communications Act).

Finally, claims brought pursuant to 47 U.S.C. § 207 are not so "peculiarly federal" as to oust state courts of their concurrent jurisdiction. In arguing for exclusive federal court jurisdiction, Defendants contend that in passing the Communications Act, Congress intended to subject interstate communication rates, services, and practices exclusively to federal regulation. This assumption is clearly incorrect, as evidenced by Congress' inclusion of a savings clause in its enactment of the Communications Act. 47 U.S.C. § 414 ("Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."). As discussed more fully below, a majority of courts hold that state courts retain jurisdiction to decide state law claims which relate directly or indirectly to the field of interstate telecommunications. *See, e.g., Fax Telecommunicaciones Inc. v. AT&T*, 138 F.3d 479, 486 (2d Cir. 1998). Even if Defendants' assumption is true, however, Congress' intent to subject the area of interstate telecommunications to federal control would not be incompatible with the exercise of state court jurisdiction over federal law claims arising in this area. *Cf. Gulf Offshore Co.*, 453 U.S. at 479-80 (rejecting the argument that exclusive federal authority over a particular area is incompatible with state court jurisdiction over related controversies). Accordingly, claims brought pursuant to 47 U.S.C. §

207 are not so "peculiarly federal" as to invoke the assumption that such claims would be met with greater hospitality in federal courts.

In this action, Qwest does not seek to challenge or modify the terms of Defendants' tariffs, but rather to enforce the terms of the tariffs and, correspondingly, to enforce the federal law. Thus, this Court's exercise of jurisdiction over Qwest's federal claims would serve to further, not undermine, the federal interests underlying the Communications Act. Because courts have consistently held claims for violations of the Communication Act may be subject to arbitration, *e.g.*, *Lozano*, 504 F.3d at 725-27, "it would be anomalous to rule that state courts are incompetent to adjudicate" the same claims. *Tafflin*, 493 U.S. at 466. Moreover, Defendants acknowledge that this Court has the authority to interpret the provisions of their interstate tariffs for purposes of resolving their counterclaims. It would be equally inconsistent to hold that this Court may interpret and apply Defendants' interstate tariffs in the context of Defendants' claims, but is precluded from interpreting and applying these same provisions for purposes of Qwest's claims raised in its defense. Indeed, such a holding would be contrary to established law. *Cf. Pan Am. Petroleum Corp.*, 366 U.S. at 664-65 (holding that exclusive jurisdiction under a federal statute does not preclude state court jurisdiction of defenses based thereon). Therefore, this Court's exercise of jurisdiction over Qwest's federal claims is not incompatible with the federal interests underlying the Act.

**B.    This Court Has Jurisdiction Over Qwest's State Law Claims**

Even assuming this Court did not have jurisdiction over claims brought pursuant to 47 U.S.C. § 207, it would still retain jurisdiction over Counts I, II, III, IV, and VI of Qwest's Second

Amended Complaint, all of which are causes of action arising under state law.[4]  The mere fact

that these claims are similar to claims that could also be brought under the Communications Act

is not sufficient to deprive this Court of jurisdiction to decide state claims.  In a similar context,

the Supreme Court has explained that "questions of exclusive federal jurisdiction and ouster of

jurisdiction of state courts are . . . not determined by ultimate substantive issues of federal law.

The answers depend on the particular claims a suitor makes in the state court – on how he casts

his action." *Pan Am. Petroleum Corp*, 366 U.S. at 662.  In other words, traditional common law

claims do not lose their character as state law claims simply because they relate to a scheme of

federal regulation. *Id* at 663; *see also Great W. Sugar Co*, 661 P.2d at 690 ("The fact that the

Natural Gas Act and applicable tariffs affect some of the dealings between the parties does not

oust state courts of jurisdiction over these common law [contract] claims.").

