# RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX: (302) 651-7701
WWW.RLF.COM

JEFFREY L. MOYER
DIRECTOR

DIRECT DIAL NUMBER
302-651-7525
MOYER@RLF.COM

April 14, 2008

**BY E-FILING**

The Honorable Gregory M. Sleet
United States District Court
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Re:   **HyperCube, LLC, et al. v. Qwest Communications Corporation,
       C.A. No: 07-822**

Dear Chief Judge Sleet:

I am writing on behalf of defendant Qwest Communications Corporation in the above-captioned action, to provide the Court with a copy of a March 28, 2008 Order (attached hereto as Exhibit A) in the parallel proceeding pending in the District Court for the City and County of Denver, Colorado (the "Colorado Proceeding"). In the enclosed Order, the Colorado Court held that it had jurisdiction over the identical federal Communications Act claims that have been pled in this action. The Colorado Proceeding has been pending since June of 2006 and is scheduled for trial on June 9, 2008.

As a result of the Order, on April 11, 2008, the plaintiffs filed notice (D.I. 23) withdrawing their Motion for a Temporary Stay (D.I. 14) and withdrawing their opposition to Qwest's Motion to Stay (D.I. 6) in these proceedings.

As always, if the Court has any questions in connection with this matter, counsel remains available at the Court's convenience.

Respectfully submitted,

Jeffrey L. Moyer (#3309)

JLM/th
Enclosure
cc:   Richard L. Horwitz, Esq.

RLF1-3272633-1

# EXHIBIT A

| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br><br>1437 BANNOCK STREET<br>DENVER, CO 80202 | EFILED Document<br>CO Denver County District Court 2nd JD<br>Filing Date: Mar 28 2008 2:01PM MDT<br>Filing ID: 19185850<br>Review Clerk: Rebecca Archuleta<br>▲ COURT USE ONLY ▲ |
|---|---|
| Plaintiff(s): QWEST COMMUNICATIONS CORPORATION,<br><br>v.<br><br>Defendant(s): HYPERCUBE, LLC and KMC DATA, LLC, | CASE NO. 06CV6404<br><br>COURTROOM: 19 |
| ORDER | |

I.  Introduction

This matter comes before the Court on the December 21, 2007 motion of defendant HyperCube LLC and defendant/counterclaim plaintiff KMC Data LLC (herein "defendants") to dismiss certain claims and affirmative defenses of plaintiff/counterclaim defendant Qwest Communications Corporation (herein "plaintiff" or "Qwest"). Specifically, defendants seek to dismiss several claims and affirmative defenses asserted by Qwest under or in connection with the Federal Communications Act and the laws of Colorado and several sister states under C.R.C.P. 12(b)(1) on grounds of lack of subject matter jurisdiction of this Court to adjudicate them; to dismiss claims of Qwest grounded on the state law of Colorado and other states under C.R.C.P. 12(b)(1) on grounds of lack of subject matter jurisdiction and under C.R.C.P. 12(b)(5) for failure to state claims on which relief can be granted; and, assuming they prevail as requested, to conditionally dismiss defendant KMC Data's interstate-based counterclaims against Qwest under C.R.C.P. 41(a)(2) so that those claims can be more conveniently litigated in the United States District Court for the District of Delaware, where on about December 17, 2007 defendants commenced an action against Qwest which essentially mirrors the disputes which are the subject of the litigation before this Court.

In addition to defendants' motion, the Court has received and reviewed the following pleadings and supporting materials: Qwest's January 8, 2008 response; Qwest's January 15, 2008 more definite statement regarding breach of state public utilities statutes; defendants' January 23, 2008 reply; defendants' January 25, 2008 supplemental reply; Qwest's January 31, 2008 surreply; and defendants' February 19, 2008 response to surreply. The Court having considered the motion papers, supporting materials, and the applicable law, and now being fully advised in the premises, finds, concludes and orders as follows:

II.  Procedural Background

This case involves a billing dispute over defendants' charges to Qwest for intrastate and interstate toll-free calls placed by wireless customers to customers of Qwest. Defendant HyperCube's wholly owned subsidiary, KMC Data, a Competitive Local Exchange Carrier ("CLEC") is a telecommunications carrier situated in the call path between persons originating wireless toll-free calls made to recipients of those calls, which recipients are customers of Qwest, an Interexchange Carrier ("ICX"). Qwest pays for those calls on behalf of its recipient customers. Qwest disputes on various grounds the role played and the services provided by defendants in the call path of these calls between originator and recipient, and the propriety of the charges imposed on Qwest by defendants as a result of their role in the call path.