     In this case, each of the claims Defendants seek to dismiss, except for Count V, are

traditional state law claims sounding in contract, quasicontract, or fraud.  Specifically, Counts II,

III, and IV of Qwest's Second Amended Complaint are simply common law contract (or

quasicontract) claims which remain subject to the jurisdiction of this Court, even if the federal

nature of the tariffs may have also provided grounds for removal. *See Pan Am. Petroleum Corp*,

366 U.S. at 664 ("The fact that [Plaintiff] sues in contract or quasicontract . . . is decisive [on the

issue of exclusive federal jurisdiction]."); *Great W. Sugar Co.*, 661 P.2d at 690 (noting, in the

context of a common law contract claim, that "[s]tate courts are competent to interpret tariffs as a

question of law").  These claims, as well as Count I, also seek recovery of charges billed by

---

[4] If this Court concludes it has jurisdiction over Qwest's federal claims, then it would have jurisdiction over each of the remaining claims as well, regardless of whether they are characterized as state law claims or claims arising under the Communications Act.

Defendants in excess of their filed rates and, therefore, are properly raised in state court. *See Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 582 n.12 (explaining that state court is the proper forum for a breach of contract action to obtain a refund for charges in excess of the filed rate); *Pan Am. Petroleum Corp.*, 366 U.S. at 662-63 (holding contract and unjust enrichment claims seeking recovery of overpayments were state law claims which did not assert rights under federal law). Similarly, Count VI of Qwest's Second Amended Complaint is a simple fraud claim arising under state law. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 247 F. Supp.2d 1215, 1226 (D. Kan. 2002) (holding claims for billing misrepresentations were state law claims independent of claims available under the Communications Act).

Defendants' attempt to characterize Qwest's state law claims as claims arising under 47 U.S.C. § 207 essentially boils down to the argument that federal law completely preempts state law causes of action in the context of interstate telecommunications regulation. In other words, Defendants effectively argue that although Qwest's claims are premised on state law, they nevertheless arise under the Communications Act and are subject to exclusive federal jurisdiction because federal law occupies the entire field of interstate telecommunications. However, a majority of courts addressing the issue of complete preemption in the context of the Communications Act have rejected this argument.[5] *See, e.g., In re NOS Commc'ns*, 495 F.3d

---

[5] Although a minority of cases have concluded the Communications Act completely preempts state law, *see Cahnmann v. Sprint Corp.*, 133 F.3d 484, 489 (7th Cir. 1998), this conclusion is unrelated to the question of whether there exists exclusive federal jurisdiction over the resulting federal claims. Even assuming all claims arise under federal law and would therefore be subject to federal removal jurisdiction, this says nothing about whether such claims are subject to *exclusive* federal jurisdiction where the defendant fails to remove them. *See Utah Div. of Consumer Prot. v. Flagship Capital*, 125 P.3d 894, 899 (Utah 2005) ("Generally, the presence of implied field preemption does not result in exclusive federal jurisdiction. Even if a federal statute preempts the state cause of action through field preemption, the case can be brought in state court."). Because state courts routinely construe federal law, Defendants' attempt to equate their interstate tariffs with federal regulations does not support their contention that this Court lacks jurisdiction over Qwest's claims to enforce those tariffs.

1052, 1057-59 (9th Cir. 2007); *Pinney v. Nokia, Inc.*, 402 F.3d 430, 449-51 (4th Cir.

2005); *Fax Telecommunicaciones Inc.*, 138 F.3d at 486; *In re Telecomm. Litig.*, 831 F.2d 627,

633 (6th Cir. 1987) (concluding state law claims for fraud and deceit were not preempted);

*Bauchelle v. AT&T Corp.*, 989 F.Supp. 636, 643-49 (D.N.J. 1997). Although the issue of

complete preemption typically arises in the context of removal jurisdiction and is not directly

applicable here, it nevertheless establishes that, despite Defendants' contentions otherwise, the

Communications Act preserves room for state law claims concerning the rates and billing

practices of a common carrier which are independent of any federal claim, particularly where, as

here, those claims seek to enforce the terms of a tariff. *See Fax Telecommunicaciones, Inc.*, 138

F.3d at 486.