Qwest originally filed its complaint on June 12, 2006 against defendant HyperCube only, alleging that defendant was improperly charging Qwest for intrastate telecommunications services in violation of various intrastate tariffs. Qwest asserted multiple claims for relief based on state law, including claims for declaratory and injunctive relief, unjust enrichment, money had and received, and breach of contract. In October 2006 Qwest amended its complaint to add KMC Data, HyperCube's wholly owned subsidiary, as a defendant, and asserted additional state law claims against defendants, still based on issues involving the provision of intrastate telecommunications services, including a claim of fraud and a claim of breach of Colorado's public utilities statutes and the public utilities statutes of other (unspecified) states. Defendant KMC Data responded by asserting six state law counterclaims against Qwest, including breach of intrastate tariffs/contract (I), breach of implied contract (II), action on open account (III), quantum meruit (IV), unjust enrichment (V), and declaratory relief (VI).

In August 2007, Qwest was allowed to again amend its complaint against defendants. In this Second Amended Complaint, Qwest for the first time asserted claims for relief based on defendants' provision of both intrastate and interstate services. Thus its state law claims of declaratory relief (I), unjust enrichment (II), money had and received (III), breach of contract (IV), fraud (VI), and injunctive relief (VIII) were now grounded on factual allegations involving both intrastate and interstate services. While its claim regarding violation of state public utilities statutes (VII) remained based on intrastate services, Qwest asserted for the first time a claim that defendants' alleged conduct violated both their interstate tariff obligations and the Federal Communications Act, 47 U.S.C. § 201 *et seq.* (V). KMC Data responded by reasserting its same counterclaims, but expanding them to pertain to both intrastate and interstate services.[1]

---

[1] In January 2008, while defendants' subject matter jurisdiction motion was still pending but not ripe for decision, the Court granted Qwest's motion to again amend its complaint, conditional upon and subject to the Court's decision concerning the scope of its subject matter jurisdiction as raised by defendants. The Court stated it would treat defendants' motion as if asserted against the claims alleged in Qwest's Third Amended Complaint. In this Third Amend Complaint, Qwest pleaded several new factual matters, some of which

III.   Subject Matter Jurisdiction over Federal Claims.

Defendants' motion to dismiss under C.R.C.P. 12(b)(1) challenges this Court's jurisdiction to adjudicate certain claims first raised in Qwest's Second Amended Complaint, specifically its claim that defendants violated their interstate tariff and the Federal Communications Act (claim V); and those portions of its claims I, II, III, IV and VI based on alleged wrongful conduct in connection with KMC's charges to Qwest for interstate telecommunications services. This part of the motion is premised on defendants' assertion that adjudicating the claims related to federal law is the exclusive province of the Federal Communications Commission or the federal district courts. Defendants also move to dismiss Qwest's affirmative defenses VII and VIII, which are grounded on allegations of rate discrimination in violation of various state public utilities statutes. Defendants assert that adjudicating such defenses is the exclusive province of the applicable state utilities commissions.[2] Defendants' motion was filed more than three months after they answered the Second Amended Complaint. However, motions which go to the subject matter jurisdiction of the court are not waived by inaction or delay and may be raised at any time. C.R.C.P. 12(h)(3); Sanchez v. State, 730, P.2d 328, 331 (Colo. 1986); Hansen v. Long, 166 P.3d 248, 250 (Colo. App. 2007).