Nor are Qwest's state law claims merely restyled federal claims, framed so as to avoid

exclusive federal court jurisdiction. Because Qwest has never believed its federal claims are

subject to exclusive federal court jurisdiction, as discussed more fully above, it would have been

wholly unnecessary for Qwest to intentionally frame its federal law claims in state law terms. To

the contrary, Qwest's state law claims rest on separate and independent state grounds for relief,

which are in addition to any federal remedy that may exist under the Communications Act. *See*

47 U.S.C. § 414; *Crump v. WorldCom, Inc.*, 128 F. Supp.2d 549, 558 (W.D. Tenn. 2001)

(holding that "federal law, and specifically 47 U.S.C. § 414, preserve a plaintiff's right to pursue

a state common law remedy based upon a communications defendant's misrepresentations").

While the resolution of these claims may require reference to and interpretation of

Defendants' federal tariffs, this does not make them federal claims. *See Gulf Offshore Co.*, 453

U.S. at 483 n.12 ("[E]xclusive federal jurisdiction will not prevent a state court from deciding a

federal question collaterally if it would not have subject-matter jurisdiction over a case raising

the question directly."); *Smith v. GTE Corp.*, 236 F.3d 1292, 1313 (11th Cir. 2001) (stating, in

the context of complete preemption and federal removal jurisdiction, that no provision in the

Communications Act "indicate[s] that Congress intended state law causes of action within the

scope of the Communications Act to be federalized" (quotation and alteration omitted)); *cf.*

*Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986) ("[T]he mere presence of a

federal issue in a state cause of action does not automatically confer federal-question

jurisdiction."). Because these claims arise under state law, they are not subject to exclusive

federal jurisdiction, even if exclusive jurisdiction exists over the federal claim. *Pan Am.*

*Petroleum Corp.*, 366 U.S. at 664 ("Exclusive jurisdiction . . . is exclusive only for suits that may

be brought in the federal courts. Exclusiveness is a consequence of having jurisdiction, not the

generator of jurisdiction because of which state courts are excluded.")

**C.    This Court Has Jurisdiction Over Qwest's Claims Against HyperCube**

    The provisions of the Communication Act which are at issue in this case apply only to

actions involving the conduct of a "common carrier." *See* 47 U.S.C. § 207 (providing for a

private cause of action for "[a]ny person claiming to be damaged by any common carrier"); 47

U.S.C. § 153(10) (defining the term "common carrier" as "any person engaged as a common

carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign

radio transmission of energy . . . ."); *see also Pinney*, 402 F.3d at 450 (noting that §§ 201 and

207 provide no federal cause of action against defendants that are not common carriers). In fact,

in arguing that this Court retains jurisdiction over their counterclaims, Defendants have

previously acknowledged that claims not premised on a common carrier's alleged violation of its

obligations under the Communications Act are not subject to exclusive federal jurisdiction. Resp. to Mot. to Extend Trial, p. 9 ("[T]his Court does have jurisdiction over KMC Data's claims that Qwest is liable to pay for KMC Data's *interstate* services.") (emphasis added).

Although KMC Data is indisputably a common carrier for purposes of the Communications Act, HyperCube is merely the parent corporation of KMC Data and does not itself provide any telecommunication services. *See* Exhibit 1 (In re Application of HyperCube, LLC and KMC Data, LLC to Complete a Transfer of Control of Authorized International and Domestic Interstate Carrier, at 16). It is therefore not a "common carrier" under the Act. *See* 47 U.S.C. § 153(44) ("The term 'telecommunications carrier' means any provider of telecommunications services . . . . A telecommunications carrier shall be treated as a common carrier . . . only to the extent that it is engaged in providing telecommunications services . . . ."). Thus, even assuming the Communications Act gives rise to exclusive federal jurisdiction, Qwest's state law claims against HyperCube do not arise under the Act and this Court may exercise jurisdiction over such claims. *See Pinney*, 402 F.3d at 450-51 (concluding state law claims against defendants that are not common carriers did not arise under the Communications Act and were therefore subject to state court jurisdiction); *cf. Citibank, N.A. v. Graphic Scanning Corp.*, 618 F.2d 222, 224-25 (2d Cir. 1980) (holding that state court had subject matter jurisdiction to adjudicate contract claim involving parent corporation of common carrier, which the state court concluded was not itself a common carrier).