In its claim V, and in those portions of claims I, II, III, IV and VI relating to interstate services or charges, Qwest asserts that defendants' alleged conduct violates Section 201 and 203 the Federal Communications Act, and/or violates provisions of defendants' federal / interstate tariffs. Qwest therefore seeks to recover damages under Section 207 of the Act, 47 U.S.C. § 207. Section 207 provides:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

---

related to its fraud claim (VI), but the most significant of which pertained to allegations that defendants were involved in conduct which constituted unreasonable rate discrimination in violation of both their federal and various state tariffs (¶¶61-66 of Third Amended Complaint). Qwest incorporated such alleged conduct into its claim asserting violations of the Federal Communications Act (V), and into several of its state law claims, specifically (I), (IV), and (VII). Defendants answered to the Third Amended Complaint and reasserted their defenses and KMC's counterclaims on January 28, 2008.

[2] Defendants make similar subject matter jurisdiction arguments with respect to Qwest's assertion of claims of unreasonable rate discrimination in its Third Amended Complaint.

3

Qwest's claims to which defendants object therefore require this Court to construe and apply federal law as applicable to the facts of this case. The issue is whether it may do so, or must yield adjudication of such claims to the federal courts.

Under the Supremacy Clause of the U.S. Constitution, state courts are charged " 'with a coordinate responsibility to enforce [federal] law according to their regular modes of procedure'...unless Congress dictates otherwise." Consumer Crusade, Inc. v. Affordable Health Care Solutions, Inc., 121 P.3d 350, 353 (Colo. App. 2005), citing U.S. Supreme Court authority not particularized here. "In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that the state courts enjoy concurrent jurisdiction." Gulf Offshore Company v. Mobil Oil Corp., 453 U.S. 473, 477 (1981). This presumption of concurrent jurisdiction, that state courts "have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States" is "deeply rooted" in federal jurisprudence. Tafflin v. Levitt, 493 U.S. 455, 458-59 (1990) The presumption may be rebutted, however, when Congress has excluded state courts from adjudicating particular federal claims. Such rebuttal of the presumption may be established in one of three ways: (1) by explicit statutory directive; (2) by unmistakable implication from legislative history; or (3) by a clear and disabling incompatibility between state-court jurisdiction and federal interests. Gulf Offshore, 453 U.S. at 477-78; Tafflin, 493 U.S. at 459.

Defendants cite the language of Section 207 as constituting an explicit statutory directive that adjudication of damage claims under the Act is reserved to the Commission or to the U.S. district courts, to the exclusion of general jurisdiction courts of the various states. This Court is not persuaded by their arguments. The mere Congressional grant of jurisdiction over a cause of action to a federal court, which is a court of limited jurisdiction, does not operate to oust a general jurisdiction state court from concurrent jurisdiction over the same cause of action. Gulf Offshore, 453 U.S. at 479. Section 207 contains no language which expressly confines jurisdiction to federal courts or affirmatively divests state courts of their presumptive jurisdiction. Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820, 823 (1990). The use in the statute of the qualifying word "may" rather than "shall" in defining a litigant's right to proceed in federal court further indicates the absence of a grant of exclusive jurisdiction in the federal forum. Tafflin, 493 U.S. at 460-61; Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 506 (1962) Finally, as the Court views the statute, the provision of alternative fora to seek damage relief is not reflective of an explicit Congressional directive to pick between the Commission and a federal district court as the sole venues to seek relief. It is, rather, more fairly construed as a Congressional directive that the litigant must choose, irrevocably, whether to seek its remedy before the administrative agency or to press its claim before a court, without excluding the availability of an appropriate state court as the possible judicial forum. Bell Atlantic Corp. v. M.F.S. Communications Co., Inc., 901 F. Supp. 835, 853 (D. Del. 1995). The Court concludes that Section 207 contains no explicit statutory directive ousting state courts of concurrent jurisdiction.