**D.    This Court Has Jurisdiction Over Qwest's Affirmative Defenses VII and VIII**

Qwest readily acknowledges that statutes of certain states vest exclusive jurisdiction over claims of rate discrimination in state public utility commissions, but statutes of a number of

states do not do so. Specifically, both California and New York, two states which Defendants erroneously argue vest exclusive jurisdiction in public utility commissions, have statutes containing express civil liability provisions.[6] Cal. Pub. Util. Code, § 2106; N.Y. Public Service Law § 93. These provisions provide that "[a]n action to recover for such loss, damage, or injury [resulting from a public utility's or telephone corporation's violation of state law] may be brought in *any court of competent jurisdiction*." *Id.* Further, both California and New York have statutes which expressly prohibit rate discrimination under state law. Cal. Pub. Util. Code § 453; N.Y. Public Service Law § 91. Other states have a similar statutory structure. *See, e.g.*, C.R.S. § 40-7-102 (express civil liability provision); *id.* § 40-15-105 (nondiscrimination statute). When read together, these statutory provisions expressly authorize a judicial action in "any court of competent jurisdiction" for, among other violations, unlawful rate discrimination.

While Defendants attempt to characterize Qwest's affirmative defenses as challenges to the reasonableness of the rates charged, each of these defenses specifically alleges that KMC Data has acted "in violation of state public utilities statutes." Such an allegation is indisputably subject to the civil liability provision of these statutes and other similar state statutes. Thus,

---

[6] Cal Pub Util Code § 1759(a), the statute relied on by Defendants, is inapposite in this case because it precludes state court jurisdiction only over an action "to review, reverse, correct, or annul any order or decision of the commission   or to enjoin, restrain, or interfere with the commission in the performance of its official duties." *See also Dollar-A-Day Rent-A-Car Sys, Inc v Pac Tel & Tel Co*, 26 Cal. App. 3d 454, 457-61 (Cal. Ct. App. 1972) (prohibiting state court action when, in effect, constituted a challenge to the express decisions and regulations of the Public Utilities Commission) In this case, Qwest's claim does not seek to challenge an order or decision of the Public Utilities Commission, but rather to enforce the express provisions of California law and Defendants' tariffs Such an action would not hinder or interfere with any expressed policy of the Public Utilities Commission *See Cundiff v GTE Cal Inc*, 101 Cal. App. 4th 1395 (Cal. Ct. App. 2002) (explaining that while "[o]nly appellate courts can review decisions and orders of the commission and interfere with its actions [under § 1759]    suits for relief against utilities can be brought in the trial court [under § 2106]") Similarly, *Van Dussen-Storto Motor Inn, Inc v Rochester Tel Corp*, 42 A D 2d 400 (N Y App Div 1973), involved direct challenges to the reasonableness of the defendant's tariff and is, therefore, inapplicable to Qwest's affirmative defenses which do not challenge Defendants' tariffs, but rather assert a violation of state law In fact, *Van Dussen-Storto Motor Inn* expressly recognized that state courts may exercise jurisdiction "where a telephone corporation violates the law of the state of New York." *Id* at 403 This is precisely the allegation made by Qwest in its Affirmative Defenses VII and VIII

because Qwest could bring claims in this Court pursuant to these express statutory provisions, this Court certainly has subject matter jurisdiction over affirmative defenses which arise under the same statutes. Defendants' argument to the contrary is entirely without merit.

In addition, courts have consistently recognized a distinction between a court's jurisdiction over certain claims and a court's jurisdiction over affirmative defenses. Even where a state court would not have jurisdiction over a particular issue if it was raised as a claim for recovery, the court will have jurisdiction over the same question raised as an affirmative defense. *See Pan Am. Petroleum Corp.*, 366 U.S. at 664-65 (distinguishing between a *case* arising under a law subject to exclusive jurisdiction and a *question* arising under that same law); *Pratt v. Paris Gas Light & Coke Co.*, 168 U.S. 255, 258-60 (1897) (holding state court had jurisdiction to decide the validity of a patent when raised as an affirmative defense to a contract claim, even though federal courts had exclusive jurisdiction over claims arising under the patent laws); *Birenbaum v. Bache & Co.*, 555 S.W.2d 513, 514-15 (Tex. Civ. App. 1977) (holding that exclusive federal jurisdiction over a particular claim does not preclude state court adjudication of defenses based on the same statute). If the rule were otherwise, plaintiffs could deprive defendants of the opportunity to raise meritorious defenses simply by choosing a forum in which the defense would not be available. In the context of this case, Defendants concede that this Court has jurisdiction over their claims. Accordingly, Qwest should not be precluded from

raising its applicable affirmative defenses in the forum in which Defendants' claims proceed.[7]