The parties are in agreement that there is no legislative history pertaining to the Federal Communications Act which unmistakably implies that Congress intended to divest state

4

courts of their presumptive concurrent jurisdiction to adjudicate claims under Section 207. Instead, defendants ask the Court to consider the overall structure of the Act to discover legislative intent, and to consider legislative history pertaining to the Interstate Commerce Act, from which they assert the language of Section 207 of the FCA was borrowed, without citing any such history to the Court. These arguments again are unpersuasive. First, the second prong of the Gulf Offshore test instructs the reviewing court to consider legislative history pertinent to the statute in question, not its overall structure. That structure, in any event, is at best ambiguous as to Congressional intent to oust state courts of jurisdiction concerning Section 207, since within the Act Congress has both expressly provided for concurrent jurisdiction of state courts, see, e.g., 47 U.S.C. § 214(c) and 47 U.S.C. § 407, and expressly provided for the exclusive jurisdiction of federal courts. See 47 U.S.C. § 227(f)(2). Second, defendants' suggested approach of discerning legislative intent through the history of a different statute from which statutory language was borrowed was expressly rejected in Tafflin, 493 U.S. at 463:

> ...where the issue is whether jurisdiction is exclusive or concurrent, we are not free to add content to a statute via analogies to other statutes unless the legislature has specifically endorsed such action. Under Gulf Offshore, legislative silence counsels, if not compels, us to enforce the presumption of concurrent jurisdiction.

As to the third prong of the Gulf Offshore test, the Court sees no clear and disabling incompatibility here between state court jurisdiction and federal interests. These federal interests include the desirability of uniform interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to particularly federal claims. Gulf Offshore, 453 U.S. at 483-84. Where a litigant elects to pursue its damage claim in court rather than before the Commission, adjudication of such claims by state courts will be guided by federal court interpretations of federal law. Tafflin, 493 U.S. at 465. This Court sees no jeopardy to uniform interpretation present in this case which was not also presented by concurrent state court jurisdiction over civil RICO claims, Id., or claims under Title VII of the Civil Rights Act of 1964, Yellow Freight, 494 U.S. at 825. In practice, state court concurrent jurisdiction in this instance will not markedly "result in any more inconsistency than that which a multimembered, multi-tiered federal judicial system already creates." Tafflin, 493 U.S. at 465.

As to the relative lack of expertise of state judges in federal law, one underlying premise of concurrent jurisdiction is that state courts are fully competent, properly guided by federal interpretive decisions, to construe and apply federal law. Id. at 458-59, 465-66; Dowd Box, 368 U.S. at 508. State courts frequently look to federal law to guide their decisions, just as federal courts sitting in diversity often look to and interpret state law. Where Congress has not deliberately chosen to oust state courts of jurisdiction over claims under Section 207, this criterium presents no clear and disabling incompatibility with federal interests. Similarly, no particular concern has been demonstrated to this Court that state courts would be less hospitable to claims under Section 207 than would federal courts. For the above reasons, the Court concludes that the presumption of concurrent jurisdiction has not been overcome under the third prong of the Gulf Offshore test.

Defendants have cited decisions of other courts which they contend support the proposition that this Court lacks concurrent jurisdiction over the claims at issue. Those decisions, emanating from courts entitled to proper deference, are not determinative of the decision here, not only because their pronouncements are largely dicta and not backed by persuasive analysis, but because the cited opinions are called into question by subsequent decisions of the same court. In Citibank, N.A. v. Graphic Scanning Corp., 618 F.2d 222, 225 (C.A.N.Y. 1980) a panel of the Second Circuit stated in passing while concluding that a state court had subject matter jurisdiction to adjudicate certain contract claims: "This is so notwithstanding that the Act vests exclusive jurisdiction over claims for damages for statutory violations of the Act in the federal courts or the FCC, 47 U.S.C. § 407." However, in Nordlicht v. New York Telephone Company, 799 F.2d 859, 865-66 (C.A.N.Y. 1986) a different panel of the same Second Circuit held:

> Even if statutory claims under the Communications Act are within exclusive federal jurisdiction, which we do not decide, fn.4, we see no compelling circumstances here to indicate a "disabling incompatibility," Gulf Offshore Co. v. Mobil Oil Co., supra, [citation omitted] between Nordlicht's federal common law claims and state court adjudication. Since the New York Supreme Court had concurrent jurisdiction over these claims, the District Court properly exercised derivative removal jurisdiction over them. (emphasis supplied)

Footnote 4 referenced in the above quotation reads:

> A dictum in Citibank, N.A. v. Graphic Scanning Corp. states that "the [Communications] Act vests exclusive jurisdiction over claims for damages for statutory violations of the Act in the federal courts or the FCC, 47 U.S.C. § 407." The citation to section 407, which concerns district court jurisdiction to enforce compliance with FCC orders for the payment of money, appears to be a typographical error; section 207, concerning claims for damages for any statutory violations of the Act, must have been intended. The issue of exclusive jurisdiction for statutory claims was not squarely posed in Citibank and, in the view we take of this case, need not be decided on this appeal.