**E.    This Court Should Not Dismiss Qwest's Affirmative Defenses VII and VIII Pursuant to C.R.C.P. 12(b)(5)**

Defendants' argument that Qwest's affirmative *defenses* should be dismissed pursuant to

C.R.C.P. 12(b)(5) for failure to state a *claim* is entirely nonsensical. While C.R.C.P. 12(b)(5)

permits an affirmative claim to be dismissed for a failure to state a claim, it has no applicability

to an affirmative defense, the purpose of which is not to "state a claim," but to defend against a

claim being brought by the opposing party. Where a party objects to a particular defense on the

ground that it fails to state a legal defense, the proper course of action is to move to strike the

defense pursuant to C.R.C.P. 12(f). However, such a motion to strike must be filed within

twenty days after the service of the pleading containing the defense at issue. C.R.C.P. 12(f).

Here, not only did Defendants fail to file the motion to strike within the twenty-day time limit

prescribed by C.R.C.P. 12(f), which expired on October 22, 2007, but they have waited until just

forty-five days before trial to raise the argument. On this ground alone, their argument must be

rejected.

In addition, even assuming that an affirmative defense may be dismissed pursuant to

C.R.C.P. 12(b)(5) for failure to state a claim, Qwest's allegations that "KMC Data has improperly

discriminated against [Qwest] in its originating access charges in violation of state public utilities

---

[7] The cases cited by Defendants do not support their broad assertion that jurisdictional limitations always apply to affirmative defenses in the same manner in which they apply to direct claims. Both *United States v. Dunifer*, 219 F.3d 1004 (9th Cir. 2000), and *United States v. Any and All Radio Transmission Equip.*, 207 F.3d 458 (8th Cir. 2000), involved direct challenges to FCC regulations which were raised as affirmative defenses in the context of a government action to enforce those regulations. These cases are therefore inapplicable to this case in which Qwest's affirmative defenses seek to *enforce* statutory and regulatory provisions in the context of claims brought by a *private* common carrier. In addition, to the extent certain state statutes vest exclusive jurisdiction in state public utilities commissions, Defendants have prohibited Qwest from bringing these claims before the public utilities commissions by making their off-tariff agreements subject to the protective order in this litigation. *See Dunifer*, 219 F.3d at 1008 (discussing availability of alternative action before FCC as grounds to deny jurisdiction in the trial court).

statutes" are sufficient to survive the notice pleading standard which applies in the context of motions to dismiss for failure to state a claim. *See Dorman v. Petrol Aspen, Inc*, 914 P.2d 909, 911 (Colo. 1996) ("Under our rules for notice pleading, all that is required is a short and plain statement of the claim showing that the pleader is entitled to relief." (quotation omitted)); *Dunlap v. Colo. Springs Cablevision, Inc*, 829 P.2d 1286, 1291 (Colo. 1992) ("Motions to dismiss under Rule 12(b)(5) are viewed with disfavor and are rarely granted under our notice pleadings." (quotation omitted)). Although Defendants assert Qwest failed to identify the specific statutes which Defendants violated, these statutes were set forth in detail in Qwest's Response to Defendants' Interrogatory No. 17, giving Defendants full notice of the substance of these defenses. This response was served more than three months ago and Defendants have never given Qwest any indication that they considered this list to be insufficient.