Similarly, in AT&T Corporation v. Coeur D'Alene Tribe, 295 F.3d 899, 905, C.A. 9 (Ida.) 2002, a panel of the Ninth Circuit concluded in ousting a tribal court of jurisdiction to adjudicate claims under Section 207, and without any reference to analysis of concurrent jurisdiction under the Gulf Offshore test:

> By its express language, § 207 establishes concurrent jurisdiction in the FCC and federal district courts only, leaving no room for adjudication in any other forum-be it state, tribal or otherwise.

However, in Lozano v. AT&T Wireless Services, Inc., 504 F.3d 718, 728, C.A. 9 (Cal.) 2007, a different panel of the Ninth Circuit, despite this broad language from Coeur

D'Alene, concluded the Act did not preclude adjudication of claims under Section 207 in an arbitral forum. In view of the Ninth Circuit's own limitation of Coeur D'Alene to its particular facts, involving the scope of concurrent jurisdiction of a tribal court, this Court concludes that a proper reading of Coeur D'Alene, despite its broad dicta, is that it is inapposite authority as to the scope of presumptive concurrent jurisdiction of a state court of general jurisdiction under Section 207. Nevada v. Hicks, 533 U.S. 353, 366-69 (2001)

The Court also finds unpersuasive other authorities cited by defendants. Van Dussen-Storto Motor Inn, Inc. v Rochester Telephone Corporation, 338 N.Y.S.2d 31 (N.Y. App. Div. 1972), while holding as defendants assert, concludes without analysis that the language of Section 207 is explicit as to exclusive federal jurisdiction, a conclusion which is not harmonious with the later Supreme Court decisions in Gulf Offshore, Tafflin and Yellow Front, nor with the earlier authorities on which those decisions are grounded. McCollum v. Western Union Telegraph Co., 175 S.W.2d 544 (Tenn. 1943) reflects dicta only, and in any event is not predicated on a Gulf Offshore-like analysis. U.S. Sprint Communications Co. v. Computer Generation, Inc., 401 S.E.2d 573 (Ga. App. 1991), the meaning of which both sides dispute, is clearly no authority for the contention of exclusive jurisdiction of federal district courts over claims under Section 207. After performing a Gulf Offshore analysis in light of the trial court's *sua sponte* dismissal of the entire case for lack of subject matter jurisdiction, the appellate court returned the matter to the state trial court, with instructions that if the defendant's Section 207 counterclaim required referral to the FCC under the doctrine of primary jurisdiction, not raised by the parties in this matter, the proper action was to stay, not dismiss, the counterclaim. The clear implication of the appellate decision is that if resolution of the counterclaim under Section 207 did not require the special expertise of the Commission, the state trial court had concurrent jurisdiction to adjudicate it.

Having fully considered the arguments of the parties and the applicable law, the Court therefore concludes that there has been no sufficient rebuttal of the "deeply rooted" presumption that this Court has subject matter jurisdiction, concurrent with that of the federal district courts, to adjudicate damage claims arising under or in connection with Section 207 of the Federal Communications Act. Accordingly, defendants' motion to dismiss plaintiff Qwest's Claim V under the Act, and those portions of Claims I, II, III, IV and VI relating to defendants' provision or assertion of interstate services or charges, is hereby DENIED.

IV. Subject Matter Jurisdiction over Intrastate Claims

Defendants have also moved to dismiss Qwest's affirmative defenses VII and VIII, which are grounded on allegations of rate discrimination in violation of various state public utilities statutes, as well as those portions of Qwest's claims for relief in its Third Amended Complaint,[3] in particular its Seventh Claim for Relief, which are likewise grounded on allegations of rate discrimination. Defendants assert adjudication of such claims and affirmative defenses is the exclusive province of the applicable state utilities commissions, and that this Court lacks subject matter jurisdiction to presently consider them because Qwest has failed to exhaust its available administrative remedies, and because adjudication

---

[3] See footnotes 1 and 2 above

7

of such claims necessarily involves rate making, an exclusive legislative function of the particular state public utilities body.