**F.      Defendants' Motion for Voluntary Dismissal Is Inconsistent With Their Argument That This Court Lacks Jurisdiction Over Interstate Claims**

Despite the fact that Defendants' interstate claims are mirror images of Qwest's interstate claims and will require reference to, and interpretation of, the same interstate tariffs, Defendants move for voluntary dismissal of their claims without prejudice. Defendants offer no explanation for the illogical argument that while this Court lacks subject matter jurisdiction over Qwest's interstate claims, it nevertheless retains jurisdiction over Defendants' nearly identical claims. Effectively, Defendants' argument suggests that if they did not voluntarily dismiss their claims, these claims would be permitted to proceed in this Court while Qwest would be precluded from raising any claims involving Defendants' interstate tariffs in defense. Such a result is not only irrational and inequitable, but it is contrary to established law. *See Pan Am. Petroleum Corp*, 366 U.S. at 664-65; *Pratt*, 168 U.S. at 258-60.

Thus, Defendants' motion for voluntary dismissal of their interstate claims is simply a disingenuous attempt to mask the fact that, like Qwest, Defendants have always assumed that this Court had jurisdiction to decide the parties' claims involving Defendants' interstate tariffs. The inconsistency in Defendants' position on this issue further undermines their argument that this Court lacks jurisdiction over Qwest's interstate claims.

As discussed above, this Court has jurisdiction over both parties' claims arising under Defendants' interstate tariffs. However, if this Court erroneously dismisses Qwest's interstate claims for lack of jurisdiction, Defendants' interstate claims should be dismissed for lack of subject matter jurisdiction as well. In the event that this Court (incorrectly) concludes that it retains jurisdiction over Defendants' interstate claims, but that Qwest is precluded from raising its interstate claims in defense, Defendants' motion for voluntary dismissal should be granted to allow all interstate claims to be adjudicated in a single forum.

## CONCLUSION

Because nothing in the language, legislative history, or underlying policies of the Communications Act suggests that Congress affirmatively intended to divest state courts of jurisdiction over claims pursuant to 47 U.S.C. § 207, this Court has jurisdiction over all of Qwest's claims. Further, even if such exclusive jurisdiction did exist over Qwest's federal claims, Qwest's independent state law claims and Qwest's claims against HyperCube would remain subject to this Court's jurisdiction. This Court likewise has jurisdiction over Qwest's Affirmative Defenses VII and VIII, both because certain state statutes expressly grant this Court such jurisdiction and because the allegations of unlawful rate discrimination are raised as affirmative defenses to Defendants' counterclaims. Finally, Defendants' assertion that Qwest's

Affirmative Defenses VII and VIII should be dismissed pursuant to C.R.C.P. 12(b)(5) is

groundless and should likewise be rejected.

WHEREFORE, for the reasons set forth in this Response, Qwest respectfully requests

that this Court deny Defendants' Motion to Dismiss in its entirety.

Dated:  January 8, 2008                    BROWNSTEIN HYATT FARBER SCHRECK, LLP

                                           By:
                                                       *s/ Amy L. Benson*
                                                   Timothy R. Beyer, #12168
                                                   Amy L. Benson, #15894
                                                   Lauren E. Schmidt, #37002
                                                   410 Seventeenth Street, Suite 2200
                                                   Denver, Colorado  80202-4437
                                                   303.223.1100

                                           ATTORNEYS FOR PLAINTIFF QWEST
                                           COMMUNICATIONS CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January, 2008, a true and correct copy of **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS AND AFFIRMATIVE DEFENSES PURSUANT TO C.R.C.P. 12(b)(1) AND C.R.C.P. 12(b)(5), AND TO CONDITIONALLY DISMISS KMC DATA'S INTERSTATE COUNTERCLAIMS PURSUANT TO C.R.C.P. 41(a)(2)** was served via LexisNexis File & Serve upon the following:

Richard L. Fanyo
David W. Furgason
Dufford & Brown, P.C.
1700 Broadway, Suite 2100
Denver, CO 80290-2101
303.861.8013
*rfanyo@duffordbrown.com*
*dfurgason@duffordbrown.com*

Ky E. Kirby
Jonathan S. Frankel
Scott D. Woods
Bingham McCutchen P.C.
3000 K Street., N.W., Suite 300
Washington, D.C. 20007
202.424.7500
*ky.kirby@bingham.com*
*jon.frankel@bingham.com*
*scott.woods@bingham.com*

_____ *s/ Syndy Littman* _____
Syndy Littman

*Original signature is on file at the offices of*
*Brownstein Hyatt Farber Schreck, LLP*

5408\276\1109370.5