Qwest's claims of unreasonable rate discrimination are based on its allegation that it recently discovered the existence of certain off-tariff agreements between defendants and certain other ICX carriers. Qwest contends these agreements offer rates to those carriers which are unreasonably more favorable to those carriers than the rates charged to "similarly situated" Qwest, in violation of defendants' intrastate tariffs and various state laws. Qwest's original pleadings specifically identified only Colorado as one such state, and in response to a January 11, 2008 order of this Court, Qwest identified in a more definite statement six states in which it contends it is aggrieved by unreasonable rate discrimination: Colorado, California, Georgia, Missouri, New York and Rhode Island. Qwest has also provided legal authority to buttress its jurisdictional contentions, and defendants have responded through their January 25, 2008 supplemental reply with countering authority and argument.

Based on the pleadings, the Court will confine its rulings concerning subject matter jurisdiction over Qwest's state rate discrimination claims to those six jurisdictions specifically identified by Qwest. Similar claims pertinent to other unidentified states are not sufficiently pleaded and are therefore not before this Court for consideration.

The Court first considers Qwest's allegations of defendants' unreasonable rate discrimination in violation of Colorado law and in violation of defendants' Colorado intrastate tariff. The Court agrees with defendants that, in view of the facts alleged by Qwest and the relief sought, the analysis necessary to determine subject matter jurisdiction is the same whether Qwest's claims are based on violation of state statute or applicable tariff. City of Aspen v. Kinder Morgan, Inc., 143 P.3d 1076, 1079 (Colo. App. 2006).

Qwest cites C.R.S. § 40-15-105(1) as substantive state law prohibiting unreasonable rate discrimination, and premises this Court's subject matter jurisdiction over unreasonable rate discrimination claims on C.R.S. § 40-7-102(1). Colorado law also vests jurisdiction to address utility rate discrimination with the state public utilities commission, C.R.S. § 40-3-102, thereby providing an available administrative remedy to aggrieved parties. Given this statutory scheme, the Colorado courts have clearly concluded that court jurisdiction to remedy claims of unreasonable rate discrimination is permissive with the public utilities commission rather than exclusive, and is subject to a prior exhaustion of the available administrative remedies. City of Boulder v. Public Service Co. of Colorado, 996 P.2d 198, 206 (Colo. App. 2000); City of Aspen v. Kinder Morgan, Inc., 143 P.3d at 1082. The Court sees no circumstances present in this case which would justify Qwest in pursuing such claims in court without meeting the exhaustion requirement. Accordingly, the Court concludes it lacks subject matter jurisdiction over Qwest's Colorado rate discrimination claims.

The Court also concludes that it lacks jurisdiction over Qwest's statutory and tariff-based rate discrimination claims because such adjudication necessarily involves rate making, which is a legislative function reserved to the public utilities commission rather than a judicial function. Public Utilities Comm. v. District Court, 527 P.2d 233, 234 (Colo. 1974);

City of Aspen, 143 P.3d at 1079; City of Boulder, 996 P.2d at 203. Resolution of Qwest's rate discrimination claims requires application of expertise and balancing determinations which are both specialized and legislative in nature, and therefore are not performed by the courts.

The Court has examined the authorities submitted by the parties, and concludes that what is true in Colorado with respect to the court's subject matter jurisdiction to adjudicate unreasonable rate discrimination claims also limits a court's subject matter jurisdiction in the other identified states:

      A.    California: People ex rel. Orloff v. Pacific Bell, 80 P.3d 201, 209 (Cal. 2003); City of Anaheim v. Pacific Bell Tel. Co., 14 Cal. Rptr. 3d 725, 727 (Cal. App. 2004); Dollar-A-Day Rent-A-Car Systems, Inc. v. Pacific Tel. & Tel. Co., 26 Cal. App. 3d 454, 461-62 (Cal. App. 1972) (exclusive original jurisdiction over rate discrimination claims in California PUC).

      B.    Georgia: Cerulean Companies, Inc. v. Tiller, 516 S.E.2d 522, 523 (Ga. 1999); Norman V. United Cities Gas Co., 204 S.E.2d 127 (Ga. 1974) (failure to exhaust administrative remedies). Georgia Power Co. v. Allied Chemical Corp., 212 S.E.2d 628, 630 (Ga. 1975) (rate making not a judicial function).

      C.    Missouri: State ex rel. Cirese v. Ridge, 138 S.W.2d 1012, 1015-16 (Mo. 1940); County of Warren v. Union Electric Co., 800 S.W.2d 814, 816-17 (Mo. App. 1990) (failure to exhaust administrative remedies).

      D.    New York: Walton v. New York State Dept. of Corr. Svc., 863 N.E.2d 1001, 1006 (N.Y. 2007); City of New York v. New York Edison Co., 196 A.D. 644, 652 (N.Y. App. Div. 1921); Porr v. Nynex Corp., 230 A.D.2d 564 (N.Y. App. Div. 1997) (failure to exhaust administrative remedies)

      E.    Rhode Island: State of Rhode Island v. Narragansett Electric Co., 1975 WL 170024 (R.I. Super. 1975); New England Tel. & Tel. Co. v. Kennelly, 67 A.2d 705, 716 (R.I. 1949); Almeida v. Plasterers' and Cement Masons' Local 40 Pension Fund, 722 A.2d 257 (R.I. 1998); Heritage Healthcare Services, Inc. v. Beacon Mutual Ins. Co., 2005 WL 2101412 (R.I. Super. 2005) (failure to exhaust administrative remedies). Defendants also assert Qwest's lack of standing to assert a rate discrimination claim under Rhode Island law due to absence of an injury in fact, and have submitted an affidavit in support thereof. However, because resolution of this contention requires fact determinations, and because Qwest has had no opportunity to respond to the affidavit, the Court declines to address the standing argument at this time.

Based on analysis of the above authorities and statutory references cited in the parties' briefing, the Court concludes that, given the present posture of this case, the Court lacks subject matter jurisdiction over Qwest's state-statute-based and intrastate-tariff-based claims for relief against defendants on grounds of rate discrimination, in particular Claim VII, and

defendants' motion to dismiss all such claims for relief for lack of subject matter jurisdiction is therefore GRANTED.

As to Qwest's affirmative defenses VII and VIII which are also premised on alleged unreasonable rate discrimination, the Court concludes that to adjudicate such defenses it would have to delve improperly into issues over which it has determined it lacks subject matter jurisdiction. See United States v. Dunifer, 219 F.3d 1004, 1007 (9th Cir. 2000) and United States v. Any and All Radio Transmission Equipment, 207 F.3d 458, 463 (8th Cir. 2000). The Court finds the reasoning of these cases persuasive, and Qwest has cited no authority establishing that affirmative defenses should be regarded differently than offensive claims, where the court's subject matter jurisdiction is implicated. Accordingly, defendants' motion to dismiss these defenses to the extent based on allegations of unreasonable rate discrimination in violation of state statute or intrastate tariff is GRANTED.

V.  Defendants' Motion under C.R.C.P. 12(b)(5)

In view of the Court's rulings under C.R.C.P. 12(b)(1), the Court does not reach or address defendants' companion motion for dismissal under C.R.C.P. 12(b)(5).

VI.  Defendants' Motion for Voluntary Dismissal Pursuant to C.R.C.P. 41(a)(2).

In view of the Court's conclusion that it has concurrent subject matter jurisdiction to adjudicate Qwest's federal/interstate claims against defendants, the Court declines defendants' request that it exercise its discretion under C.R.C.P. 41(a)(2) to conditionally dismiss the interstate portions of KMC Data's counterclaims I, II, III, IV, V and VI so that they may be more conveniently litigated in the United States District Court for the District of Delaware. That motion is DENIED.

DATED AND SIGNED this 28th day of March, 2008.

BY THE COURT:

_____
Norman D. Haglund
District Court Judge